**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHRISTINA LEWIS, Individually and On Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>        v.<br><br>YRC WORLDWIDE INC., JAMES L. WELCH, JAMIE G. PIERSON, and STEPHANIE D. FISHER,<br><br>        Defendants. | Case No. 1:19-cv-00001-GTS-ATB<br><br>**YRC INVESTOR GROUP'S MEMORANDUM OF LAW IN OPPOSITION TO THE COMPETING MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL** |

**TABLE OF CONTENTS**

I.   INTRODUCTION ..............................................................................................1

II.  ARGUMENT.....................................................................................................3

    A.   The PSLRA-Mandated Procedure for Appointing a Lead Plaintiff........................3

    B.   The YRC Investor Group Is The Presumptively Most Adequate Plaintiff..............4

    C.   The YRC Investor Group Is An Appropriate Group ..............................................6

    D.   The Presumption That The YRC Investor Group Is The Most Adequate Plaintiff Has Not Been And Cannot Be Rebutted.....................................................8

    E.   The PSLRA Does Not Privilege Institutional Investors Over Individuals .............9

    F.   The YRC Investor Group's Selection of Counsel Should Be Approved...............10

III. CONCLUSION.................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aude v. Kobe Steel, Ltd.*, 17-CV-10085,
    2018 U.S. Dist. LEXIS 57591 (S.D.N.Y. Apr. 4, 2018)............................................................3

*Barnet v. Elan Corp.*,
    236 F.R.D. 158 (S.D.N.Y. 2005) ..............................................................................................6

*Brady v. Top Ships Inc.*, No. 17-CV-4987 (JFB) (SIL),
    2018 U.S. Dist. LEXIS 121765 (E.D.N.Y. July 20, 2018) ........................................................7

*Chahal v. Credit Suisse Grp. AG*, 18-CV-2268 *et al.*,
    2018 U.S. Dist. LEXIS 104185 (S.D.N.Y. June 21, 2018)....................................................2, 4

*China Agritech, Inc. v. Resh*,
    138 S. Ct. 1800 (2018)...........................................................................................................3, 6

*Foley v. Transocean Ltd.*,
    272 F.R.D. 126 (S.D.N.Y. 2011) ...........................................................................................2, 4

*Freudenberg v. E\*Trade Fin. Corp.*, No. 07-cv-10400,
    2008 WL 2876373 (S.D.N.Y. July 16, 2008) ............................................................................6

*Goldstein v. Puda Coal, Inc.*,
    827 F. Supp. 2d 348 (S.D.N.Y. 2011)........................................................................................8

*In re Am. Bus. Fin. Servs., Inc. Sec. Litig.*, 04-cv-0265,
    2004 U.S. Dist. LEXIS 10200 (E.D. Pa. June 3, 2004) .............................................................9

*In re Blue Apron Holdings, Inc. Sec. Litig.*, No. 17-CV-4846 (WFK) (PK),
    2017 U.S. Dist. LEXIS 207531 (E.D.N.Y. Dec. 15, 2017) .........................................3, 6, 7, 8

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001)......................................................................................................6

*In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG)(RER),
    2007 U.S. Dist. LEXIS 14878 (E.D.N.Y. Mar. 2, 2007) ...........................................................4

*In re Deutsche Bank Aktiengesellschaft Sec. Litig.*, 16-CV-03495 (AT) (BCM),
    2016 U.S. Dist. LEXIS 139215 (S.D.N.Y. Oct. 4, 2016) ..........................................................5

*In re eSpeed, Inc. Sec. Litig.*,
    232 F.R.D. 95 (S.D.N.Y. 2005) ................................................................................................5

*In re Fuwei Films Sec. Litig.*,
    247 F.R.D. 432 (S.D.N.Y. 2008) ................................................................................4

*In re Orion Secs. Litig.*, 08 Civ. 1328 (RJS),
    2008 U.S. Dist. LEXIS 55368 (S.D.N.Y. July 7, 2008) ...........................................2

