**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHRISTINA LEWIS, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>YRC WORLDWIDE INC., JAMES L. WELCH, JAMIE G. PIERSON, and STEPHANIE D. FISHER,<br><br>　　　　　　Defendants. | Civ. A. No. 1:19-cv-00001-GTS-ATB |

**MEMORANDUM OF LAW IN FURTHER SUPPORT
OF THE MOTION OF THE CITY OF WARWICK RETIREMENT FUND
FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF ITS SELECTION
OF LEAD COUNSEL, AND IN OPPOSITION TO COMPETING MOTIONS**

**TABLE OF CONTENTS**

**Page**

I.  PRELIMINARY STATEMENT ............................................................................... 1

II. ARGUMENT .......................................................................................................... 3

    A.  The YRC Investor Group Is An Improper Lawyer Created Group That Contravenes the Intent of the PSLRA ............................................... 3

    B.  The YRC Investor Group Cannot Rehabilitate its Defective Motion with New Evidence ................................................................................ 7

    C.  The YRC Investor Group Members Should Not Be Evaluated Individually ........................................................................................... 9

    D.  The YRC Investor Group Failed to Explain Why Multiple Lead Counsel Are Necessary ..................................................................... 10

    E.  Counsel for the YRC Investor Group Have a Checkered History of Moving for Lead Plaintiff on Behalf of Lawyer-Created Groups That Courts Have Rejected ................................................................ 11

    F.  Warwick Is the "Most Adequate Plaintiff" under the Exchange Act ............. 13

III. CONCLUSION .................................................................................................... 14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bhojwani v. Pistiolis*,
   No. 06 CIV. 13761 CM NKF, 2007 WL 9228588 (S.D.N.Y. July 31, 2007) ...................... 4, 11

*Bhojwani v. Pistiolis*,
   No. 06 CVI 13761 CM KNF, 2007 WL 2197836 (S.D.N.Y. June 26, 2007), ........................ 11

*Buettgen v. Harless*,
   263 F.R.D. 378 (N.D. Tex. 2009) ...................................................................................... 10

*Flanagan, Lieberman, Hoffman & Swaim v. Ohio Pub. Employees Ret. Sys.*,
   814 F.3d 652 (2d Cir. 2016) .................................................................................................. 4

*Galmi v. Teva Pharm. Indus. Ltd.*,
   302 F. Supp. 3d 485 (D. Conn. 2017) .............................................................................. 9, 12

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001) ............................................................................................ 2, 13

*In re eSpeed, Inc. Sec. Litig.*,
   232 F.R.D. 95 (S.D.N.Y. 2005) ........................................................................................... 13

*In re KIT Digital, Inc. Sec. Litig.*,
   293 F.R.D. 441 (S.D.N.Y. 2013) ......................................................................................... 13

*In re Level 3 Commc'ns, Inc. Sec. Litig.*,
   No. 09 Civ. 00200, 2009 WL 10684924 (D. Colo. May 4, 2009) ......................................... 9

*In re NYSE Specialists*,
   240 F.R.D. 128 (S.D.N.Y. 2007) ........................................................................................... 8

*In re Petrobras Sec. Litig.*,
   104 F. Supp. 3d 618 (S.D.N.Y. 2015) ........................................................................... passim

*In re Tarragon Corp. Sec. Litig.*,
   No. 07 CIV. 7972PKC, 2007 WL 4302732 (S.D.N.Y. Dec. 6, 2007) ............................ 4, 6, 7

*In re Telxon Corp. Sec. Litig.*,
   67 F. Supp. 2d 803 (N.D. Ohio 1999) ................................................................................... 7

*In re Third Ave. Mgmt. LLC Sec. Litig.*,
   No. 16-CV-02758 (PKC), 2016 WL 2986235 (S.D.N.Y. May 13, 2016) .............................. 6

*Int'l Union of Operating Eng'rs Local No. 478 Pension Fund v. FXCM Inc.*,
   No. 15-cv-3599 (KMW), 2015 WL 7018024 (S.D.N.Y. Nov. 12, 2015) ............................... 7

# TABLE OF AUTHORITIES

Page(s)

*Khunt v. Alibaba Grp. Holding Ltd.*,
    102 F. Supp. 3d 523 (S.D.N.Y. 2015) ........................................................................................ 3

*Nakamura v. BRF S.A.*,
    No. 18-CV-2213 (PKC), 2018 WL 3217412 (S.D.N.Y. July 2, 2018) .................................. 6, 8

