```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
CHRISTINA LEWIS,
                                        Plaintiff,

-v-                                     1:19-CV-1

YRC WORLDWIDE, INC.,

                                        Defendant.
----------------------------------------------------------x
```

**TRANSCRIPT OF PROCEEDINGS**
**BEFORE THE HONORABLE ANDREW T. BAXTER**
April 25, 2018
100 South Clinton Street, Syracuse, New York

*Hannah F. Cavanaugh, RPR, CSR*
*Official United States Court Reporter*
*100 South Clinton Street*
*Syracuse, New York 13261-7367*
*(315) 234-8545*

APPEARANCES:

For the Filing Plaintiff:
(Appearance by telephone)

      THE ROSEN LAW FIRM
      275 Madison Avenue
      34th Floor
      New York, New York 10016
      BY:  **PHILLIP KIM, ESQ.**

For Movant City of Warwick Retirement Fund:
(Appearances by telephone)

      KAPLAN FOX & KILSHEIMER, LLP
      850 Third Avenue
      14th Floor
      New York, New York 10022
      BY:  **JEFFREY P. CAMPISI, ESQ.**

      BOND SCHOENECK & KING
      One Lincoln Center
      Syracuse, New York 13202
      BY:  **JONATHAN B. FELLOWS, ESQ.**

For Movant YRC Investor Group:
(Appearance by telephone)

      POMERANTZ, LLP
      600 Third Avenue
      New York, New York 10016
      BY:  **JEREMY A. LIEBERMAN, ESQ.**

For Defendants YRC Worldwide, Inc., James Welch, Jamie
Pierson, and Stephanie Fisher:
(Appearances by telephone)

      BARCLAY DAMON, LLP
      Barclay Damon Tower
      125 East Jefferson Street
      Syracuse, New York 13202
      BY:  **DAVID G. BURCH, JR., ESQ.**

      PROSKAUER ROSE, LLP
      11 Times Square
      New York, New York 10036
      BY:  **JONATHAN E. RICHMAN, ESQ.**

APPEARANCES:
(Cont.)

        PROSKAUER ROSE, LLP
        1001 Pennsylvania Avenue N.W.
        Suite 600 South
        Washington, DC 20004
        BY:   **RALPH C. FERRARA, ESQ.**

(In chambers, counsel present by telephone.  Time noted:  10:00 a.m.)

THE COURT:  All right.  Good morning.  This is Judge Baxter.  This is Lewis versus YRC Worldwide, Inc, et al., 1:19-CV-1.  Why don't I -- there are a lot of people on the line.  Let me start with the original filing plaintiff.

Is Mr. Kim on the line?

MR. KIM:  I'm here, your Honor.

THE COURT:  Good morning.

MR. KIM:  Phillip Kim, Rosen Law Firm.  Good morning.

THE COURT:  Are there any representatives for the defendant -- on the line for the defendants?

MR. FERRARA:  Yes, your Honor.  Ralph Ferrara and Jonathan Richman from Proskauer.

MR. BURCH:  And David Burch from Barclay Damon, your Honor.

THE COURT:  Okay.  David Burch, Jonathan Richman, and Ralph Ferrara.

For the YRC Investment Group?

MR. LIEBERMAN:  Good morning, your Honor.  Jeremy Lieberman from Pomerantz.

THE COURT:  And for the Warwick Retirement Fund?

MR. CAMPISI:  Good morning, your Honor.  Jeff Campisi from Kaplan Fox.

THE COURT:  Okay.

MR. FELLOWS:  Hello, Judge.  Jonathan Fellows is on, as well, Judge.

THE COURT:  All right.  Good morning.

All right.  So I know that the -- all the parties were -- who were still active in the process to appoint lead plaintiff have agreed on an alternative proposal.  However, it's my opinion that I am still obligated to ensure that the new proposed co-plaintiffs and counsel meet the requirements and the goals of the PSLRA and not just in the interests of the various firms who have been jockeying for a spot at the head of the table.  So I'm going to make an appropriate record, although I am going to, I think barring some startling development, approve the stipulation.

So on January 2, 2019, this action was filed against YRC Worldwide, Inc. and three individual defendants, alleging violations of Section 10(b) and 20(a) of the Exchange Act on behalf of a class of purchasers of YRC securities during the class period.

On the same day, pursuant to the Private Securities Litigation Reform Act, or the PSLRA, notice of the action was published to class members on Business Wire advising purchasers of YRC securities of the existence of the lawsuit and the nature of the defendants' alleged conduct.  The notice further advised class members of their right to move the Court to the appointed lead plaintiff within 60 days.

