**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHRISTINA LEWIS, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> YRC WORLDWIDE INC., JAMES L. WELCH, JAMIE G. PIERSON, STEPHANIE D. FISHER, and DARREN D. HAWKINS, <br><br> Defendants. | Case No. 1:19-cv-00001-GTS-ATB |

**MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR ENTRY OF
ORDER PRELIMINARILY APPROVING SETTLEMENT AND
<u>ESTABLISHING NOTICE PROCEDURES</u>**

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................. 1

II.    SUMMARY OF THE LITIGATION AND THE SETTLEMENT ................................... 2

III.    THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES ................................................................................. 3

    A.    Numerosity ..................................................................................................... 5

    B.    Commonality .................................................................................................. 6

    C.    Typicality ...................................................................................................... 6

    D.    Adequacy ...................................................................................................... 7

        (i)    Adequacy of the Proposed Class Representatives ..................................... 8

        (ii)    Rule 23(g) Adequacy of the Proposed Class Counsel ............................... 8

    E.    Common Questions Predominate and a Class Action Is Superior to Other Methods of Adjudication ................................................................... 9

IV.    PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT IS APPROPRIATE .................................................................................................. 11

    A.    Standards for Preliminary Approval .................................................................. 11

    B.    Plaintiffs and Their Counsel Have Adequately Represented the Class ................ 13

    C.    The Proposed Settlement Is the Result of Arm's-Length Negotiations by Informed, Experienced Counsel ............................................................... 13

    D.    The Relief Provided to the Class Is Adequate ...................................................... 14

        (i)    The Substantial Benefits for the Class, Weighed Against the Costs, Risks and Delay of Trial and Appeal Support Preliminary Approval ................ 14

            a)    The Complexity, Expense, and Likely Duration of the Litigation 15

            b)    The Stage of the Proceedings and the Amount of Discovery Completed ....................................................................................... 16

            c)    The Risk of Establishing Liability and Damages ......................... 16

            d)    The Risks of Maintaining the Class Action Through Trial ........... 17

            e)    The Ability of Settling Defendants to Withstand a Greater Judgment and the Reasonableness of the Settlement Fund .......... 18

        (ii)    The Proposed Method for Distributing Relief Is Effective ...................... 19

        (iii)    Attorneys' Fees, Reimbursement of Expenses, and PSLRA Award ........ 19

        (iv)    The Parties Have Agreed to a Side Agreement Regarding Opt-Outs ....... 20

    E.    There Was No Preferential Treatment; The Plan Treats Settlement Class Members Equitably .................................................................................... 21

i

ii

V.      THE PROPOSED FORMS AND METHOD OF PROVIDING NOTICE TO THE CLASS ARE APPROPRIATE AND SATISFY RULE 23, THE PSLRA, AND DUE PROCESS .................................................................................................................. 22

VI.     PROPOSED SCHEDULE OF EVENTS ........................................................................ 24

VII.    CONCLUSION ............................................................................................................... 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ackerman v. Coca-Cola Co.*, No. 09 CV 395 DLI RML,
  2013 WL 7044866 (E.D.N.Y. July 18, 2013)................................................................................9

*Amchem Prods., Inc., v. Windsor*,
  521 U.S. 591 (1997)................................................................................3, 4, 10, 11

*Baker v. SeaWorld Entm't, Inc.*, No. 14CV2129-MMA (AGS),
  2020 WL 818893 (S.D. Cal. Feb. 19, 2020)................................................................24

*Bozak v. FedEx Ground Package Sys., Inc.*,
  2014 WL 3778211 (D. Conn. July 31, 2014)................................................................20

*Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024,
  1990 WL 73423 (E.D.N.Y. May 22, 1990)................................................................19

*Capsolas v. Pasta Res. Inc.*,
  2012 WL 4760910 (S.D.N.Y. Oct. 5, 2012)................................................................20

*Carson v. Am. Brands, Inc.*,
  450 U.S. 79 (1981)................................................................................11

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
  504 F.3d 229 (2d Cir. 2007)................................................................5

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974)................................................................14, 15, 18

*Consol. Edison, Inc. v. Ne. Utilities*,
  332 F. Supp. 2d 639 (S.D.N.Y. 2004)................................................................22, 23

*Consols. Rail Corp. v. Town of Hyde Park*,
  47 F.3d 473 (2d Cir. 1995)................................................................5

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001)................................................................13

*Espinoza v. 953 Assocs. LLC*,
  280 F.R.D. 113 (S.D.N.Y. 2011)................................................................9

*Fogarazzao v. Lehman Bros.*,
  232 F.R.D. 176 (S.D.N.Y. 2005)................................................................8

iii

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
903 F.2d 176 (2d Cir. 1990)..................................................................................................7

*Gilliam v. Addicts Rehab. Ctr. Fund*,
2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) ........................................................................20

*Graham v. Capital One Bank (USA), N.A.*, No. SACV13743JLSJPRX,
2014 WL 12579809 (C.D. Cal. July 29, 2014)......................................................................24

*Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST,
2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) ......................................................................21

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
298 F.R.D. 171 (S.D.N.Y. 2014) ..........................................................................................24

*In re Am. Bank Note Holographics, Inc.*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001)........................................................................15, 16, 17

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
689 F.3d 229 (2d Cir. 2012)..................................................................................................10

*In re China Med. Corp. Sec. Litig.*, No. 8:11-1061 JLS (ANX),
2014 WL 12581781 (C.D. Cal. Jan. 7, 2014) .......................................................................14

*In re Citigroup Inc. Bond Litig.*,
296 F.R.D. 147 (S.D.N.Y. 2013) .....................................................................................21, 22

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05 Civ. 10240(CM),
2007 WL 2230177 (S.D.N.Y. July 27, 2007) .........................................................5, 6, 7, 11

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
312 F.R.D. 332 (S.D.N.Y. 2015) .............................................................................................6

*In re Glob. Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) .......................................................................................6, 17

*In re Immune Response Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007)..................................................................................14

*In re Indep. Energy Holdings PLC*,
2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003).....................................................................13

*In re Initial Pub. Offering Sec. Litig.*,
671 F. Supp. 2d 467 (S.D.N.Y. 2009)....................................................................................20

*In re Marsh & McLennan Companies, Inc. Sec. Litig.*, No. 04 CIV. 8144 (CM),
2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ...........................................................7, 10, 17

iv

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ..................................................................................14

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   330 F.R.D. 11 (E.D.N.Y. 2019) ...............................................................................15

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   991 F. Supp. 2d 437 (E.D.N.Y. 2014) .....................................................................20

*In re Sadia, S.A. Sec. Litig.*,
   269 F.R.D. 298 (S.D.N.Y. 2010) ...............................................................................5