*In re Sequans Communs. S.A. Sec. Litig.*,
    289 F. Supp. 3d 416 (E.D.N.Y. 2018) ...................................................................9, 10

*In re Texlon Corp. Secs. Litig.*,
    67 F. Supp. 2d 803 (N.D. Ohio 1999)........................................................................9

*Kaplan v. Gelfond*,
    240 F.R.D. 88 (S.D.N.Y. 2007) .................................................................................3

*La. Mun. Police Emps.' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*, No. 2:11-cv-289,
    2012 U.S. Dist. LEXIS 89192 (D. Vt. Apr. 27, 2012)...............................................7

*Nurlybaev v. ZTO Express (Cayman) Inc.*, 17-CV-06130 (LTS)(SN),
    2017 U.S. Dist. LEXIS 187238 (S.D.N.Y. Nov. 13, 2017)........................................2

*Pirelli Armstrong Tire Corp. v. LaBranche & Co., Inc.*,
    229 F.R.D. 395 (S.D.N.Y. 2004) ...............................................................................2

*Reiger v. Altris Software, Inc.*, 98-cv-0528 (JFS),
    1998 U.S. Dist. LEXIS 14705 (S.D. Cal. Sept. 11, 1998)..........................................9

*Robb v. Fitbit Inc.*, No. 16-cv-00151-SI,
    2016 U.S. Dist. LEXIS 62457 (N.D. Cal. May 10, 2016) ..........................................8

*Takara Trust v. Molex, Inc.*,
    229 F.R.D. 577 (N.D. Ill. 2005).................................................................................4

*Topping v. Deloitte Touche Tohmatsu CPA*,
    95 F. Supp. 3d 607 (S.D.N.Y. 2015)....................................................................10, 11

*Tronox, Inc. Sec. Litig.*,
    262 F.R.D. 338 (S.D.N.Y. 2009) ...............................................................................8

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
    589 F. Supp. 2d 388 (S.D.N.Y. 2008)........................................................................5

*Weltz v. Lee*,
    199 F.R.D. 129 (S.D.N.Y. 2001) ...............................................................................6

*West Palm Beach Police Pension Fund v. DFC Global Corp.*, No. 13-6731,
    2014 U.S. Dist. LEXIS 49595 (E.D. Pa. Apr. 9, 2014) .............................................7

## Statutes

15 U.S.C. § 78u-4(a)(3)(B)(i) ........................................................................................1

15 U.S.C. § 78u–4(a)(3)(B)(iii)(I) ........................................................................1, 3, 4, 6

15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(aa) ..........................................................................4

15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(bb)..........................................................................4

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc)...........................................................................4

15 U.S.C. § 78u–4(a)(3)(B)(iii)(II) ......................................................................1, 3, 8

15 U.S.C. § 78u-4(a)(3)(B)(v) ....................................................................................10

Private Securities Litigation Reform Act of 1995 ................................................. *passim*

## Rules

Fed. R. Civ. P. 23............................................................................................. *passim*

Lead Plaintiff Movant the YRC Investor Group[1] respectfully submits this memorandum of law in further support of its motion for appointment as lead plaintiff and approval of lead counsel (Dkt. No. 9) and in opposition to the competing motion of City of Warwick Retirement Fund ("Warwick") (Dkt. No. 6).

## I.    INTRODUCTION

Two competing motions for appointment as lead plaintiff and approval of lead counsel pursuant to the PSLRA are pending before the Court.  The motions were filed by Warwick (Dkt. No. 6) and the YRC Investor Group (Dkt. No. 9).[2]

With respect to the lead plaintiff determination, the question presently before the Court is which of these movants is the "most adequate plaintiff"—*i.e.*, the movant or movant group "most capable of adequately representing the interests of class members."  15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA directs courts to appoint the "most adequate plaintiff" as lead plaintiff, and provides a rebuttable presumption that the most adequate plaintiff is the plaintiff or movant with the "largest financial interest in the relief sought by the class" who otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure (hereinafter "Rule 23").  15 U.S.C. § 78u–4(a)(3)(B)(iii)(I).  The presumption may only be rebutted by proof that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

---

[1] All capitalized terms herein are defined in the YRC Investor Group's moving brief, unless otherwise indicated.  *See* Dkt. No. 10.