*Niederklein v. PCS Edventures!.com, Inc.*,
    No. 1:10-cv-00479-EJD-CWD, 2011 WL 759553 (D. Idaho Feb. 24, 2011) .......................... 11

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*,
    229 F.R.D. 395 (S.D.N.Y. 2004) .............................................................................................. 7

*Reitan v. China Mobile Games & Entm't Group Ltd*,
    68 F. Supp. 3d 390 (S.D.N.Y. 2014) ...................................................................................... 13

*Ross v. Abercrombie & Fitch Co.*,
    No. 2:05-CV-819, 2007 WL 895073 (S.D. Ohio Mar. 22, 2007) .......................................... 8, 9

*Schriver v. Impac Mortg. Holdings, Inc.*,
    No. 8:06-cv-00031 CJC (RNBx), 2006 U.S. Dist. LEXIS 40607 (C.D. Cal. May 2, 2006) ...... 7

*Teran v. Subaye, Inc.*,
    No. 11 CIV. 2614 NRB, 2011 WL 4357362 (S.D.N.Y. Sept. 16, 2011) ........................... *passim*

*Tsirekidze v. Syntax-Brillian Corp.*,
    No. 07-cv-2204, 2008 WL 942273 (D. Ariz. Apr. 7, 2008) ................................................ 9, 10

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
    589 F. Supp. 2d 388 (S.D.N.Y. 2008) ................................................................................... 4, 6

**Statutes**

15 U.S.C.
    § 78u-4, the Private Securities Litigation Reform Act of 1995 ("PSLRA") ..................... *passim*
    § 78u-4(a)(3)(A) ....................................................................................................................... 7
    § 78u-4(a)(3)(A)(i)(II) .............................................................................................................. 8
    § 78u-4(a)(3)(B)(iii)(I) .............................................................................................................. 1

**Rules**

Federal Rules of Civil Procedure
    Rule 23 ............................................................................................................................ 1, 6, 13

I.      **PRELIMINARY STATEMENT**

In addition to the motion of the City of Warwick Retirement Fund ("Warwick") for appointment as lead plaintiff and lead counsel (ECF No. 6), presently pending before the Court is one other competing motion. ECF No. 9.[1] The Private Securities Litigation Reform Act of 1995 ("PSLRA") provides that the Court "shall adopt a presumption that the most adequate plaintiff" is the person that "has the largest financial interest in the relief sought by the class" ***and*** that "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Of the two lead plaintiff motions currently pending before this Court, Warwick is the only lead plaintiff movant that has the largest financial interest and that also satisfies the typicality and adequacy requirements of Rule 23. Therefore, Warwick is entitled to the presumption that it is the "most adequate plaintiff" and should be appointed as lead plaintiff. Warwick, a Rhode Island pension fund with approximately $128,000 in losses in YRC securities and an experienced fiduciary, is precisely the type of lead plaintiff that Congress sought to empower through the enactment of the PSLRA. Warwick has selected Kaplan Fox & Kilsheimer LLP, a firm that has decades of experience in securities litigation, as its counsel and proposed lead counsel for the proposed class.

While the so-called "YRC Investor Group" asserts that it has a larger financial interest than Warwick, it fails to satisfy its burden to show that it is adequate under Rule 23, and therefore, the YRC Investor Group is not entitled to the presumption that it is the "most adequate plaintiff." The burden of proof is on each movant and the PSLRA "does not permit courts simply to 'presume' that the movant with 'the largest financial interest in the relief sought by the class'

---

[1] On March 25, 2019, individual movant Gary Orpana withdrew his motion for appointment as Lead Plaintiff and approval of his selection of Lead Counsel. ECF No. 30.

1

satisfies the typicality and adequacy requirements." *In re Cendant Corp. Litig.*, 264 F.3d 201, 264 (3d Cir. 2001).  Courts in the Second Circuit routinely deny appointment of groups of unrelated individuals as lead plaintiffs because it is contrary to the PSLRA's intent—to eliminate lawyer-driven litigation.  The YRC Investor Group—a collection of five randomly grouped individuals assembled by three law firms—is the epitome of lawyer-driven litigation that the PSLRA sought to eliminate, and its motion should be denied.