Three lead plaintiff motions were filed on the evening of the March 4, 2019, deadline by the Warwick Retirement Fund, that had an economic loss of $127,938 from investments in YRC stock.  That fund was represented by the Kaplan Fox Law Firm, with offices in New York, the Chicago area, and two locations in California.  The Warwick motions and supporting papers were docketed at #6 through #8.

The second filed motion was from the YRC Investor Group, a group of five private investors from Chicago, Phoenix, Los Angeles, Toronto, and Montreal, with individual economic losses of between $36,785 and $185,197, the last amount being Mr. Rafael Gonzalez.  The YRC Investor Group had an aggregate loss of $392,965.  The YRC Investor Group was represented by proposed co-lead counsel, Pomerantz, LLP, Glancy Prongay & Murray, LLP, as well as the Rosen Law Firm from New York City, which also initially filed the action on behalf of Christina Lewis.  The motion and related submissions from the YRC Investor Group were docketed as #9 through #11.

Another individual investor filed a lead plaintiff motion, but withdrew that motion on March 25th.  The competing motion and the withdrawal entries are at Docket Nos. 12, 30, and 34.

These motions were referred to me by Chief Judge Suddaby and, after prompt initial consideration of the motions, I ordered responsive submissions, which were filed on

March 26th by the Warwick Retirement Fund and the YRC Investor Group at Docket Nos. 35 and 36 to 37, and I scheduled today for the return on the motions.  In light of the stipulation of the parties, I changed the appearance from an in person appearance to a telephone conference.

On April 22nd of 2019, counsel for the YRC Investor Group and the Warwick Retirement Fund filed a proposed stipulation proposing that one member of the YRC Investment Group, Peter Szabo, and the Warwick Fund be appointed as co-lead plaintiff and that the Pomerantz Law Firm and the Kaplan Fox firm be appointed as co-lead counsel.  That stipulation is Docket No. 51.  Although the stipulation was submitted for the signature of Chief District Judge Suddaby, I consulted with his chambers and was authorized to address the stipulation.

I asked counsel for the YRC Investment Group to file further confirmation that all of the other members of the group, including Rafael Gonzalez, who had the largest economic loss of any individual investor involved in the lead plaintiff motions, and the other two law firms who represented the YRC Group were consulted and had no objection to the stipulation.  That stipulation confirming all of that, Docket No. 54, was filed on April 23rd.

District Judge Richard Sullivan has, in my view, cogently articulated the state of the law in this circuit with respect to lead plaintiff motions.  I'm going to read a somewhat

extensive quote from *Hansen v. Ferrellgas Partners, LP*, a Southern District of New York case from January 19, 2017, reported at 2017 WL 281742, pages 2 through 4.  I'm going to omit most of the supporting citations in Judge Sullivan's opinion, and I'm also going to skip over some portions just so I've stated the law in a kind of bare framework.

"Under the procedures established by the PSLRA, a district court 'shall appoint as lead plaintiff the member or members of the purported plaintiff class that the Court determines to be the most capable of adequately representing the interests of class members.'  The PSLRA creates a rebuttable presumption that the most adequate plaintiff is the 'person or group of persons' who is named plaintiff or timely movant, satisfies the requirements of the Federal Rule of Civil Procedure 23, and possesses 'the largest financial interest in the relief sought by the class.'  Once established, the presumption of the most adequate plaintiff may be rebutted 'only upon proof by a member of the purported class' that the presumptive lead plaintiff 'will not fairly and adequately protect the interest of the class' or 'is subject to unique defenses that render the plaintiff incapable of adequately representing the class.'"

"For the rebuttable presumption to apply, the courts have required only a prima facie showing that the requirements of Rule 23 are met."  "Of these requirements, only 'typicality'

and 'adequacy' are 'relevant to a determination of lead plaintiff under the PSLRA.'"  "With respect to typicality, a lead plaintiff's claims must 'arise from the same course of events' as the class's claim and rely on 'similar legal arguments to prove the defendant's liability.'"  "With respect to adequacy, a lead plaintiff satisfies this requirement if 'class counsel is qualified, experienced, and generally able to conduct the litigation; second, there is no conflict between the proposed lead plaintiff and the members of the class; and three, that the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy."

"The statute makes clear, 'groups of plaintiffs are specifically permitted by the PSLRA to be appointed lead plaintiff."  That's the end of the quote from the *Hansen* case.

The Court considering groups of investors applying for lead plaintiff status may consider group members individually for that position.  See, for example, *Fries v. Northern Oil & Gas, Inc.*, a Southern District of New York case from May 8, 2017, reported at 2017 WL 1880819 at page 3, which held, and I'm quoting, "Although the Court denied Atkinson and Miller's joint motion for appointment as lead plaintiffs, the Court may consider Atkinson and Miller as if they have moved individually to be appointed as lead plaintiffs," closed quote. And *Fries*, in turn, collects some cases on that point.