*In re Signet Jewelers Ltd. Sec. Litig.*, No. 1:16-CV-06728-CM-SDA,
   2020 WL 4196468 (S.D.N.Y. July 21, 2020) ..........................................................15

*In re Sturm, Ruger, & Co., Inc. Sec. Litig.*, 3:09CV1293 VLB,
   2012 WL 3589610 (D. Conn. Aug. 20, 2012) ..........................................................17

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008)........................................................................18

*In re Tremont Sec. Law, State Law & Ins. Litig.*, No. 08-CV-11117,
   2015 WL 5333494 (S.D.N.Y. Sept. 14, 2015),
   *aff'd in part, vacated in part,*
   699 F. App'x 8 (2d Cir. 2017) ............................................................................21, 22

*In re Vivendi, S.A. Sec. Litig.*,
   838 F.3d 223 (2d Cir. 2016)........................................................................................5

*In re Vivendi Universal, S.A.*,
   242 F.R.D. 76 (S.D.N.Y. 2007) .........................................................................5, 6, 7

*In re Warner Commc'ns Sec. Litig.*,
   798 F.2d 35 (2d Cir. 1986).........................................................................................15

*Johnson v. Nextel Commc'ns Inc.*,
   780 F.3d 128 (2d Cir. 2015).........................................................................................6

*Karvaly v. eBay, Inc.*,
   245 F.R.D. 71 (E.D.N.Y. 2007) ..................................................................................3

*Landmen Partners, Inc. v. Blackstone Grp., L.P.*, No. 08-cv-03601-HB-FM,
   2013 WL 11330936 (S.D.N.Y. Dec. 18, 2013) ........................................................20

*Leung v. Home Boy Rest. Inc.*, No. 07CIV8779RJSDFE,
   2009 WL 398861 (S.D.N.Y. Feb. 18, 2009)..............................................................13

*Marisol A. by Forbes v. Giuliani*,
  929 F. Supp. 662 (S.D.N.Y. 1996) ...................................................................................7

*Marisol A. v. Giuliani*,
  126 F.3d 372 (2d Cir. 1997)............................................................................................7

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
  2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) ...............................................................20

*Morris v. Affinity Health Plan, Inc.*,
  859 F. Supp. 2d 611 (S.D.N.Y. 2012)............................................................................18

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
  339 U.S. 306 (1950).......................................................................................................24

*Palacio v. E\*TRADE Fin. Corp.*, No. 10 Civ. 4030 (LAP) (DCF),
  2012 U.S. WL 2384419 (S.D.N.Y. June 22, 2012) .......................................................11

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985).......................................................................................................10

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993).............................................................................................5

*Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ. 7961 CM,
  2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ...............................................................22

*Spann v. AOL Time Warner Inc.*, No. 02 CIV. 8238DLC,
  2005 WL 1330937 (S.D.N.Y. June 7, 2005) ..................................................................11

*Thomas v. MagnaChip Semiconductor Corp.*, No. 14-CV-01160-JST,
  2017 WL 4750628 (N.D. Cal. Oct. 20, 2017).................................................................21

*Vargas v. Capital One Fin. Advisors*,
  559 F. App'x 22 (2d Cir. 2014)......................................................................................22

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011).........................................................................................................6

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005).......................................................................................11, 13

*Weinberger v. Kendrick*,
  698 F.2d 61 (2d Cir. 1982)...............................................................................................3

## Statutes

15 U.S.C. §78u-4(a)(4) ...........................................................................................................20

15 U.S.C. § 78u-4(a)(7) ...................................................................................................22, 23, 24

CARES Act.........................................................................................................................18

PSLRA .......................................................................................................................... passim

Securities Exchange Act of 1934.........................................................................................2

## **Rules**

Fed. R. Civ. P. 12.................................................................................................................2
Fed. R. Civ. P. 23........................................................................................................ passim

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Lead Plaintiffs Peter Szabo and the City of Warwick Retirement Fund ("Plaintiffs" or "Lead Plaintiffs") respectfully submit this memorandum of law in support of their unopposed motion for preliminary approval of the class action settlement.

## I.    INTRODUCTION

Plaintiffs and YRC Worldwide Inc. ("YRC" or the "Company"), James L. Welch, Jamie G. Pierson, Stephanie D. Fischer and Darren D. Hawkins (together with YRC, "Defendants"), have agreed to settle the above-captioned action (the "Action") for $2,100,000 in cash by the terms stated in the Stipulation ("Settlement").[1] Plaintiffs now seek an order: (1) preliminarily certifying the Settlement Class for the purposes of settlement; (2) preliminarily approving the terms of the Settlement as set forth in the Stipulation; (3) approving the form and method for providing notice of the Settlement; and (4) scheduling a hearing for final approval of the Settlement ("Settlement Hearing") at which the Court will consider the request for final approval of the proposed Settlement, the Plan of Allocation of Settlement proceeds ("Plan"), the request for attorneys' fees, expenses and PSLRA Award, and entry of the Judgment.

The Settlement was achieved only after substantial arm's-length negotiations over the course of two days with the aid of highly regarded mediators, retired California Superior Court Judge Daniel Weinstein and Jed Melnick of JAMS. The Settlement provides a substantial, immediate, and guaranteed recovery for Settlement Class Members. The Settlement is a favorable result in light of several obstacles Plaintiffs faced with ongoing litigation, particularly in light of the Court's dismissal of the Action on March 27, 2020. ECF No. 89.  Plaintiffs and Lead Counsel

---

[1] All capitalized terms used herein have the meanings set forth and defined in the Stipulation of Settlement ("Stipulation") dated April 12, 2021 and filed contemporaneously herewith. Emphasis is added and internal citations and quotations are omitted unless otherwise specified.

1

believe that the proposed Settlement is fair, reasonable, and adequate, and in the Settlement Class Members' best interest. The proposed content and manner of providing notice satisfies requirements imposed by Fed. R. Civ. P. 23, the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and due process. For these reasons the Court should preliminarily approve the Settlement.

## II.    SUMMARY OF THE LITIGATION AND THE SETTLEMENT

On January 2, 2019, plaintiff Christina Lewis filed the Action against YRC Worldwide Inc. and several of its present or former officers or directors alleging violations of the Securities Exchange Act of 1934 ("Exchange Act"). ECF No. 1.

On April 25, 2019, the Court appointed City of Warwick Retirement Fund and Peter Szabo as Lead Plaintiffs and the law firms of Kaplan Fox & Kilsheimer LLP and Pomerantz LLP as Lead Counsel for the putative Class. ECF No. 50.