[2] Initially, putative class member Gary Orpana ("Orpana") filed a similar competing motion.  Dkt. No. 12.  On March 25, 2019, Orpana withdrew his motion, stating that "[h]aving reviewed the competing lead plaintiff motions, [Orpana] does not appear to have the largest financial interest." Dkt. No. 30.

As demonstrated in the YRC Investor Group's memorandum of points and authorities in support of its lead plaintiff motion (Dkt. No. 10), having incurred a loss of nearly $393,000 calculated on a LIFO basis in connection with the Defendants' alleged fraud, the group has the largest financial interest in the relief sought by the class by a significant margin. Warwick, the only competing movant, incurred a loss of only $127,938—a loss less than one-third the size of the YRC Investor Group's loss. *See*, *e.g.*, *Chahal v. Credit Suisse Grp. AG*, 18-CV-2268 *et al.*, 2018 U.S. Dist. LEXIS 104185, at *12 (S.D.N.Y. June 21, 2018) (equating financial interest with economic loss); *Nurlybaev v. ZTO Express (Cayman) Inc.*, 17-CV-06130 (LTS)(SN), 2017 U.S. Dist. LEXIS 187238, at *3 (S.D.N.Y. Nov. 13, 2017) (same); *Pirelli Armstrong Tire Corp. v. LaBranche & Co., Inc.*, 229 F.R.D. 395, 404-05 (S.D.N.Y. 2004) (same).

In addition, the YRC Investor Group satisfies the adequacy and typicality requirements of Rule 23. The YRC Investor Group, like all members of the Class, purchased YRC securities at prices artificially inflated by Defendants' misrepresentations or omissions, and was damaged upon the disclosure of those misrepresentations or omissions. These shared claims, which are based on the same legal theory, and arise from the same events and course of conduct as the Class claims, satisfy the requirements of Rule 23. *See*, *e.g.*, *In re Orion Secs. Litig.*, 08 Civ. 1328 (RJS), 2008 U.S. Dist. LEXIS 55368, at *12 (S.D.N.Y. July 7, 2008); *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 131 (S.D.N.Y. 2011).

Finally, the YRC Investor Group is a small and cohesive group of investors, who have demonstrated their adequacy by the submission of a Joint Declaration attesting to their shared understanding of the responsibilities of a Lead Plaintiff pursuant to the PSLRA and their preparedness to coordinate their efforts to prosecute this action diligently on behalf of the Class. *See* Exhibit A to the Declaration of Jeremy A. Lieberman in Further Support of Motion and in

2

Opposition to Competing Motions ("Lieberman Decl."). In *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1807 n.3 (2018), the Supreme Court recently affirmed the propriety of appointing such groups as lead plaintiff, finding that "[d]istrict courts often permit aggregation of plaintiffs into plaintiff groups". *See also In re Blue Apron Holdings, Inc. Sec. Litig.*, No. 17-CV-4846 (WFK) (PK), 2017 U.S. Dist. LEXIS 207531, at *13 (E.D.N.Y. Dec. 15, 2017) (affirming adequacy of group of four investors to serve as Lead Plaintiff under similar circumstances).

For the reasons set forth herein, the YRC Investor Group respectfully submits that its motion should be granted in its entirety.

## II.   ARGUMENT

### A.   The PSLRA-Mandated Procedure for Appointing a Lead Plaintiff

The PSLRA creates a strong presumption that the Lead Plaintiff is the "person or group of persons" that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The movant that has the largest financial interest need only make a preliminary showing that it satisfies Rule 23's typicality and adequacy requirements. *Aude v. Kobe Steel, Ltd.*, 17-CV-10085, 2018 U.S. Dist. LEXIS 57591, at *8 (S.D.N.Y. Apr. 4, 2018); *see also Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007) ("[A]t this stage of the litigation, only a preliminary showing of typicality and adequacy is required."). Once this presumption is triggered, it can only be rebutted upon ***"proof"*** that the presumptive Lead Plaintiff will not fairly represent the interests of the Class—whether another movant might somehow better protect the interests of the Class is irrelevant. 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II) (emphasis added).