There is no evidence in the record that the members of the YRC Investor Group (consisting of Sam Reynolds, Peter Szabo, Robert Hart, Robert Paradis and Rafael Gonzalez) have any relationship preexisting this litigation, any experience as fiduciaries, or any experience managing and overseeing multiple law firms in a complex class action.  Further, there is no explanation in the YRC Investor Group's motion why they need three law firms to represent the proposed class.[2]  Indeed, the YRC Investor Group's lawyers have a checkered history of moving for lead plaintiff with groups of unrelated individuals found by courts to be inadequate under the PSLRA.

The Court should see the YRC Investor Group for what it is— an agglomeration of five unrelated individuals cobbled together by three different law firms with no apparent relationship other than their lawyers' desire to secure a position in the Action as lead counsel—an artificial and

---

[2] Owing to the dearth of information in the record concerning the experience and sophistication of the members of the YRC Investor Group, to assist the Court and Warwick in determining whether each of the members of the YRC Investor Group are qualified under Rule 23, on March 11, 2019, Warwick's counsel sent a letter to counsel for the YRC Investor Group requesting that they provide information that would permit Warwick's counsel to identify each member and conduct research on their adequacy and typicality.  *See* Exhibit A to the Declaration of Jeffrey P. Campisi in Further Support of the Motion of the City of Warwick Retirement Fund for Appointment as Lead Plaintiff and Approval of its Selection of Lead Counsel, and in Opposition to Competing Motions, dated March 26, 2019 (the "Campisi Opp. Decl.").  Tellingly, counsel for the YRC Investor Group did not respond to Warwick's letter.

2

wasteful structure that courts within the Second Circuit have repeatedly rejected as contrary to the PSLRA's intent to eliminate lawyer-driven class action litigation.[3]

Under the PSLRA and Second Circuit case law, Warwick is the "most adequate plaintiff" and should be appointed Lead Plaintiff, and the YRC Investor Group's motion should be denied.

## II. ARGUMENT

### A. The YRC Investor Group Is an Improper Lawyer-Created Group That Contravenes the Intent of the PSLRA

Following the PSLRA, courts in the Second Circuit reject artificial groups cobbled together by their lawyers and created solely for purposes of amassing random investors' losses to assert the largest financial interest in the Action. "Many courts—including this one—have turned away pastiche plaintiffs whose grouping appears to be solely a product of the litigation, because, '[t]o allow an aggregation of unrelated plaintiffs to serve as lead plaintiffs defeats the purpose of choosing a lead plaintiff.' " *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 532 (S.D.N.Y. 2015) (citing *In re Donnkenny Inc. Sec. Litig.,* 171 F.R.D. 156, 157 (S.D.N.Y. 1997);

---

[3] On March 26, 2019, the YRC Investor Group filed a joint declaration in an effort to rehabilitate its defective motion. ECF No. 35-2. This late filing raises serious questions as to the YRC Investor Group's adequacy and ability to oversee and supervise counsel. The joint declaration states that the YRC Investor Group, before making its lead plaintiff motion, approved "The Rosen Law Firm P.A. ("Rosen") and Pomerantz LLP ("Pomerantz") as Co-Lead Counsel" (ECF No. 35-2, ¶ 7; *see also* ¶¶ 10, 11), and does not mention retention of Glancy, Prongay, & Murray LLP ("Glancy") or that they spoke to any lawyers at the Glancy firm. However, the YRC Investor Group's lead plaintiff motion and opposition papers filed with the Court request that Pomerantz and Glancy be appointed as "Co-Lead Counsel" (ECF Nos. 10, 11-4, 11-5, 9-1 (proposed order seeking appointment of Glancy and Pomerantz); ECF No. 35 (YRC Investor Group opposition brief seeking appointment of Pomerantz and Glancy). This unexplained contradiction is troubling and shows i) that the YRC Investor Group's members do not understand who represents them; ii) that the YRC Investor Group members are not aware of or have not read the filings with the Court made on their behalf; iii) that their lawyers overruled their decisions; and/or (iv) that their lawyers made a request for appointment as co-lead counsel that was not authorized by their clients—facts that demonstrate that the YRC Investor Group is an inadequate lawyer-driven artifice controlled by counsel.