Courts have appointed a group of previously unrelated

investors as lead plaintiffs when such appointment was unopposed. That is established by, among other cases, *Galmi v. Teva Pharmacy Industries, Ltd.*, a District of Connecticut case from 2017, reported at 302 F. Supp. 3d 485 at 496. That case, in turn, cites *Johnson v. Pozen, Inc.,* a Middle District of North Carolina case from February 15, 2008, reported 2008 WL 474334 at page 3.

But some courts have rejected stipulations where the proposed co-lead plaintiffs and counsel did not meet the requirements of the PSLRA. See, for example, *In Re: Cree, Inc. Securities Litigation*, also from the Middle District of North Carolina in 2003 reported at 219 F.R.D. 369 at 371 to 372.

So I've got a couple of questions, I guess to be directed at Mr. Lieberman, who's the sole lawyer for the YRC Investor Group here. Of the five individual investors in the YRC Investor Group, Rafael Gonzalez had the largest loss from trading YRC stock, 185,197, and Peter Szabo, the designated co-lead counsel, had the third largest loss of 43,402. Warwick Retirement Fund is an institutional investor who had a loss of 127,938, making the total loss of the proposed co-plaintiffs $171,640, which is slightly less than Mr. Gonzalez's individual loss. Based on the stipulations, it appears that Mr. Gonzalez has no objection to having Warwick and Mr. Szabo take the role of co-lead plaintiffs.

I'm -- so I'm presuming, Mr. Lieberman, and I'm going

to ask you to confirm, that your clients consulted and concluded that Mr. Szabo was most committed to and best qualified to serve in this role, including Mr. Gonzalez?

MR. LIEBERMAN:  Yes.  Yes, that's correct, your Honor.

THE COURT:  Okay.  And one of the -- Mr. Szabo also works in the trucking industry, which is the industry in which YRC Investor Group is in, correct?

MR. LIEBERMAN:  That's correct, your Honor.

THE COURT:  All right.  So my only other question is: What's the advantage of having two law firms involved and what respective roles do you expect the two firms to play here?

MR. LIEBERMAN:  Well, I think, your Honor, these advantages -- one issue is that there's a Supreme Court ruling for *China Agritech*, which actually states that, you know, if one class representative or lead plaintiff is somehow disqualified, then the statute of limitations is not tolled if another plaintiff comes and steps forward and attempts to lead the claims on behalf of a class.  So there is -- and *China Agritech* actually, in light of that -- in light of the potential risk to the class, the PSLRA allows for the groups to be formed.

So it seems to us that it's clear that there's an advantage in having a group just to -- for that particular concern, that there could be some disqualification or it could be one of the plaintiffs decides they're no longer interested in

pursuing the claim and then, you know, the class is left without a head and someone who comes in there after to lead the class may be found not to -- the class may be found not to have their statue of limitations tolled in such a situation. So that's one advantage.

The other advantage is that, you know, both firms work together, Kaplan Fox and Pomerantz, and we intend to co-lead the case on an equal basis. And both firms are highly skilled, we've worked together in other cases, and so we do believe there would be, certainly, efficiencies. Working together, there's more resources for the class in prosecuting the claim. And so, you know, we did determine that is -- it would be in the best interest not to continue to litigate until the lead plaintiff appointment has been to -- come to a resolution.

Issues were raised by Steve Warwick regarding the size of the grouping, so therefore, as part of discussions and part of discussions with the other proposed lead plaintiffs in the YRC Group, we determined let's put -- take the one plaintiff we thought would do the best job in litigating the case and prosecuting the case on behalf of the class from who we have and we selected Mr. Szabo from that group.

THE COURT: All right. Mr. Campisi, anything further you want to say on the issue of co-lead counsel on behalf of the of the Warwick Retirement Fund?

MR. CAMPISI:  No, I concur with what Mr. Lieberman said, that, you know, we would work together with the Pomerantz firm, you know, in an efficient way.  We've done that in the past and expect to be able to do that in this case, so I think that, you know, that's in the best interest of the proposed class, so, you know, we agree with what Mr. Lieberman said.

THE COURT:  Okay.  Well, the Court did, frankly, have some concerns about the initial composition of the YRC Investor Group and its lawyers, but I conclude that the revised proposal for co-lead plaintiffs and counsel, to which none of the active participants in the co-lead plaintiff motions have objected, is consistent with the standards of the PSLRA.

The YRC Investor Group and the Warwick Retirement Fund both made timely motions and the claims of Mr. Szabo and the fund are typical of other potential class members in that they arise from the same course of events and rely on similar factual and legal arguments.