On June 19, 2019, Lead Plaintiffs filed the [Corrected] Amended Class Action Complaint for Violations of the Federal Securities Laws ("Complaint") against YRC and four of its present or former officers or directors (James L. Welch, Jamie G. Pierson, Stephanie D. Fisher, and Darren D. Hawkins) asserting claims under the Exchange Act. ECF No. 75.

On July 15, 2019, Defendants moved to dismiss the Complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 81. Plaintiffs filed an opposition on August 16, 2019, and Defendants filed a reply on August 30, 2019.  ECF Nos. 83-84.

By order dated March 27, 2020, the Court granted Defendants' motion and dismissed all claims in the Action and entered a judgment. ECF Nos. 89-90.

On April 27, 2020, Lead Plaintiffs filed a notice of appeal to the Second Circuit from the dismissal of the Action. The Settling Parties fully briefed the appeal, and the Second Circuit tentatively scheduled it for a hearing during the week of March 22, 2021.

With the appeal pending, the Settling Parties participated in two full days of mediation with a mediation team led by retired California Superior Court Judge Daniel Weinstein of JAMS on February 1 and 2, 2021. At the end of the February 2, 2021 mediation session, the Settling Parties reached an agreement in principle on the primary terms of a settlement, memorializing the substantive terms of settlement in a term sheet that same day.

On February 5, 2021, the Settling Parties informed the Second Circuit of the status of their settlement negotiations and asked the Second Circuit to remand the case to the Court for eventual consideration of the proposed settlement and to retain jurisdiction over the appeal in case the proposed settlement does not receive final approval.

The Second Circuit granted the motion on February 10, 2021.

### III. THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

In preliminarily approving the proposed Settlement, this Court must first consider whether to conditionally certify the Settlement Class for settlement purposes. *Amchem Prods., Inc., v. Windsor*, 521 U.S. 591, 620 (1997); *Manual for Complex Litigation* (Fourth) § 21.632. The Second Circuit has long acknowledged the propriety of certifying a class solely for settlement purposes. *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982). "The type of certification approval that courts provide with a preliminary settlement approval is accorded under a more relaxed standard" than in the typical certification process. 4 NEWBURG ON CLASS ACTIONS § 13:18 (5th ed. 2012). The Court need not conduct a rigorous analysis at this stage to determine whether to certify a settlement class but should reserve this analysis for the final approval hearing. *Karvaly v.*

*eBay, Inc.*, 245 F.R.D. 71, 86 (E.D.N.Y. 2007). In certifying the Settlement Class the Court is not required to determine whether the action, if tried, would present intractable management problems, "for the proposal is that there be no trial." *Id.* at 620; *see also* Fed. R. Civ. P. 23(b)(3)(D).

Certification of a settlement class is appropriate where the proposed class and proposed class representative meet the four requirements of Rule 23(a): (1) "numerosity" – the class is so numerous that joinder of all members is impracticable, (2) "commonality" – there are questions of law or fact common to the class, (3) "typicality" – the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) "adequacy" – the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). In addition, certification of a class action for damages requires a showing, under Rule 23(b)(3), that questions of law or fact common to the members of the class predominate over individual issues of law or fact ("predominance") and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy ("superiority"). Fed. R. Civ. P. 23(b)(3).

Here, the Parties have stipulated to the certification of the Settlement Class for settlement purposes only. Stipulation XII.B. For settlement purposes, Plaintiffs request that the Court certify the Settlement Class defined in the Stipulation, comprising "all persons and entities who, during the Class Period, purchased or otherwise acquired YRC Securities, and who were damaged thereby." ¶12. The Class Period is defined as March 10, 2014 through December 14, 2018, inclusive. ¶13.[2] The proposed Settlement Class meets the requirements of and satisfies Rule 23(a) and 23(b)(3).

---

[2] Excluded from the Settlement Class are: (i) Defendants, and officers and directors of YRC during the Class Period; (ii) YRC's Affiliates, subsidiaries, successors, and predecessors, (iii) any entity in which YRC or any individual identified in subpart (i) has or had during the Class Period a Controlling Interest, (iv) for the individuals identified in subpart(s) (i), (ii) and/or (iii), their Family Members, legal representatives, heirs, successors, and assigns, (v) such persons or entities who

### A.    Numerosity

Rule 23(a)(1) requires a class be so large that joinder of all members is "impracticable." Fed. R. Civ. P. 23(a)(1). For purposes of Rule 23(a)(1), "[i]mpracticable does not mean impossible," *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993), and Plaintiffs must only show "that the difficulty or inconvenience of joining all members of the class make the use of the class action appropriate." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007). In the Second Circuit, "numerosity is presumed at a level of 40 members." *Consols. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *see also In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 83 (S.D.N.Y. 2007), *aff'd sub nom. In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016) ("Precise quantification of the class members is not necessary because a court may make common sense assumptions regarding numerosity"). Although the exact size of the Settlement Class is not yet known, the numerosity requirement is generally satisfied in a securities class action where "a large number of shares were outstanding and traded during the relevant period." *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 304 (S.D.N.Y. 2010); *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05 Civ. 10240(CM), 2007 WL 2230177, *12 (S.D.N.Y. July 27, 2007) (numerosity requirement is generally met in cases involving nationally traded securities.).

Here, there are likely hundreds, if not thousands of potential Settlement Class Members as YRC's shares were publicly traded on the New York Stock Exchange with millions of shares purchased during the Class Period. Thus, the numerosity requirement is met.

---

submit valid and timely requests for exclusion from the Class, and (vi) such persons or entities who, while represented by counsel, settled an actual or threatened lawsuit or other proceeding against one or more of the Releasees arising out of or related to the Released Class Claims. ¶12.

### B.    Commonality

Commonality requires that "questions of law or fact [are] common to the class." *EVCI*, 2007 WL 2230177, at *13. Securities class actions are particularly well-suited to class treatment as the commonality requirement "is applied permissively." *Id*; *see also Vivendi*, 242 F.R.D. 84. Commonality does not mean that all class members must make identical claims and arguments, but only that "named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 451 (S.D.N.Y. 2004). The common issue must be of such a nature that it is "capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015) (*quoting Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011)). Commonality is satisfied if the plaintiffs charge defendants with a common course of misconduct – particularly where, as here, the alleged misrepresentations appeared in the company's public filings and statements. *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 312 F.R.D. 332, 341 (S.D.N.Y. 2015).

Here, commonality is met due to common questions of law and fact pertaining to whether false statements of material fact were made in YRC's SEC filings and public statements, whether Defendants acted with scienter in misrepresenting or omitting to state material information concerning YRC, and the extent of damages sustained by members of the Class and the appropriate measure of damages.