**B.**    **The YRC Investor Group Is The Presumptively Most Adequate Plaintiff**

The YRC Investor Group satisfies all three requirements to be the presumptively most adequate plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). First, the YRC Investor Group filed a timely motion for appointment as lead plaintiff. *See* Dkt. No. 9; 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(aa). Second, the YRC Investor Group satisfies the requirements of Rule 23, as demonstrated in its memorandum of law in support of its lead plaintiff motion. *See* Dkt. No. 10 at 5-7; 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Finally, as explained *infra*, the YRC Investor Group has the largest financial interest in the relief sought by the class. *See* 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(bb).

While the PSLRA does not specify a means of calculating the "largest financial interest" among movants, courts typically consider: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered. *See In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 436-37 (S.D.N.Y. 2008). Of these factors, losses suffered is the most important. *See id.* at 437; *see also Foley*, 272 F.R.D. at 128 ("[W]e, as have other courts, shall place the most emphasis on the last of the four factors, the approximate loss suffered by the movant"); *Chahal*, 2018 U.S. Dist. LEXIS 104185, at *12 (equating financial interest with economic loss); *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG)(RER), 2007 U.S. Dist. LEXIS 14878, at *8 (E.D.N.Y. Mar. 2, 2007) (recognizing that most courts consider "the approximate loss a plaintiff suffered during the class period to be most influential in identifying the plaintiff with the largest financial interest"); *Takara Trust v. Molex, Inc.*, 229 F.R.D. 577, 579 (N.D. Ill. 2005) ("most courts simply determine which potential lead plaintiff has suffered the

greatest total losses.").[3]  Second to the amount of the financial loss, many courts look to the number of net shares purchased (*i.e.*, retained shares) during a class period.  *In re Deutsche Bank Aktiengesellschaft Sec. Litig.*, 16-CV-03495 (AT) (BCM), 2016 U.S. Dist. LEXIS 139215, at *11 (S.D.N.Y. Oct. 4, 2016) (same); *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 395 (S.D.N.Y. 2008).

By any relevant metric, the YRC Investor Group has the largest financial interest in this litigation of any movant.  The following chart illustrates the YRC Investor Group's position under the relevant factors as compared to the financial interest of Warwick, the only competing movant.[4]

| Movant | Gross Shares Purchased | Net Shares Purchased | Net Expenditure | Net Loss (LIFO) |
|---|---|---|---|---|
| Rafael Gonzalez | 205,000 | 24,300 | -$299,579 | -$185,197 |
| Sam Reynolds | 20,015 | 20,015 | -$200,550 | -$87,705 |
| Peter Szabo | 40,505 | 15,305 | -$106,653 | -$43,702 |
| Robert Hart | 57,832 | 10,817 | -$78,445 | -$39,576 |
| Robert Paradis | 12,650 | 10,000 | -$69,311 | -$36,785 |
| **YRC Investor Group** | **336,002** | **80,437** | **-$754,539** | **-$392,965** |
| City of Warwick Retirement Fund | 11,280 | 0 | -$127,938 | -$127,938 |

The YRC Investor Group has purchased more shares (both gross and net) during the Class Period than any other movant.  The YRC Investor Group also expended more funds and suffered a larger loss than any other movant.  As such, the YRC Investor Group has the largest financial interest in the relief sought by the class.

In fact, one group member, Rafael Gonzalez, alone, suffered a larger loss than any other

---

[3] Most courts agree that the preferred method to calculate financial losses requires Class Period sales to be matched to purchases on a LIFO—*i.e.*, last-in, first-out—basis.  *See In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 100-102 (S.D.N.Y. 2005).  Indeed, LIFO is the preferred accounting method because it "has been used not only for lead plaintiff calculations, but also to determine compensation amounts for stockholders suffering losses due to securities fraud."  *Id*. at 101.