3

*see also In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 621, n.2 (S.D.N.Y. 2015) (collecting cases).  "Allowing unrelated plaintiffs to band together in order to manufacture a larger financial interest . . . ensures that the lawyers, who are invariably the matchmakers behind such marriages of convenience, are the true drivers of the litigation."  *In re Petrobras Sec. Litig.*, 104 F. Supp. 3d at 621–22; *see also Flanagan, Lieberman, Hoffman & Swaim v. Ohio Pub. Employees Ret. Sys.*, 814 F.3d 652, 658 (2d Cir. 2016) (stating that under the PSLRA the lead plaintiff—not its lawyers—are "the driver of and decisionmaker for the class action.").  Moreover, lawyer-created groups with multiple plaintiffs and multiple law firms create "problems of coordination, risks duplication of effort, and reduces the incentive of any individual group member to carry out its lead plaintiff duties to the fullest extent."  *In re Petrobras Sec. Litig.*, 104 F. Supp. 3d at 622.  To allow an aggregation of unrelated plaintiffs to serve as lead plaintiffs defeats the purpose of preventing lawyer-driven litigation.  *See In re Tarragon Corp. Sec. Litig.*, No. 07 CIV. 7972PKC, 2007 WL 4302732, at *1-*2 (S.D.N.Y. Dec. 6, 2007) (collecting cases) (citing *In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 157 (S.D.N.Y. 1997)).

     In considering whether a group of persons should serve as lead plaintiff, courts consider factors such as "(1) the existence of a pre-litigation relationship between group members; (2) involvement of the group members in the litigation thus far; (3) plans for cooperation; (4) the sophistication of its members; and (5) whether the members chose outside counsel, and not vice versa."  *Teran v. Subaye, Inc.*, 11 CIV. 2614 NRB, 2011 WL 4357362, at *3 (S.D.N.Y. Sept. 16, 2011) (citing *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 397 (S.D.N.Y. 2008)).  Courts also consider factors "such as the size of the group, whether the group was formed in bad faith, and the relationship among the members of the group."  *Bhojwani v. Pistiolis*, No. 06 CIV. 13761 CM NKF, 2007 WL 9228588, at *1 (S.D.N.Y. July 31, 2007).

4

However, "in order to 'enjoy the rebuttable presumption that the statute confers, there must be some evidence that the members of the group will act collectively and separately from their lawyers[]'" and "a proposed group must 'proffer an evidentiary showing that unrelated members of a group will be able to function cohesively and to effectively manage the litigation apart from their lawyers before its members will be designated as presumptive lead plaintiffs.' *Teran*, 2011 WL 4357362, at *3 (internal citations omitted).

While their burden to do so, the members of the YRC Investor Group submitted no evidence in support of their motion concerning how the so-called group would makes decisions, how the group would resolve disputes, what, if any, relationship they had before the filing of their joint motion, and whether they even knew that a motion was being filed on their behalf by three law firms.[4] Nor is there evidence that the members have communicated with one another regarding how the Action will be prosecuted. They have provided no evidence whether they have a decision-making structure, how they intend to communicate with one another or their counsel, how they will resolve disagreements, how they will supervise and control counsel, or how they intend to function collectively.

Furthermore, the YRC Investor Group has failed to show how a group of five individual lead plaintiffs serves the best interest of the proposed class. If appointed, each member of the YRC Investor Group would have to collect and produce documents, respond to defendants' written

---

[4] In fact, the certifications of each of the YRC Investor Group's members suggest just the opposite. For example, the certification of Sam Reynolds states that he retained The Rosen Law Firm, P.A., which is listed as *Additional Counsel* in the YRC Investor Group's Motion (*see* ECF Nos. 9 and 10), and makes no mention of Pomerantz or Glancy, the YRC Investor Group's proposed co-lead counsel. Further, based on the language used in their respective certifications filed with their motion, compared to the form certifications Pomerantz and Glancy have posted on their respective websites, it appears that Rafael Gonzalez submitted a certification to Glancy and that Peter Szabo, Robert Hart, and Robert Paradis submitted certifications to Pomerantz.

5

discovery, and prepare and sit for five individual depositions, likely in various locations across the U.S. and Canada involving multiple law firms.  *See* ECF No. 35-2 (stating that YRC Investor Group's members reside in Illinois; Arizona; California; Toronto, CA; and Montreal, CA).  A five-person group will lead to waste, unnecessary work and expense for which the YRC Investor Group's lawyers will inevitably seek reimbursement from any recovery of money for the proposed class.  This structure, in the event of a monetary recovery for the proposed class, sets up an unwarranted tax on members of the proposed class that serves no one's interests other than the YRC Investor Group's lawyers.