The Warwick Fund and Mr. Szabo have substantial economic losses from trading in YRC stock that provides an adequate financial interest in the litigation.  The only investor in the mix with a larger loss, Mr. Gonzalez, has consented to Mr. Szabo being the representative of the individual investor group to serve as co-lead counsel with Warwick.

Given its role as an institutional investor and

fiduciary, the Warwick Fund is well suited to represent the interests of other class members and to play a meaningful role in the supervision of the lawyers in managing the litigation. The legislative history of the PSLRA notes the advantages of having an institutional investor as a lead plaintiff.  See, for example, *In Re:  Gentiva Securities Litigation*, an Eastern District of New York case from 2012 reported at 281 F.R.D. 108 at 113, adding an individual investor as co-lead plaintiff will make a diversity -- provide, "a diversity of representation," and Mr. Szabo's experience in the trucking industry may prove valuable to counsel given that YRC Worldwide is also in that business and the regulation of that business is -- was an issue here in the case.  And for that, I would cite the *Johnson v. Pozen* case I cited in full earlier at page 3.

Kaplan Fox & Kilsheimer and Pomerantz, LLC have been chosen by the co-lead plaintiffs as co-lead counsel.  They have been selected in various securities class actions in this circuit as lead counsel and have experience and qualifications to serve in that role in this case.

The *Gentiva Securities* case at page 121 documents some cases in which Kaplan Fox has been appointed as lead counsel, and a similar case reflecting the selection of the Pomerantz group in cases in this circuit include *In Re:  Sequans Communications S.A. Securities Litigation,* an Eastern District of New York case reported at -- it's from 2018, reported at 289

F. Supp. 3d 416 to 426.

There are some district court cases in this circuit which have questioned the need for co-lead counsel in these cases, however, the appointment of two firms to share that duty is quite common in this circuit.  See, for example, the *Sequans* case at page 426.  Given the stated commitment and the stipulation of Mr. Szabo and the Warwick Fund to supervise the conduct of the litigation and ensure that counsel coordinate appropriately and avoid any duplication of effort, I will approve Kaplan Fox and Pomerantz, LLP as the co-lead counsel.

So based on all of this, all the foregoing, I will approve the proposed lead plaintiffs stipulation, Docket No. 51, and I will order that the competing lead counsel motions of the Warwick Retirement Fund, Docket No. 6, and the YRC Investor Group, Docket No. 9, be terminated as moot.

Based on the March 21, 2019, stipulation, Docket No. 23, the parties agreed that the following would happen within 14 days of the order appointing lead plaintiffs and lead counsel; first, that there'd be a proposed schedule for filing an amended complaint or the designation of the initial complaint as the operative pleading; and then there would also -- the parties would propose a briefing schedule on any anticipated defense motion to dismiss.

So I presume we're going to proceed in that fashion based on the stipulation, but I will ask whether any of the

parties think there are any other housekeeping issues we need to discuss or anything about the future steps in the litigation we need to discuss this morning.  I'll start with the representatives for the co-lead plaintiffs.

MR. LIEBERMAN:  So this is Mr. Lieberman, your Honor, and -- from Pomerantz, and we don't think there's anything to -- further to raise.  The schedule as to the amended complaint and motion to dismiss is all set forth and so we'll proceed accordingly and that will be with the rest of the litigation.

THE COURT:  All right.  Do the defendants have any issues they want to raise this morning?

MR. FERRARA:  No, your Honor.

THE COURT:  And that was who, please?

MR. FERRARA:  Ralph Ferrara.

THE COURT:  Okay.  So I will so order the stipulation and we'll wait to get the proposals with respect to the schedule within 14 days.

All right.  Anything further from anyone?

MR. LIEBERMAN:  No, thank you, your Honor.

MR. FERRARA:  Perhaps only -- perhaps only one -- this is from Ralph Ferrara.

THE COURT:  Okay.

MR. FERRARA:  I think all counsel on this call very much appreciate the thoroughness and, frankly, thoughtfulness that you used in this -- making these judgments, so it was good

to be before the Court.

THE COURT:  Well, it's the first time I've had to wrestle with this particular issue, so I spent a good part of my Easter weekend preparing for combat on this and -- but anyway, we got -- came to a good result, I think.  All right.

MR. FERRARA:  Thank you very much.

MR. LIEBERMAN:  Thank you, your Honor.

(Time noted:  10:25 a.m.)

CERTIFICATE OF OFFICIAL REPORTER

I, HANNAH F. CAVANAUGH, RPR, CSR, Official U.S. Court Reporter, in and for the United States District Court for the Northern District of New York, DO HEREBY CERTIFY that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated this 8th day of May, 2019.

X_____

HANNAH F. CAVANAUGH, RPR, CSR

Official U.S. Court Reporter