### C.    Typicality

Putative class representatives' claims must also be typical of those of the class members. Fed. R. Civ. P. 23(a)(3). Typicality requires that "the claims of the named plaintiffs arise from the same practice or course of conduct that gives rise to the claims of the proposed class members."

6

*Marisol A. by Forbes v. Giuliani*, 929 F. Supp. 662, 691 (S.D.N.Y. 1996), *aff'd sub nom. Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997). Typical does not mean identical. *EVCI*, 2007 WL 2230177, at *13.; *Vivendi*, 242 F.R.D. at 85 ("In prosecuting their case, plaintiffs will necessarily seek to develop facts relating to the … dissemination of allegedly false or misleading statements underlying their claims. Such allegations are generally considered sufficient to satisfy the typicality requirement"). Particular factual differences, differences in the amount of damages claimed, or even the availability of certain defenses against a class representative may not necessarily render their claims atypical. *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990).

Plaintiffs' claims are typical of those of the Settlement Class. Plaintiffs purchased YRC's shares during the Class Period and were damaged upon revelation of Defendants' alleged misrepresentations and omissions, just like all of the Settlement Class Members. Plaintiffs satisfy the typicality requirement.

### D.    Adequacy

Rule 23(a)(4) requires that the representative parties fairly and adequately protect the interests of the class. This requirement has traditionally entailed a two-pronged inquiry: first, that the interests of the representative parties will not conflict with the interests of Settlement Class Members, and second, that the representative parties' counsel is qualified, experienced, and able to conduct the proposed litigation vigorously. *EVCI*, 2007 WL 2230177, at *13. Plaintiffs are adequate if their interests do not conflict with those of the class. *In re Marsh & McLennan Companies, Inc. Sec. Litig.*, No. 04 CIV. 8144 (CM), 2009 WL 5178546, at *10 (S.D.N.Y. Dec. 23, 2009). Pursuant to Rule 23(g), adequacy of proposed class counsel is now considered separately from the determination of the adequacy of the proposed class representatives. Both prongs of the adequacy requirement are satisfied here.

### (i)    Adequacy of the Proposed Class Representatives

Plaintiffs do not have any interests antagonistic to those of the proposed Settlement Class. Plaintiffs have submitted certifications consistent with the PSLRA, indicating that they reviewed the complaint, that they are willing to represent the Class (ECF Nos. 11-2 at 7-8; 8-2), oversaw and monitored counsel during the course of the litigation. Plaintiffs are seeking, on their own behalf and on behalf of all Settlement Class Members, to recover from Defendants damages caused by Defendants' alleged unlawful conduct. No evidence exists of any conflict of interests with the Settlement Class. Thus, Plaintiffs are adequate class representatives.

### (ii)    Rule 23(g) Adequacy of the Proposed Class Counsel

Rule 23(g) requires a court to assess the adequacy of proposed class counsel. To that end, the court must consider: (1) the work counsel has done in identifying or investigating potential claims in the Action; (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the Action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. *Fogarazzao v. Lehman Bros.*, 232 F.R.D. 176, 182 (S.D.N.Y. 2005).

The Court-appointed firms serving as co-Lead Counsel, Pomerantz LLP and Kaplan Fox & Kilsheimer LLP, are experienced in prosecuting class actions having successfully prosecuted securities class actions in this Circuit and throughout the country. Courts have consistently found these firms to be well suited as class counsel in securities class actions. Lead Counsel's respective firm resumes were previously submitted to the Court. ECF Nos. Nos. 8-4 and 11-4. Both firms leveraged their skills and resources to secure this proposed Settlement. The Settlement was reached only after Lead Counsel spent considerable time on the Action for the benefit of YRC shareholders including: (i) conducting a thorough investigation including identifying and interviewing numerous former YRC employees, (ii) drafting the Complaint, (iii) opposing Defendants' motion

8

to dismiss, (iv) briefing their appeal to the Second Circuit, and (v) preparing for and participating in a two-day mediation. Lead Counsel's significant securities class action experience make them knowledgeable and capable of evaluating cases to determine when a settlement is beneficial to investors, or when the prudent course would be to continue litigation. Thus, Lead Counsel should be appointed as Class Counsel for the Settlement Class.

> **E.      Common Questions Predominate and a Class Action Is Superior to Other Methods of Adjudication**

To certify a class under Rule 23(b)(3), the Court must find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Plaintiffs satisfy the predominance and superiority criteria.

"The focus of the predominance inquiry is on defendants' liability, not on damages." *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 125 (S.D.N.Y. 2011). When common questions are a significant aspect of a case and they can be resolved in a single action, class certification is appropriate. *See* 7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d*, § 1788, at 528 (1986). "Rule 23(b)(3) requires merely that common issues predominate, not that all issues be common to the class." *Ackerman v. Coca-Cola Co.*, No. 09 CV 395 DLI RML, 2013 WL 7044866, at *18 (E.D.N.Y. July 18, 2013). Here, no question exists that issues surrounding Defendants' alleged conduct, such as whether their statements and omissions were materially false or misleading, and whether their conduct caused damages to Plaintiffs and the Settlement Class, are common to each member of the Settlement Class. If each class member were to bring an individual action, each would be required to demonstrate the same misrepresentations and/or omissions to

9

prove liability. Thus, this case illustrates the principle that the predominance requirement is "readily met" in many securities fraud class actions. *Amchem*, 521 U.S. at 625.[3]

Rule 23(b)(3) also requires a finding that the class action mechanism is a superior method of adjudicating Plaintiffs' and the Settlement Class members' claims. The factors relevant to a finding of superiority include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Many of the Settlement Class Members are individuals for whom prosecution of a costly damages action on their own behalf does not provide a realistic or efficient alternative. Additionally, Plaintiffs believe no difficulties will be encountered in the management of this class action and Settlement.

This Court should balance the merits of certifying a class against other possible methods of adjudication. Without securities class actions, investors who have been defrauded by securities law violations, but whose losses do not run into several millions of dollars, would likely have no practical recourse. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("most of the plaintiffs would have no realistic day in court if a class action were not available"). The "class action is uniquely suited to resolving securities claims," because "the prohibitive cost of instituting individual actions" in such cases gives class members "limited interest in individually controlling the prosecution or defense of separate actions." *Marsh & McLennan*, 2009 WL 5178546, at *12.

---

[3] Additionally, the Second Circuit has found that "a settlement class ordinarily need not demonstrate that the fraud-on-the-market presumption applies to its claims in order to satisfy the predominance requirement." *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 241 (2d Cir. 2012) (citing *Amchem*, 521 U.S. at 620).