[4] The data included in the chart is derived from the movants' respective loss charts.  Dkt. Nos. 8-3, 11-3, 12-4.

single movant, and each member of the YRC Investor Group individually retained more shares at the end of the Class Period than Warwick. This further supports the appointment of the YRC Investor Group. *See Freudenberg v. E\*Trade Fin. Corp.*, No. 07-cv-10400, 2008 WL 2876373, at \*5 (S.D.N.Y. July 16, 2008) ("The appropriateness of [the group's] appointment is further supported by the fact that [a single member's] losses alone would qualify it as the party with the largest financial interest in the litigation."); *Barnet v. Elan Corp.*, 236 F.R.D. 158, 162 (S.D.N.Y. 2005) (appointing a group, in part, because two of its members had a larger individual loss than any other movant).

Since the YRC Investor Group has the largest financial interest in the relief sought by the class, filed a timely motion, and satisfies the requirements of Rule 23, it is the presumptively most adequate plaintiff. *See* 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I).

### C.    The YRC Investor Group Is An Appropriate Group

The YRC Investor Group is an appropriate group, and as such the Court should consider the group's aggregate financial interest in this litigation in determining the most adequate plaintiff for the Class. See, e.g., *China Agritech*, 138 S. Ct. at 1807 n.3 ("District courts often permit aggregation of plaintiffs into plaintiff groups"); *Blue Apron*, 2017 U.S. Dist. LEXIS 207531, at \*13; *Weltz v. Lee*, 199 F.R.D. 129, 133 (S.D.N.Y. 2001) ("recogniz[ing] that appointing a group of people as co-lead plaintiffs is allowable under the PSLRA" and finding that a group of seven shareholders with the greatest loss was "presumptively the most adequate plaintiff"); *Barnet*, 236 F.R.D. at 162 (holding that "there can be no doubt" that the PSLRA permits appointment of groups and appointing group consisting of six members with the largest financial interest as lead plaintiff); *In re Cendant Corp. Litig.*, 264 F.3d 201, 266 (3d Cir. 2001) ("The PSLRA explicitly permits a 'group of persons' to serve as lead plaintiff") (citation omitted).

Here, the group is a small, cohesive partnership of five investors, all of whom incurred significant losses in connection with their purchases of YRC securities. *See* Dkt. Nos. 11-2, 11-3. Moreover, the YRC Investor Group's members have communicated via telephone and email to discuss this action, and have submitted a joint declaration attesting, *inter alia*, to the following:

- their strategy for prosecuting this case;

- their reasons for seeking appointment as a group;

- their common goals in ensuring that the Class achieves the best possible result, and that this action is litigated as efficiently as possible; and

- the steps that the YRC Investor Group's members will take to ensure that the Class's claims will be zealously and efficiently litigated.

*See* Lieberman Decl., Ex. A at ¶¶ 7-8, 10-11.  In addition, the YRC Investor Group's members understand and appreciate the obligations of a Lead Plaintiff under the PSLRA, and have agreed on a mechanism to resolve any disagreements among the group with respect to litigation decisions. *Id.* at ¶¶ 9-11.  Courts routinely appoint investor groups as lead plaintiff under such circumstances. *See, e.g.*, *Blue Apron*, 2017 U.S. Dist. LEXIS, at *17 (appointing group of four unrelated investors that submitted declaration attesting "it is prepared to work cooperatively to serve the best interests of the class," and finding that the group is not "so large as to be unwieldy and impracticable"); *Brady v. Top Ships Inc.*, No. 17-CV-4987 (JFB) (SIL), 2018 U.S. Dist. LEXIS 121765, at *20 (E.D.N.Y. July 20, 2018) (appointing group of three investors as lead plaintiff, finding the group "sufficiently demonstrated its members' plans for cooperation and involvement in the litigation for the Court to find this group will best serve the class."); *West Palm Beach Police Pension Fund v. DFC Global Corp.*, No. 13-6731, 2014 U.S. Dist. LEXIS 49595, at *7 (E.D. Pa. Apr. 9, 2014) (appointing group and noting "declaration lay[ing] out the duties and obligations of" the group's members); *La. Mun. Police Emps.' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*, No. 2:11-