Courts do not hesitate to deny a proposed group's motion for lead-plaintiff status where the movants "'have not provided a sufficient evidentiary basis for aggregation or if the court otherwise is persuaded that the proposed group has been assembled as a makeshift by attorneys for the purpose of amassing an aggregation of investors purported to have the greatest financial interest in the action.'"  *Teran*, 2011 WL 4357362, at *3 (citing *Varghese*, 589 F. Supp. 2d at 392); *see also In re Third Ave. Mgmt. LLC Sec. Litig.*, No. 16-CV-02758 (PKC), 2016 WL 2986235, at *2 (S.D.N.Y. May 13, 2016) (stating "courts in this district have largely rejected the aggregation of individual shareholders who have no common connection other than their lawyers for purposes of calculating financial interest under the PSLRA.").

The YRC Investor Group has not only failed to make the required "showing that unrelated members of a group will be able to function cohesively and to effectively manage the litigation apart from their lawyers . . . ", but it has failed to provide any evidence whatsoever that it is an appropriate group.  *See  Teran*, 2011 WL 4357362, at *3; *see also Nakamura v. BRF S.A.*, No. 18-CV-2213 (PKC), 2018 WL 3217412, at *3 (S.D.N.Y. July 2, 2018) ("A plaintiff group should not be made lead plaintiff if it offers no evidentiary basis for aggregation or was 'assembled as

makeshift by attorneys' in order to claim the greatest financial interest.") (internal citations omitted); *see also In re Tarragon*, 2007 WL 4302732, at *2 ("[T]o enjoy the rebuttable presumption that the statute confers, there must be some evidence that the members of the group will act collectively and separately from their lawyers."); *see also Int'l Union of Operating Eng'rs Local No. 478 Pension Fund v. FXCM Inc.*, No. 15-cv-3599 (KMW), 2015 WL 7018024, at *4 (S.D.N.Y. Nov. 12, 2015) (rejecting group that "failed to provide the Court with anything beyond conclusory assurances that appointing a group of unrelated investors will not lead to fragmentation").

The YRC Investor Group is a lawyer-driven amalgamation that falls short of meeting the adequacy requirements of Rule 23 of the Federal Rules of Civil Procedure and its motion should be denied. *See, e.g., In re Tarragon*, 2007 WL 4302732, at *2 (refusing to consider the group of unrelated class members that failed to provide evidence of its cohesiveness).

### B.  The YRC Investor Group Cannot Rehabilitate its Defective Motion with New Evidence

The YRC Investor Group's attempt to satisfy their evidentiary burden ***after*** filing their motion should be rejected as untimely. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*, 229 F.R.D. 395, 410 (S.D.N.Y. 2004) ("[PSLRA] . . . precludes consideration of . . . any other pleading . . . filed ***after*** the sixty (60) day window has closed.") (emphasis in original); *see also In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 818 (N.D. Ohio 1999) (same).[5] The threshold adequacy showing should have been submitted with its initial lead plaintiff motion. *See generally* 15 U.S.C. § 78u-4(a)(3)(A) (60-day deadline). Simply put, the YRC Investor Group had ample opportunity to submit evidence with its original motion, but failed

---

[5] In the Action, the 60-day window expired on March 4, 2019, the date when Warwick and the YRC Investor Group filed their respective motions.

7

to do so.  *See Schriver v. Impac Mortg. Holdings, Inc.*, No. 8:06-cv-00031 CJC (RNBx), 2006 U.S. Dist. LEXIS 40607, at *28 n.10 (C.D. Cal. May 2, 2006) (refusing to allow a group to submit declarations demonstrating their cohesiveness where there was no reason the submissions could not have been made with the initial motion); *Ross v. Abercrombie & Fitch Co.*, No. 2:05-CV-819, 2007 WL 895073, at *4 n.3 (S.D. Ohio Mar. 22, 2007) (same); *cf. In re NYSE Specialists*, 240 F.R.D. 128, 142 (S.D.N.Y. 2007) ("[C]ourts have strictly construed this time limitation and found those motions for appointment as lead plaintiff filed outside of the sixty-day window to generally be time-barred.").  Any such submission by the YRC Investor Group should not be considered by the Court at this late juncture.