*See also Amchem*, 521 U.S. at 617 ("While the text of Rule 23(b)(3) does not exclude from certification cases in which individual damages run high, the Advisory Committee had dominantly in mind vindication of 'the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.'"). Moreover, a class action avoids the possibility of repetitious litigation and efficiently resolves the claims of the entire Settlement Class at once, conserving judicial resources. Thus, a class action is the superior method of adjudication.

Plaintiffs have satisfied all the requirements of Rules 23(a) and (b)(3). The Court should preliminarily certify the Settlement Class for settlement purposes.

## IV. PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT IS APPROPRIATE

### A. Standards for Preliminary Approval

The law favors settlement, particularly in class actions and other complex cases because they tie up substantial judicial resources, use up the parties' time and money, and, in such cases, litigation resolution is usually significantly delayed. *Palacio v. E\*TRADE Fin. Corp.*, No. 10 Civ. 4030 (LAP) (DCF), 2012 U.S. WL 2384419, at \*7 (S.D.N.Y. June 22, 2012) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)); *see also Spann v. AOL Time Warner Inc.*, No. 02 CIV. 8238DLC, 2005 WL 1330937, at \*6 (S.D.N.Y. June 7, 2005) ("[P]ublic policy favors settlement, especially in the case of class actions"); *Newberg on Class Actions* (4th ed. 2002) § 11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). Due to the presumption in favor of settlement, and "[a]bsent fraud or collusion," courts "should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *EVCI*, 2007 WL 2230177, at \*12. When reviewing a proposed class settlement, courts should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981).

Where, as here, the parties propose to resolve class action litigation through a class-wide settlement, they must request and obtain the Court's approval. Fed. R. Civ. P. 23(e). Pursuant to Rule 23(e)(1), as recently amended, the issue at preliminary approval turns on whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Rule 23(e)(2) provides:

> (2) **_Approval of the Proposal._**  If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
> > (A)    the class representatives and class counsel have adequately represented the class;
> >
> > (B)    the proposal was negotiated at arm's length;
> >
> > (C)    the relief provided for the class is adequate, taking into account:
> >
> > > (i)    the costs, risks, and delay of trial and appeal;
> > >
> > > (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > >
> > > (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and
> > >
> > > (iv)    any agreement required to be identified under Rule 23(e)(3); and
> >
> > (D)    the proposal treats class members equitably relative to each other.

Plaintiffs request at this stage only that the Court take the first step in the settlement approval process by granting preliminary approval of the proposed Settlement. A preview of the factors considered by courts in granting final approval of class action settlements demonstrates that this Settlement is well within the range of possible approval. The Court will likely be able to approve the Settlement as fair, reasonable and adequate under Rule 23(e)(2).

12

**B.      Plaintiffs and Their Counsel Have Adequately Represented the Class**

Plaintiffs have diligently prosecuted the Action on behalf of the Settlement Class, including by thoroughly investigating the facts to draft the Complaint, opposing Defendants' motion to dismiss, fully briefing their appeal to the Second Circuit, and negotiating a favorable settlement that provides a substantial and immediate recovery to Settlement Class Members.

**C.      The Proposed Settlement Is the Result of Arm's-Length Negotiations by Informed, Experienced Counsel**

The Rule 23(e)(2)(B) factor is a procedural one – whether "the proposal was negotiated at arm's length." Courts initially presume that a proposed settlement is fair and reasonable when it is the result of arm's-length negotiations. *Wal-Mart Stores, Inc.*, 396 F.3d at 116; *Leung v. Home Boy Rest. Inc.*, No. 07CIV8779RJSDFE, 2009 WL 398861, at *1 (S.D.N.Y. Feb. 18, 2009) (preliminary approval is appropriate where "the proposed settlement appears to be the product of extensive, arms-length negotiations conducted by experienced counsel with input from the parties"). Further, a mediator's involvement in settlement negotiations supports a presumption of fairness. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in … settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *In re Indep. Energy Holdings PLC*, 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003) ("the fact that the Settlement was reached after exhaustive arm's-length negotiations, with the assistance of a private mediator experienced in complex litigation, is further proof that it is fair and reasonable.").

Plaintiffs were armed with sufficient information to evaluate the Settlement's benefits and drawbacks as a result of conducting their own investigation to draft the Complaint, fully briefing Defendants' motion to dismiss and Plaintiffs appeal. Moreover, the Due-Diligence Discovery provided as part of the Settlement will provide Plaintiffs anther opportunity to confirm their prior

13

assessments. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ("[I]n the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement."). Informal information sharing is especially appropriate where discovery has been stayed pursuant to the PSLRA. *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007).

On February 1 and 2, 2021, the Settling Parties attended a virtual mediation with retired California Superior Court Judge Daniel Weinstein and Jed Melnick of JAMS. In advance of that session the Settling Parties submitted mediation statements addressing key aspects of liability and damages. During the mediation session, the Settling Parties argued the merits of Plaintiffs' claims and the defenses thereto. A settlement in principle was reached on February 2, 2021 and memorialized that same day. The negotiations were at all times hard-fought and conducted at arm's length and have produced a result that the Settling Parties believe to be in their respective best interests. The arm's-length nature of the negotiations and the mediators' involvement support the conclusion that the Settlement is fair and was achieved free of collusion. *See In re China Med. Corp. Sec. Litig.*, No. 8:11-1061 JLS (ANX), 2014 WL 12581781, at *4 (C.D. Cal. Jan. 7, 2014) (that a settlement was reached as a result of mediation before Mr. Melnick weighs in favor of approval).

### D.    The Relief Provided to the Class Is Adequate

#### (i)    The Substantial Benefits for the Class, Weighed Against the Costs, Risks and Delay of Trial and Appeal Support Preliminary Approval

The principal factors in evaluating the fairness of a proposed settlement in the Second Circuit, set out in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), are:

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of

14

discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

Courts also consider the factors outlined in the recently adopted Fed. R. Civ. P. 23(e), observing that "the new Rule 23(e) factors . . . add to, rather than displace, the *Grinnell* factors" and "there is significant overlap between the *Grinnell* factors and the Rule 23(e)(2)(C-D) factors . . . ." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019). In weighing these factors, courts recognize that settlements require significant compromise between negotiating parties. Courts do not attempt to rewrite settlement agreements or try to resolve issues that are left undecided as a result of the parties' compromise. *See, e.g., In re Warner Commc'ns Sec. Litig.*, 798 F.2d 35, 37 (2d Cir. 1986) ("It is not a district judge's job to dictate the terms of a class settlement.").[4]

### a)    The Complexity, Expense, and Likely Duration of the Litigation

"Courts recognize that securities class actions are generally complex and expensive to prosecute." *In re Signet Jewelers Ltd. Sec. Litig.*, No. 1:16-CV-06728-CM-SDA, 2020 WL 4196468, at *4 (S.D.N.Y. July 21, 2020); *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 424 (S.D.N.Y. 2001) ("most securities fraud cases, are complex and challenging as regards both liability and damage.").