7

cv-289, 2012 U.S. Dist. LEXIS 89192, at *11 (D. Vt. Apr. 27, 2012) (finding a joint declaration "sufficient to assure the Court that the [lead] plaintiffs will effectively manage the litigation").

Anticipating a potential argument by Warwick—namely, that the YRC Investor Group's submission of its Joint Declaration with its opposition papers rather than at the time the group filed its motion precludes its consideration—the YRC Investor Group respectfully submits that the PSLRA itself does not contain any requirement to file any sworn statement other than a certification within the 60-day timeframe.  Moreover, courts in the Second Circuit and elsewhere routinely accept group declarations filed *after* lead plaintiff motions as evidence of cohesiveness. *See, e.g., Blue Apron*, 2017 U.S. Dist. LEXIS 207531, at *13 ("the timing of [a joint declaration's] submission is too thin a reed for this decision to turn on"); *Goldstein v. Puda Coal, Inc.,* 827 F. Supp. 2d 348, 356 (S.D.N.Y. 2011) (although declarations "were not submitted when their motion to appoint lead plaintiff was first filed, all three members of the Querub Group have now submitted sworn declarations…"); *Robb v. Fitbit Inc.*, No. 16-cv-00151-SI, 2016 U.S. Dist. LEXIS 62457, at *14-*15 n.7 (N.D. Cal. May 10, 2016) ("As to the timeliness of Fitbit Investor Group's joint declaration, the Court finds no reason to exclude Fitbit Investor Group's joint declaration filed in support of its opposition.").

**D.  The Presumption That The YRC Investor Group Is The Most Adequate Plaintiff Has Not Been And Cannot Be Rebutted**

The lead plaintiff presumption may be rebutted only upon "proof" that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class," or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  No proof has been presented that the YRC Investor Group would be inadequate or subject to unique defenses.  As such, the group should be appointed as lead plaintiff, and no other movant is entitled to consideration. *See Tronox, Inc. Sec. Litig.*, 262

8

F.R.D. 338, 344 (S.D.N.Y. 2009) (the lead plaintiff process ends when "a candidate succeeds in both the first and second phases of inquiry").

### E.     The PSLRA Does Not Privilege Institutional Investors Over Individuals

Anticipating another potential argument by Warwick, the YRC Investor Group respectfully submits that the clear language of the PSLRA does not mention, much less privilege, institutional investors. *See In re Am. Bus. Fin. Servs., Inc. Sec. Litig.*, 04-cv-0265, 2004 U.S. Dist. LEXIS 10200, at *7 (E.D. Pa. June 3, 2004) ("The language of the [PSLRA] does not require that institutional investors take precedence over individual plaintiffs who are otherwise qualified to serve in a lead capacity."). While there is no dispute in the congressional record that Congress hoped that institutional investors would seek appointment as lead plaintiffs, Congress did not make such an aspiration a basis in the text of the PSLRA to deny lead plaintiff status to individuals that had larger losses than institutional investors. Courts that have addressed this issue directly have held that:

> The institutional investor is not presumptively the most adequate plaintiff solely by virtue of its status as an institutional investor, however. If that were the case, Congress would have simply provided that institutional investors are presumptively the most adequate plaintiffs regardless of the size of financial loss and saved the Court from the need to engage in the very analysis it undertakes here. Instead, Congress chose to use the size of financial loss as the initial proxy for determining whether a particular plaintiff would be the "most adequate plaintiff."