However, assuming *arguendo*, the Court were to consider such a belated evidentiary submission by the YRC Investor Group, their motion should still be denied.  The court's decision in *Nakamura v. BRF S.A.* is instructive on this point.  In *Nakamura*, the lead plaintiff group in question, a group consisting of two entities, did not submit evidence regarding the adequacy of the group in their moving papers.  *Id*. at *3.  After the lead plaintiff deadline expired, the lead plaintiff group submitted a joint declaration in an effort to rehabilitate its motion that stated, *inter alia*, "that they will 'oversee their counsel,' 'exercise joint decision-making,' 'actively monitor the activities of their counsel,' and that they 'have established procedures for overseeing the progress of the litigation and communicating regularly between ourselves and our counsel.'"  *Id*. at *3.  The Court held that in making such "vague assurances" the lead plaintiff group had not satisfied their burden, and noted that "the joint declaration has not made a satisfactory showing as to the sophistication of the group's proposed members" and did not explain "whether the members chose outside counsel, and not vice versa" *Id*. at *3-4. (internal citation omitted).  The Court here should similarly find that the vague assurances offered by the YRC Investor Group are insufficient to establish its

8

adequacy.

### C. The YRC Investor Group Members Should Not Be Evaluated Individually

Any argument by the YRC Investor Group that the Court may evaluate the losses of the members of the YRC Investor Group individually should be rejected. Indeed, such an attempt at disaggregation would confirm that there was never a legitimate basis for the grouping. To the extent that any YRC Investor Group members may have individual losses greater than Warwick it is irrelevant because the PSLRA requires class members seeking lead plaintiff appointment to file a motion with the court. 15 U.S.C. §78u-4(a)(3)(A)(i)(II). The individual members of the YRC Investor Group have not done so. The YRC Investor Group's motion succeeds or fails as a whole—the member's individual losses should not be considered individually as potential lead plaintiffs.

Indeed, when faced with requests to disaggregate plaintiff groups during the parties' briefing, courts have rejected such tactics. *See, e.g., In re Petrobras*, 104 F. Supp. 3d at 624 n.4 (refusing to evaluate group member with "the largest individual financial interest in the litigation" because "it at no time sought to serve as individual lead plaintiff."); *In re Level 3 Commc'ns, Inc. Sec. Litig.*, No. 09 Civ. 00200, 2009 WL 10684924, at *5 (D. Colo. May 4, 2009) (refusing to consider the two members from the failed group, and holding that "[the group] did not request that any of its constituents be appointed as lead plaintiff individually in the event the Court declined to appoint the group. Therefore, neither [member] satisfies the prerequisite of the [PSLRA]'s lead plaintiff provision that the person 'made a motion' in response to the notice of the putative class action."); *Tsirekidze v. Syntax-Brillian Corp.*, No. 07-cv-2204, 2008 WL 942273, at *4 (D. Ariz. Apr. 7, 2008) ("The Farrukh Group moved for lead plaintiff as a group and will be evaluated as such."); *Ross*, 2007 WL 895073, at *4 ("[t]here is no requirement in the [PSLRA] that the Court realign a proposed group to cure a deficiency in adequacy of representation."); *Galmi v. Teva*

9

*Pharm. Indus. Ltd.*, 302 F. Supp. 3d 485, 504 n.10 (D. Conn. 2017) (declining to consider individual member of a group who did not move to be individually appointed because of the court's concerns that he was controlled by counsel).

Moreover, if the YRC Investor Group suggests that it can be disaggregated, it would confirm the lawyer-driven formation of the group and further call into question the adequacy of the individual members to represent the class. *See, e.g.*, *Tsirekidze*, 2008 WL 942273, at *4 ("The Farrukh Group moved for lead plaintiff as a group and will be evaluated as such. The willingness to abandon the group only suggests how loosely it was put together. Given no evidence of cohesiveness, we are not convinced that the Farrukh Group will adequately represent this class."); *Buettgen v. Harless*, 263 F.R.D. 378, 382 (N.D. Tex. 2009) (determining that the "[group's] motion [was] undermined by the group's invitation to the Court to hand-pick one of its constituents to serve as lead plaintiff if the Court deem[ed] the [group] inappropriate."). As such, any argument that the Court may hand-pick one member of the YRC Investor Group as lead plaintiff should be rejected.

### D. The YRC Investor Group Failed to Explain Why Multiple Lead Counsel Are Necessary

Warwick, which is represented by one firm (Kaplan Fox), will be able to effectively and efficiently manage and control this litigation. *See In re Petrobras*, 104 F. Supp. 3d at 624 (finding one institutional lead plaintiff was "far more likely to deliver the vigorous, investor-driven representation to which the class is entitled than the multi-plaintiff, multi-firm groups that the Court has rejected."). In sharp contrast, the YRC Investor Group's proposed three-firm counsel structure is unwarranted and will lead to unnecessary duplication and waste of resources. The fact that the YRC Investor Group could not work together to pick a single lead counsel, and instead ask the Court to approve two different firms as co-lead counsel and a third additional counsel, is

10

further evidence of inadequacy because it demonstrates a lack of cohesion, potential conflicts among the members of the group, and strongly suggests that the YRC Investor Group is controlled by its counsel.