The Settlement provides a guaranteed, immediate recovery to YRC investors. If the Settlement were not reached and assuming, *arguendo*, Plaintiffs were successful on their appeal,

---

[4] It is not possible to evaluate the second factor, the reaction of the class to the settlement, at this time as notice of the Settlement has not yet been disseminated.

the parties would have to incur substantial costs and engage in prolonged litigation through class certification, summary judgment, trial and if applicable, subsequent appeals. Discovery costs, including document production and hosting fees as well as experts, including for class certification, expert reports, and expert testimony would be significant and could be add up to several hundred thousand (or even millions of) dollars for Plaintiffs. Reaching this Settlement now not only guarantees recovery for the Settlement Class, but also reduces overall litigation expenses.

There is no guarantee that Plaintiffs would have been able to obtain the necessary evidence to prove their case through discovery; and even if they could do so, it would be costly, take years, and delay any potential recovery to Settlement Class Members. Thus, the complexity, expense, and likely duration of these proceedings favor approval of the Settlement.

**b)**    **The Stage of the Proceedings and the Amount of Discovery Completed**

As discussed above, Plaintiffs conducted a thorough investigation supporting a detailed Complaint. By thoroughly investigating the case and submitting mediation statements in advance of mediation, Plaintiffs had the information they needed to evaluate the Settlement. *Am. Bank Note*, 127 F. Supp. 2d at 425-426 ("To approve a proposed settlement … the Court need not find that the parties have engaged in extensive discovery.  Instead, it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to intelligently make … an appraisal of the Settlement."). Plaintiffs will have the opportunity to confirm their assessment through the Due-Diligence Discovery that will be provided pursuant to the terms of the Settlement.

**c)**    **The Risk of Establishing Liability and Damages**

There were substantial risks in the Action and further prosecution may have yielded limited or no recovery. Most significantly, this Court dismissed Plaintiffs' claims in their entirety. ECF Nos. 89-90.  Therefore, the only path forward for Plaintiffs was if their appeal was successful.

16

Even if successful, that would be no guarantee as to continued success in the case. There are significant risks to proving (not merely alleging) falsity, materiality, loss causation and damages. Moreover, proving scienter, a notoriously difficult and risky element of securities fraud cases, was not certain. *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 426 (S.D.N.Y. 2001); *In re Sturm, Ruger, & Co., Inc. Sec. Litig.*, 3:09CV1293 VLB, 2012 WL 3589610, at *6 (D. Conn. Aug. 20, 2012). Even if Plaintiffs survived summary judgment, Plaintiffs would then have to establish each element of their claims and damages to a jury's satisfaction. If they won at trial, Plaintiffs would have to survive Defendants' inevitable appeals. Through this entire period, every hour Defendants' attorneys worked would diminish the funds available to fund a settlement or pay a judgment. The Settlement avoids these genuine risks.

### d)    The Risks of Maintaining the Class Action Through Trial

For class certification, Plaintiffs would need to complete class certification discovery and show – subject to more rigorous analysis than the Court applies here – that they satisfy each of the prongs of Rule 23(a) and 23(b)(3). Even if Plaintiffs were able to certify a class, there is no guarantee that a class would remain certified through trial as the Court may re-evaluate the appropriateness of class certification at any time. Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."); *Glob. Crossing*, 225 F.R.D. at 460 ("[E]ven if plaintiffs could obtain class certification, there could be a risk of decertification at a later stage."). Here, "the uncertainty surrounding class certification supports approval of the Settlement." *Marsh & McLennan*, 2009 WL 5178546, at *6. That the Settlement avoids the uncertainty of obtaining and maintaining class certification supports approval of the Settlement.

17

### e)    The Ability of Settling Defendants to Withstand a Greater Judgment and the Reasonableness of the Settlement Fund

The Stipulation provides a Settlement of $2,100,000 to be paid into the Settlement Fund, which is approximately 7-9% of the $23.2-30 million estimated maximum potential damages to investors, as determined by Lead Counsel in conjunction with their damages expert; a strong result on its face. This is especially true given that Plaintiffs' claims had been dismissed by this Court and Plaintiffs' only path forward was to achieve reversal on appeal.

Moreover, there are very real risks that even if Plaintiffs were successful at every stage of the Action, they would not achieve a significant recovery from YRC given its current financial state. In May 2020, YRC announced that there was "substantial doubt" about its ability to stay in business. The Company later received a $700 million loan from the U.S. Treasury under the federal CARES Act in exchange for a 30% interest in YRC, with certain restrictions on the use of the loaned funds. And YRC's insurers disclaimed coverage for the litigation.

When there are challenges facing a case—here, there are procedural, legal and practical challenges—"any amount could be deemed reasonable." *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 580 (S.D.N.Y. 2008). *See Grinnell*, 495 F.2d at 455 n.2 ("[T]here is no reason … why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 621 (S.D.N.Y. 2012) ("It is well-settled that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair.").  The Settlement Amount is reasonable as Cornerstone Research found that for cases with damages estimated between $25 million and $74 million, between 2011 and 2019 the median recovery was 7.6%, and

18

for 2020 the median recovery was 5.3%.[5] The Settlement Amount is consistent with these benchmarks, despite the significant challenges that Plaintiffs' case faced. As such, the Settlement falls well within the range of possible approval. *See Cagan v. Anchor Sav. Bank FSB,* No. 88 Civ. 3024, 1990 WL 73423, at *12–13 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million.").

### (ii)    The Proposed Method for Distributing Relief Is Effective

As demonstrated below, the proposed methods of notice and claims administration are effective. The claims administration process includes a standard claim form that requests the information necessary to calculate a claimant's claim amount pursuant to the Plan. The Plan governs how Class Members' claims will be calculated and, ultimately, how money will be distributed to Authorized Claimants. The Plan was prepared with the assistance of Plaintiffs' damages consultant.

### (iii)    Attorneys' Fees, Reimbursement of Expenses, and PSLRA Award

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." Lead Counsel will seek an award of attorneys' fees of no more than one third of the Settlement Amount, and reimbursement of litigation expenses in an amount not to exceed $140,000. This fee request is in line with other settlements approved in recent cases. "For example, it is very common to see 33% contingency fees in cases with funds of less than $10 million, and 30% contingency fees in cases with funds between $10 million and $50 million."