*In re Texlon Corp. Secs. Litig.*, 67 F. Supp. 2d 803, 820-22 (N.D. Ohio 1999) (citations omitted). *See also Reiger v. Altris Software, Inc.*, 98-cv-0528 (JFS), 1998 U.S. Dist. LEXIS 14705, at *14 (S.D. Cal. Sept. 11, 1998) ("If Congress had intended to restrict the application of the rebuttable presumption to institutional investors, it could have stated such in the statute.").

The Eastern District of New York's recent decision in *In re Sequans Communs. S.A. Sec. Litig.*, 289 F. Supp. 3d 416 (E.D.N.Y. 2018) is instructive. There, as here, the court faced

9

competing motions filed by (1) a group of individuals alleging an aggregate loss of $144,271,and (2) the Boca Raton Police and Firefighters' Retirement System (the "Retirement System"), an institutional investor alleging a significantly smaller loss of $45,948. *Id.* at 421. The court soundly rejected the argument that, as an institutional investor, the Retirement System should be appointed over the group of individuals in clear contravention of the PSLRA, particularly given the significantly larger losses alleged by the group:

> It is true that several courts have found that the PSLRA's legislative history embodies a preference for institutional investors serving as lead plaintiffs. Whatever the merits of that position may be—the preference is not embodied in the statutory text in any respect—that preference has been "determinative" when an "institutional investor has a slightly lower loss than another potential lead plaintiff." But as discussed above, Retirement System does not have a "slightly lower" loss than Johal and McGee, and the Court rejects the contention (based on an analysis of all four Olsten factors) that the financial interests are comparable.

*Id.* at 422 (citations omitted). Here, as in *Sequans Communs.*, the differential between the competing movants' losses is considerable: the YRC Investor Group's alleged loss of $392,965 is more than three times the size of the $127,938 loss alleged by Warwick. *See* Dkt. Nos. 8-3, 11-3.

In sum, there is no basis in either the clear text of the PSLRA or in federal securities jurisprudence to appoint Warwick as lead plaintiff rather than the YRC Investor Group simply because it is an institutional investor.

**F.      The YRC Investor Group's Selection of Counsel Should Be Approved**

The PSLRA vests authority in the lead plaintiff to select and retain counsel, subject only to the Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). The YRC Investor Group's selection of Pomerantz and GPM as co-lead counsel for the class should be approved. *See Topping v. Deloitte Touche Tohmatsu CPA*, 95 F. Supp. 3d 607, 623 (S.D.N.Y. 2015) ("There is a strong presumption in favor of approving a properly-selected lead plaintiff's decision as to counsel.").

Pomerantz and GPM have the expertise, resources, and experience needed to efficiently and effectively conduct this litigation. *See* Dkt. Nos. 11-4 (Pomerantz firm résumé) & 11-5 (GPM firm résumé). The firms have more than 20 years of experience successfully representing injured investors. *See id.* By approving the YRC Investor Group's selection of counsel, the Court will ensure that the class will receive the highest caliber of legal representation. Accordingly, the YRC Investor Group's selection of lead counsel for the class should be approved. *See Topping*, 95 F. Supp. 3d at 624 (approving a firm with "extensive experience in the field of securities litigation," that has "successfully prosecuted numerous securities fraud class actions").

## III.    CONCLUSION

For the foregoing reasons, the YRC Investor Group respectfully requests that the Court grant its motion and enter an Order: (1) appointing the YRC Investor Group as lead plaintiff; (2) approving the YRC Investor Group's selection of Pomerantz and GPM as co-lead counsel for the class; and (3) denying the competing motion of Warwick.

Dated: March 26, 2019

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
Jonathan D. Lindenfeld
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
         ahood@pomlaw.com
         jlindenfeld@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
Ten South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

**GLANCY PRONGAY & MURRAY LLP**
Lesley Portnoy
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: 310-201-9150
Facsimile: 310-201-9160
Email: lportnoy@glancylaw.com

*Counsel for the YRC Investor Group and
Proposed Lead Counsel for the Class*

**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq.
275 Madison Avenue, 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com

*Additional Counsel*