That the YRC Investor Group has proposed a wasteful and unnecessary three-law firm counsel structure to represent the proposed class is further evidence that the YRC Investor Group is not entitled to the presumption of adequacy.

### E. Counsel for the YRC Investor Group Have a Checkered History of Moving for Lead Plaintiff on Behalf of Lawyer-Created Groups That Courts Have Rejected

Further evidence of YRC Investor Group's inadequacy is that it has asked the Court to approve its "selection" of three law firms that have a checkered history of filing motions on behalf of inadequate groups. The YRC Investor Group's counsel (Pomerantz, Glancy, and The Rosen Firm), all have a history of filing applications that several courts have determined to be unsupported and lawyer-driven. *See, e.g., Rabkin v. Lion Biotechnologies, Inc.*, No. 17-cv-02086-SI (N.D. Cal.) (where the Pomerantz and The Rosen Law Firm withdrew lawyer-created group's motion after judicial scrutiny); *Niederklein v. PCS Edventures!.com, Inc.*, No. 1:10-cv-00479-EJD-CWD, 2011 WL 759553, at *6 (D. Idaho Feb. 24, 2011) ("there is nothing in the record contravening the appearance that The Rosen Law Firm was not the driving force behind the grouping"); *Teran*, 2011 WL 4357362, at *3-4 and n.5 (stating "It is apparent that the Pilney Group was cobbled together by [The Rosen Law Firm] for purposes of making this motion and becoming the lead plaintiff" and "It is worth noting that counsel for the Pilney Group, The Rosen Law Firm, P.A., also represented the group rejected by Judge Marrero in *Varghese.*"); *see also Bhojwani v. Pistiolis*, No. 06 CIV. 13761 CM KNF, 2007 WL 2197836, at *5-6 (S.D.N.Y. June 26, 2007), *report and recommendation adopted*, No. 06 CIV. 13761 CM NKF, 2007 WL 9228588 (S.D.N.Y. July 31, 2007) (denying lead plaintiff motion filed by Glancy on behalf of lead plaintiff

11

"comprised of five unrelated members" because "[t]he possibility that lawyers formed the[] group[] 'to manipulate the selection process, and thereby gain control of the litigation' is too great to be disregarded because such machinations are precisely what PSLRA was enacted to restrict."); *see also Galmi*, 302 F. Supp. 3d at 495–96 (finding that "[a]bsent such evidence [of how the proposed lead plaintiff group came to be introduced to each other], one must assume that they were introduced by the two law firms, Pomerantz LLP and Cohen Milstein Sellers & Toll, PLLC, that currently seek to represent the class in this action" and further describing in detail "circumstantial evidence that the grouping of investor plaintiffs in this action (and [another] action) was the result of an agreement between Pomerantz and Cohen Milstein. Such an agreement is evidence of exactly the type of lawyer driven litigation that the PSLRA sought to avoid.").

Counsel for the YRC Investor Group's conduct in *Rabkin v. Lion Biotechnologies, Inc.*, No. 17-cv-02086-SI (N.D. Cal.) illustrates how quickly these firm's so-called groups disintegrate upon even the slightest judicial scrutiny. In *Lion Biotechnologies,* the court *sua sponte* ordered individual lead plaintiff applicants of a so-called group to file a declaration setting forth, among other facts, "how each individual came to retain his/her respective lawyer(s)," the Pomerantz and The Rosen Law Firm. Instead of responding to the court's order, the Pomerantz and The Rosen Law Firm withdrew their clients' motion. *See* Campisi Opp. Decl., Ex. B, C. The YRC Investor Group should similarly withdraw its motion pending before this Court.[6]