---

[5] Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements – 2020 Review and Analysis;* Available at https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2020-Review-and-Analysis. (Last viewed March 25, 2021). As footnote 4 of the Cornerstone study explains, Cornerstone's study utilize a "simplified tiered damages" approach that varies from a case-specific analysis, and may understate the recovery rate.

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 445 (E.D.N.Y. 2014). *See, e.g., Capsolas v. Pasta Res. Inc.*, 2012 WL 4760910, at *8 (S.D.N.Y. Oct. 5, 2012) ("Class counsel's request for one third of the Fund is reasonable and consistent with the norms of class litigation in this circuit"); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) (noting that "Class Counsel's request for 33% of the Settlement Fund is typical in class action settlements in the Second Circuit."); *Gilliam v. Addicts Rehab. Ctr. Fund*, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008) (fee equal to one-third of the settlement fund is reasonable and "consistent with the norms of class litigation in this circuit"); *Bozak v. FedEx Ground Package Sys., Inc*., 2014 WL 3778211, at * 7 (D. Conn. July 31, 2014) ("The one-third amount that plaintiffs request is typical of awards in this Circuit."). The one-third award is also common in the Second Circuit in much larger cases as well. *See, e.g., Landmen Partners, Inc. v. Blackstone Grp., L.P.*, No. 08-cv-03601-HB-FM, 2013 WL 11330936, at *3 (S.D.N.Y. Dec. 18, 2013) (awarding 33.33% of $85 million recovery, plus expenses); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 516 (S.D.N.Y. 2009) (awarding 33.33% of $586 million recovery).

Further, as explained in the proposed notice, Plaintiffs intend to request an amount not to exceed $2,500 each, or $5,000 in total, pursuant to 15 U.S.C. §78u-4(a)(4) in connection with their representation of the Settlement Class.

Neither Lead Counsel's request for attorneys' fees or reimbursement of expenses were discussed during the settlement process and the Settlement is not impacted by the amount of attorneys' fees or expenses that the Court chooses to award.

### (iv)    The Parties Have Agreed to a Side Agreement Regarding Opt-Outs

Rule 23(e)(2)(C)(iv) requires the disclosure of any side agreement. The Parties have entered a customary supplemental agreement which provides that if Settlement Class Members opt out of the

Settlement such that the number of shares of YRC stock represented by such opt-outs exceeds a certain amount, YRC shall have the option to terminate the Settlement. Stipulation at XIV.D.1. As is standard practice in securities class actions, while the supplemental agreement is identified in the Stipulation (*id.*), the terms are confidential to avoid creating incentives for a small group of class members to opt out solely to leverage the threshold to exact an individual settlement. *See Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 4207245, at \*11 (N.D. Cal. Sept. 4, 2018) ("The existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair."); *Thomas v. MagnaChip Semiconductor Corp.*, No. 14-CV-01160-JST, 2017 WL 4750628, at \*5 (N.D. Cal. Oct. 20, 2017) (same).

**E.    There Was No Preferential Treatment; The Plan Treats Settlement Class Members Equitably**

A plan of allocation will be preliminarily approved if the proposed plan has a "reasonable, rational basis." *In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 158 (S.D.N.Y. 2013). The Plan is fair, reasonable and adequate because it does not treat Plaintiffs or any other Class Member preferentially, and was developed with the assistance of Plaintiffs' damages consultant. *In re Tremont Sec. Law, State Law & Ins. Litig.*, No. 08-CV-11117, 2015 WL 5333494, at \*6 (S.D.N.Y. Sept. 14, 2015), *aff'd in part, vacated in part,* 699 F. App'x 8 (2d Cir. 2017). The Plan, set out in the Long-Form Notice, attached as Exhibit E to the Stipulation, explains how the Settlement proceeds will be distributed among Authorized Claimants. The Plan provides that each Settlement Class Member will receive their *pro rata* share of the Net Settlement Fund based on their Recognized Loss as compared to the total Recognized Losses of all Authorized Claimants. Stipulation, Ex. E (Long-Form Notice) ¶¶48-68. The Plan provides for a calculation of the Recognized Loss based on whether a claimants' YRC stock holdings were (a) sold during the Settlement Class Period, (b) sold

21

during the PSLRA's statutory 90-day look-back period, or (c) retained at the end of trading after the end of the 90-day look-back period. *Id.* Plaintiffs and all other Class Members will receive their payment pursuant to the same formula. The Plan thus has a "reasonable, rational basis" and should be preliminarily approved. *Citigroup*, 296 F.R.D. at 158.

**V.    THE PROPOSED FORMS AND METHOD OF PROVIDING NOTICE TO THE CLASS ARE APPROPRIATE AND SATISFY RULE 23, THE PSLRA, AND DUE PROCESS**

Class notice of a settlement must meet the requirements of Rules 23(c)(2) and 23(e), the PSLRA, and due process. Under Rule 23(c)(2), the Court "must direct to class members the best notice that is practicable under the circumstances." *Vargas v. Capital One Fin. Advisors*, 559 F. App'x 22, 26 (2d Cir. 2014). In addition to how it is delivered, the notice "must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings," including the opportunity to opt out of or object to the settlement. *Id.* at 27; *Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ. 7961 CM, 2014 WL 1224666, at \*17 (S.D.N.Y. Mar. 24, 2014) ("Rule 23(e) requires notice that is 'reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections.'"). The PSLRA and the Due Process Clause of the United States Constitution impose similar requirements. *See* 15 U.S.C. § 78u-4(a)(7); *Consol. Edison, Inc. v. Ne. Utilities*, 332 F. Supp. 2d 639, 652 (S.D.N.Y. 2004) ("Due process requires that the notice to class members fairly apprise the … members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings.") (internal citations omitted).

The proposed Long-Form Notice provides detailed information concerning: (a) the rights of Settlement Class Members, including the manner in which objections can be lodged; (b) the nature, history, and progress of the litigation; (c) the proposed Settlement; (d) how to file a Claim

22

Form; (e) a description of the Plan; (f) the fees and expenses to be sought by Lead Counsel; and (g) the necessary information to examine Court records. Stipulation, Ex. E. The Long-Form Notice also sets forth instructions to securities brokers and other nominee holders for forwarding the notice to those persons for whom the nominees held shares in a "street name." *Id.* The proposed Long-Form Notice closely tracks a model notice published by the Federal Judicial Center.[6]

The proposed Long-Form Notice also informs Settlement Class Members how to request exclusion from the Settlement and clearly states that all those who do not exclude themselves will be bound by the Settlement and Final Judgment. *Id.* Furthermore, the PSLRA-mandated disclosures are satisfied as the Long-Form Notice: (1) states the amount of the Settlement on both an aggregate and average per share basis; (2) provides a brief statement explaining the reasons why the Parties are proposing the Settlement; (3) states the maximum amount of attorneys' fees and litigation expenses (both on an aggregate and average per share basis) that counsel will seek; and (4) provides the contact information for Claims Administrator and Lead Counsel to answer questions from Settlement Class Members.[7] *Id.*; 15 U.S.C. § 78u-4(a)(7).