---

[6] Counsel for the YRC Investor Group has made similarly unsupported, lawyer-driven lead plaintiff motions on behalf of individual investors as well. In *Garbowski v. Tokai Pharms., Inc.*, Case No. 16-cv-11963-MLW (D. Mass.), in a telephonic hearing before the court, the lead plaintiff movant testified that he did not speak to or retain his proposed lead counsel, Pomerantz, before filing his lead plaintiff motion requesting their appointment as lead counsel. *See* Campisi Opp. Decl., Ex. D (*Garbowski v. Tokai Pharms., Inc.*, Case No. 16-cv-11963-MLW (D. Mass.), Hearing Transcript, Oct. 10, 2017, at 18:10-12; 31:17-32:14; 33:18-34:3; 34:20-25). During the same hearing, the proposed lead plaintiff further testified that, contrary to his sworn certification,

## F. Warwick Is the "Most Adequate Plaintiff" under the Exchange Act

The Court has a meaningful alternative to the lawyer-created and wasteful structure proposed by YRC Investor Group's lawyers. Warwick—a sophisticated institutional investor—is precisely the type of investor Congress sought, through the enactment of the PSLRA, to encourage to assume a more prominent role in securities litigation. As Congress noted in its PSLRA Statement of Managers Report, the PSLRA was designed "to increase the likelihood that institutional investors will serve as lead plaintiff[]," in part, because "[i]nstitutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake." *In re Cendant*, 264 F.3d at 244, 264 (quoting H.R. Rep. No. 104-327, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 737)); *see also In re KIT Digital, Inc. Sec. Litig.*, 293 F.R.D. 441, 446 (S.D.N.Y. 2013) (noting the "statutory preference for institutional lead plaintiffs"); *Reitan v. China Mobile Games & Entm't Group Ltd*, 68 F. Supp. 3d 390, 396 (S.D.N.Y. 2014) (recognizing that "many courts have demonstrated a clear preference for institutional investors to be appointed as lead plaintiffs," and collecting cases); *see also In re Petrobras*, 104 F. Supp. 3d at 624 (finding that one institutional lead plaintiff was "far more likely to deliver the vigorous, investor-driven representation to which the class is entitled than the multi-plaintiff, multi-firm groups that the Court has rejected."); *see also In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 100 (S.D.N.Y. 2005) (holding that "a group of unrelated investors should not be considered as lead plaintiff when that group would displace the institutional investor

---

he did not review a complaint before signing his certification (*id.* at 18:18-23), he was unaware of the lead plaintiff's responsibilities until after his motion was filed (*id.* at 34:1-35:4), and he actually filled out a certification for a different law firm (*id.* at 55:8-18) that was subsequently provided to a firm with whom Pomerantz was working. Seven days after the hearing, Pomerantz withdrew the motion. *Garbowski v. Tokai Pharms., Inc.*, Case No. 16-cv-11963-MLW (D. Mass.), ECF No. 91, (Campisi Opp. Decl., Ex. E).

13

preferred by the PSLRA").

Warwick satisfies the requirements of the PSLRA and Rule 23 and is, therefore, the most adequate plaintiff and it should be appointed lead plaintiff and Kaplan Fox should be approved as lead counsel for the proposed class.

## III. CONCLUSION

For all of the foregoing reasons, Warwick respectfully requests that the Court: (1) appoint Warwick as Lead Plaintiff; (2) approve Warwick's selection of Kaplan Fox as Lead Counsel; (3) deny the YRC Investor Group's motion; and (4) grant such other relief as the Court may deem just and proper.

Dated:  March 26, 2019

Respectfully submitted,

*/s/ Jeffrey P. Campisi*
Jeffrey P. Campisi (Bar Roll # 700753)
Donald R. Hall (*pro hac vice* to be filed)
Jason A. Uris (*pro hac vice* to be filed)
**KAPLAN FOX & KILSHEIMER LLP**
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714
Email: jcampisi@kaplanfox.com
      dhall@kaplanfox.com
      juris@kaplanfox.com

*Attorneys for Movant City of Warwick Retirement Fund*

14

## CERTIFICATE OF SERVICE

I, Jeffrey P. Campisi, hereby certify that, on March 26, 2019, I caused the foregoing to be served on all counsel of record by filing the same with the Court using the CM\ECF system which will send electronic notices of the filing to all counsel of record.

                                         */s/ Jeffrey P. Campisi*
                                           Jeffrey P. Campisi (Bar Roll #: 700753)
                                           **KAPLAN FOX & KILSHEIMER LLP**
                                           850 Third Avenue, 14th Floor
                                           New York, NY 10022
                                           Telephone: (212) 687-1980
                                           Facsimile: (212) 687-7714
                                           Email: jcampisi@kaplanfox.com