The proposed Preliminary Approval Order, Stipulation, Ex. A, mandates that Lead Counsel provide Class Members notice of the Settlement by mailing the Postcard Notice by first class mail to Settlement Class Members who can be identified with reasonable effort. After entry of the proposed Preliminary Approval Order, the Stipulation and its exhibits, the Preliminary Approval Order, and the Long-Form Notice and Claim Form will be posted on the Claims Administrator's

---

[6] *Compare* Stipulation, Ex. A, *with* Federal Judicial Center, *Securities Class Action Certificate and Settlement: Full Notice*. Available at https://www.fjc.gov/sites/default/files/2016/ClaAct13.pdf.

[7] Plaintiffs request that A.B. Data, Ltd. ("AB Data") be appointed the Claims Administrator. Lead Counsel requested proposals to several claims administration companies for the administration of the Settlements. After reviewing responses, counsel decided to retain A.B. Data due to its substantial experience and its proposal's costs and caps on those costs. *See* https://abdataclassaction.com/ (last visited Mar. 25, 2021).

website. *Id.* Additionally, Summary Notice will be published electronically once on *PRNewswire* and in print once in *Investor's Business Daily*. *Id.*

The proposed notice and its dissemination are "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). "The use of a combination of a mailed post card directing class members to a more detailed online notice has been approved by courts." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 183 (S.D.N.Y. 2014); *In re Jumia Technologies, AG Securities Litigation,* No. 19-cv-04397-PKC (Oct. 19, 2020 S.D.N.Y.) (ECF No. 113) (approving postcard notice and similar proposed notice program including website); *Baker v. SeaWorld Entm't, Inc.*, No. 14CV2129-MMA (AGS), 2020 WL 818893, at \*2-\*3 (S.D. Cal. Feb. 19, 2020) (same); *see also Graham v. Capital One Bank (USA), N.A.*, No. SACV13743JLSJPRX, 2014 WL 12579809, at \*2 (C.D. Cal. July 29, 2014); *In re ForceField Energy Inc. Sec. Litig.*, Case No. 1:15-cv-3020-NRB (S.D.N.Y.) (ECF. No. 243); *Allen, et al., v. PixarBio Corp., et al.,* Case No. 2:17-cv-00496 (D.N.J.) (ECF. No. 135); *In re Silver Wheaton Corp. Sec. Litig.*, Case No. 2:15-cv-05146 (C.D. Cal.) (ECF No. No. 487); and *In re Tangoe, Inc., Sec. Litig.*, Case No. 3:17-cv-00146 (D. Ct.) (ECF No. No. 64).

The form and manner of providing notice to Settlement Class Members are the best practicable under the circumstance and satisfy the requirements of due process, Rule 23, and the PSLRA. Accordingly, Plaintiffs request that the Court approve the form and method Plaintiffs have proposed to provide notice of the Settlement to the Settlement Class.

## VI.    PROPOSED SCHEDULE OF EVENTS

Plaintiffs propose the following schedule as set forth in the proposed Preliminary Approval Order, paragraphs of which are referenced in the chart. This schedule is similar to those used in

24

similar class action settlements and provides due process for potential Settlement Class Members with respect to their rights concerning the Settlement.

| Event | Deadline for Compliance |
|---|---|
| Mailing of the Postcard Notice. | No later than 60 calendar days before the deadline for objecting to the proposed Settlement. (¶13) |
| Publication of the Summary Notice. | No later than 10 calendar days after mailing the Postcard Notice. (¶14) |
| Date for Plaintiffs to file papers in support of the Settlement, the Plan, and for application of attorneys' fees and expenses. | No later than 35 calendar days prior to the Fairness Hearing. (¶38a) |
| Date for any opposition to any motions in support of the Settlement, the Plan, and for application of attorneys' fees and expenses | No later than 28 calendar days prior to the Fairness Hearing. (¶38b) |
| Submission deadline for requests for exclusion. | No later than 28 calendar days prior to the Fairness Hearing. (¶28) |
| Submission deadline for objections. | No later than 28 calendar days prior to the Fairness Hearing. (¶30) |
| Submission deadline for Claim Forms. | 120 calendar days after the Preliminary Approval Order. (¶23a) |
| Date for Plaintiffs to file proof of mailing and publication of notice, reply papers in support of the Settlement, the Plan, and for application of attorneys' fees and expenses. | 7 calendar days prior to the Fairness Hearing. (¶¶21, 38c) |
| Dated for Fairness Hearing | At least 110 calendar days after the Preliminary Approval Order. (¶7) |

## VII.    CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court: (1) preliminarily certify the Settlement Class for the purposes of settlement; (2) preliminarily approve the Settlement as set forth in the Stipulation; (3) approve the form and manner of notice and direct that such notice be disseminated to the Settlement Class; (4) schedule a Settlement Hearing to consider final approval of the Settlement and related matters; and (5) establish a schedule for various deadlines in connection with the Settlement.

25

Dated:  April 15, 2021

Respectfully submitted,

/s/   *Jeremy A. Lieberman*
Jeremy A. Lieberman
Michael J. Wernke
Veronica V. Montenegro
**POMERANTZ LLP**
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
      mjwernke@pomlaw.com
      vvmontenegro@pomlaw.com

*Counsel for Peter Szabo and*
*Co-Lead Counsel for the Proposed Class*

/s/   *Donald R. Hall*
Donald R. Hall
Jeffrey P. Campisi
  (Bar Roll Number: 700753)
Jason A. Uris
**KAPLAN  FOX  &  KILSHEIMER  LLP**
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714
Email: dhall@kaplanfox.com
      jcampisi@kaplanfox.com
      juris@kaplanfox.com

*Counsel for Lead Plaintiff City of Warwick*
*Retirement Board and Co-Lead Counsel for*
*the Proposed Class*

Jonathan B. Fellows
George H. Lowe
**BOND SCHOENECK & KING, PLLC**
One Lincoln Center
Syracuse, NY 13202
Telephone: (315) 218-8000

26

Facsimile: (315) 218-8100
Email: jfellows@bsk.com
glowe@bsk.com

*Local Counsel for Lead Plaintiffs and the Proposed Class*

## CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2021, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

By: <u>*/s/ Jeremy A. Lieberman*</u><br>
Jeremy A. Lieberman