## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

CHRISTINA LEWIS, Individually and On Behalf of All Others Similarly Situated,

        Plaintiff,

        v.

YRC WORLDWIDE INC., JAMES L. WELCH, JAMIE G. PIERSON, STEPHANIE D. FISHER, and DARREN D. HAWKINS,

        Defendants.

Case No. 1:19-cv-00001-GTS-ATB

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   SUMMARY OF THE LITIGATION AND THE SETTLEMENT ................................... 2

    A.   Procedural History ................................................................................. 2

    B.   The Settlement ...................................................................................... 3

        1.   Cash Consideration and Release ................................................... 4

        2.   Notice to the Settlement Class ..................................................... 4

        3.   Exclusion and Objection Deadline ................................................ 5

        4.   The Plan of Allocation ................................................................. 5

III.  ARGUMENT ..................................................................................................... 6

    A.   The Court Should Approve the Settlement ............................................... 6

        1.   Certification of the Settlement Class is Appropriate ...................... 6

        2.   The Settlement is Fair, Reasonable, and Adequate ........................ 6

            a.   Complexity, Expense and Likely Duration of the Litigation .......... 8

            b.   Adequate Notice and Reaction of the Class ................................. 9

            c.   Stage of Proceedings and Discovery Completed ......................... 10

            d.   Risks of Establishing Liability and Damages .............................. 11

            e.   The Risks of Maintaining the Class Action Through Trial ........... 13

            f.   The ability of Settling Defendants to Withstand a Greater Judgment and the Reasonableness of the Settlement Amount ...... 14

            g.   The Proposed Settlement Is the Result of Arm's-Length Negotiations by Informed, Experienced Counsel ........................ 15

    B.   The Court Should Grant Final Approval of the Plan of Allocation ...................... 17

    C.   Notice to the Settlement Class Complied with Rule 23 and Due Process ............ 18

    D.   The Settlement Satisfies the Remaining Rule 23(e)(2) Factors ........................... 20

        1.   The Proposed Method for Distributing Relief is Effective ......................... 20

        2.   Attorneys' Fees ........................................................................ 20

        3.   The Parties Have No Other Agreements Aside From Opt-Outs .................. 21

        4.   There is No Preferential Treatment; the Plan of Allocation Treats Settlement Class Members Equitably ....................................... 22

IV.   CONCLUSION ................................................................................................ 22

## TABLE OF AUTHORITIES

**Pages**

**Cases**

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2006 U.S. Dist. LEXIS 17588
(S.D.N.Y. Apr. 6, 2006) ..................................................................................................11, 13

*Arbuthnot v. Pierson*,
607 F. App'x 73 (2d Cir. 2015) .........................................................................................10

*Baker v. SeaWorld Entm't, Inc.*, No. 14CV2129-MMA (AGS),
2020 WL 818893 (S.D. Cal. Feb. 19, 2020) .............................................................19

*Burns v. FalconStor Software, Inc.*, No. 10 CV 4572 (ERK),
2014 WL 12917621 (E.D.N.Y. Apr. 11, 2014) ......................................................7, 16, 17

*Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024,
1990 WL 73423 (E.D.N.Y. May 22, 1990) ............................................................15

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974).................................................................................. *passim*

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001).................................................................................15

*Dura Pharm., Inc. v. Broudo*,
544 U.S. 336 (2005)...............................................................................................5, 17

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974).............................................................................................18

*Graham v. Capital One Bank (USA), N.A.*, No. SACV13743JLSJPRX,
2014 WL 12579809 (C.D. Cal. July 29, 2014)........................................................19

*Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST,
2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) ......................................................21

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
298 F.R.D. 171 (S.D.N.Y. 2014) ....................................................................11, 19

*In re Am. Bank Note Holographics, Inc.*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001).........................................................8, 10, 12

*In re Bear Stearns Cos. Sec., Derivative & ERISA Litig.*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012)...............................................................10

*In re China Med. Corp. Sec. Litig.*, No. 8:11-1061 JLS (ANX),
2014 WL 12581781 (C.D. Cal. Jan. 7, 2014) ...........................................................................16

*In re Genworth Fin. Sec. Litig.*,
210 F. Supp. 3d 837 (E.D. Va. 2016) .....................................................................................20

*In re Glob. Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. Nov. 24, 2004) ..................................................................11, 12, 13

*In re Immune Response Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007).................................................................................16

*In re Indep. Energy Holdings PLC*,
2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003).....................................................................15

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) .................................................................................................15

*In re MetLife Demutualization Litig.*,
689 F. Supp. 2d 297 (E.D.N.Y. 2010) ...................................................................................12

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
330 F.R.D. 11 (E.D.N.Y. 2019) ...............................................................................................8

*In re Signet Jewelers Ltd. Sec. Litig.*, No. 1:16-CV-06728-CM-SDA,
2020 WL 4196468 (S.D.N.Y. July 21, 2020) ..........................................................................8

*In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 Civ. 5173 (RPP),
2008 WL 1956267 (S.D.N.Y. May 1, 2008) ..........................................................................11

*In re Sturm, Ruger, & Co., Inc. Sec. Litig.*, 3:09CV1293 VLB,
2012 WL 3589610 (D. Conn. Aug. 20, 2012) .......................................................................12

*In re Telik, Inc. Sec. Litig.*,
576 F. Supp. 2d 570 (S.D.N.Y. 2008).....................................................................................14

*In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 CIV. 11515 (WHP),
2009 WL 2025160 (S.D.N.Y. July 10, 2009) .........................................................................16

*In re Warner Commc'ns Sec. Litig.*,
618 F. Supp. 735 (S.D.N.Y. 1985),
*aff'd*, 798 F.2d 35 (2d Cir. 1986) ........................................................................................10

*In re Warner Commc'ns Sec. Litig.*,
798 F.2d 35 (2d Cir. 1986).......................................................................................................8

*Leung v. Home Boy Rest. Inc.*, No. 07CIV8779RJSDFE,
2009 WL 398861 (S.D.N.Y. Feb. 18, 2009)..........................................................................15

*In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306 (E.D.N.Y. 2006) ................................9, 21

*Marsh & McLennan*,
    2009 WL 5178546 .......................................................................................................13

*Morris v. Affinity Health Plan, Inc.*,
    859 F. Supp. 2d 611 (S.D.N.Y. 2012)........................................................................14

*Olden v. LaFarge Corp.*,
    472 F. Supp. 2d 922 (E.D. Mich. 2007)........................................................................9

*Pelzer v. Vassalle*,
    655 F. App'x 352 (6th Cir. 2016) ...............................................................................20

*Thomas v. MagnaChip Semiconductor Corp.*, No. 14-CV-01160-JST,
    2017 WL 4750628 (N.D. Cal. Oct. 20, 2017)............................................................21

*Trief v. Dun & Bradstreet Corp.*,
    840 F. Supp. 277 (S.D.N.Y. 1993) ...............................................................................7

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)................................................................................6, 7, 15

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982)............................................................................................6

## Statutes

15 U.S.C. § 78u-4(a)(4) ....................................................................................................21

PSLRA .................................................................................................................6, 16, 18

Securities Exchange Act of 1934.........................................................................................2

## Rules

Fed. R. Civ. P. 23................................................................................................ *passim*

iv

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Lead Plaintiffs Peter Szabo and the City of Warwick Retirement Fund ("Plaintiffs" or "Lead Plaintiffs") respectfully submit this memorandum of law in support of their motion for final approval of the proposed class action settlement ("Settlement"), as set forth in the Stipulation of Settlement dated April 12, 2021 ("Stipulation") (ECF No. 96).[1]

## I.    INTRODUCTION

Plaintiffs and YRC Worldwide Inc. ("YRC" or the "Company"), James L. Welch, Jamie G. Pierson, Stephanie D. Fischer and Darren D. Hawkins (together with YRC, "Defendants"), have agreed to settle the above-captioned action (the "Action") for $2,100,000 in cash by the terms stated in the Stipulation ("Settlement"). This recovery for investors represents a fair, reasonable, and adequate settlement of the claims presented in the Action.

The Settlement was achieved only after hard-fought, arm's-length negotiations over the course of two days with the aid of highly regarded mediators, retired California Superior Court Judge Daniel Weinstein and Jed Melnick of JAMS. The Settlement provides a substantial, immediate, and guaranteed recovery for Settlement Class Members. The Settlement is a favorable result in light of several obstacles Plaintiffs faced with ongoing litigation, particularly in light of the Court's dismissal of the Action on March 27, 2020. ECF No. 89.  Plaintiffs and Lead Counsel believe that the proposed Settlement is fair, reasonable, and adequate, and in the Settlement Class Members' best interest.

Plaintiffs followed the Court-approved notice plan to solicit claims, requests for exclusions, and objections. As of July 14, 2021, Plaintiffs have not received any objection to the Settlement

---

[1] All capitalized terms used herein have the meanings set forth and defined in the Stipulation. Emphasis is added and internal citations and quotations are omitted unless otherwise noted.

and only a single request for exclusion. For these reasons and those set forth below, the Settlement is fair, reasonable, and adequate, and the Court should approve it.

Lead Counsel also worked with a damages expert to formulate a fair, reasonable, and adequate Plan of Allocation for the Settlement Fund. The Plan of Allocation treats all claimants fairly based on the applicable law. The Court should also approve the Plan of Allocation.

## II.    SUMMARY OF THE LITIGATION AND THE SETTLEMENT

### A.    Procedural History

On January 2, 2019, plaintiff Christina Lewis filed the Action against YRC Worldwide Inc. and several of its present or former officers or directors alleging violations of the Securities Exchange Act of 1934 ("Exchange Act"). ECF No. 1.

On April 25, 2019, the Court appointed City of Warwick Retirement Fund and Peter Szabo as Lead Plaintiffs and the law firms of Kaplan Fox & Kilsheimer LLP and Pomerantz LLP as Lead Counsel for the putative Class. ECF No. 50.

On June 19, 2019, Lead Plaintiffs filed the [Corrected] Amended Class Action Complaint for Violations of the Federal Securities Laws ("Complaint") against YRC and four of its present or former officers or directors (James L. Welch, Jamie G. Pierson, Stephanie D. Fisher, and Darren D. Hawkins) asserting claims under the Exchange Act. ECF No. 75.

On July 15, 2019, Defendants moved to dismiss the Complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 81. Plaintiffs filed an opposition on August 16, 2019, and Defendants filed a reply on August 30, 2019.  ECF Nos. 83-84.

By order dated March 27, 2020, the Court granted Defendants' motion and dismissed all claims in the Action and entered a judgment. ECF Nos. 89-90.

On April 27, 2020, Lead Plaintiffs filed a notice of appeal to the Second Circuit from the dismissal of the Action. The Settling Parties fully briefed the appeal, and the Second Circuit tentatively scheduled it for a hearing during the week of March 22, 2021.

### B.    The Settlement

With the appeal pending, the Settling Parties participated in two full days of mediation with a mediation team led by retired California Superior Court Judge Daniel Weinstein of JAMS on February 1 and 2, 2021. At the end of the February 2, 2021 mediation session, the Settling Parties accepted Judge Weinstein's mediator's proposal, and the Settling Parties reached an agreement in principle on the primary terms of a settlement, memorializing the substantive terms of settlement in a term sheet that same day.

On February 5, 2021, the Settling Parties informed the Second Circuit of the status of their settlement negotiations and asked the Second Circuit to remand the case to the Court for eventual consideration of the proposed settlement and to retain jurisdiction over the appeal in case the proposed settlement does not receive final approval.

The Second Circuit granted the motion on February 10, 2021.

The Settlement Class is defined as "all persons and entities who, during the Class Period, purchased or otherwise acquired YRC Securities, and who were damaged thereby." ¶12. The Class Period is defined as March 10, 2014 through December 14, 2018, inclusive. ¶13.[2]

---

[2] Excluded from the Settlement Class are: (i) Defendants, and officers and directors of YRC during the Class Period; (ii) YRC's Affiliates, subsidiaries, successors, and predecessors, (iii) any entity in which YRC or any individual identified in subpart (i) has or had during the Class Period a Controlling Interest, (iv) for the individuals identified in subpart(s) (i), (ii) and/or (iii), their Family Members, legal representatives, heirs, successors, and assigns, (v) such persons or entities who submit valid and timely requests for exclusion from the Class, and (vi) such persons or entities who, while represented by counsel, settled an actual or threatened lawsuit or other proceeding against one or more of the Releasees arising out of or related to the Released Class Claims. ¶12.

Plaintiffs filed their motion for preliminary approval on April 15, 2021. ECF No. 95. The Court entered its Preliminary Approval Order granting Plaintiffs' motion on April 19, 2021. ECF No. 98.

### 1.    Cash Consideration and Release

The Settlement provides for a cash payment of $2.1 million to resolve the Settlement Class's claims. If the Court grants final approval of the Settlement, Plaintiffs, on behalf of the Settlement Class Members, will forever release their claims against Defendants that were alleged or could have been alleged in this Action.

### 2.    Notice to the Settlement Class

Pursuant to the Preliminary Approval Order, the Postcard Notice was mailed to potential class members, brokers, and nominee holders. Joint Declaration of Michael J. Wernke and Jeffrey P. Campisi ("Joint Decl."), Exhibit 1 (Declaration of Eric Nordskog Regarding: (A) Mailing of The Postcard Notice; (B) Publication of The Summary Notice; and (C) Report on Requests for Exclusion And Objections ("Nordskog Decl.")) ¶¶2-8. The Postcard Notice advised potential Settlement Class Members how to access or obtain copies of the Notice of Pendency and Proposed Settlement of Class Action ("Long Notice"), which provided a detailed description of the terms of the Settlement and Plan of Allocation. *Id.*, Exs. A (Postcard Notice) and B (Long Notice). The Postcard Notice also informed potential Settlement Class Members that Lead Counsel would seek a fee award not to exceed one-third of the Settlement Amount, recovery of actual litigation expenses not to exceed $140,000, and an award to Plaintiffs of up to $5,000 in total; and that objections to any aspect of the Settlement or to the fee and expense request must be received no later than July 21, 2021. Nordskog Decl., Ex. A.

As of the date of this writing, the Claims Administrator has mailed 47,358 copies of the Postcard Notice to potential class members. Nordskog Decl. ¶8. The Claims Administrator also

4

posted the Long Notice and Proof of Claim and Release Form ("Claim Form") on its website at www.YRCSecuritiesSettlement.com. *Id*. ¶11. The website also provides a link for online claim filing and lists important deadlines. *Id.* Additionally, the Claims Administrator published the Summary Notice of Pendency and Proposed Class Action Settlement ("Summary Notice") on *PR Newswire* as well as in *Investor's Business Daily*. *Id.* ¶9.

### 3.    Exclusion and Objection Deadline

Requests for exclusion must be received by July 21, 2021.  As of July 14, 2021, there has been only one request for exclusion. Nordskog Decl. ¶12. Objections to the Settlement must be received by the Court and counsel by July 21, 2021. As of this writing there have been no objections to any aspect of the Settlement. *Id.* ¶13; Joint Decl. ¶65.

### 4.    The Plan of Allocation

The Long Notice describes the Plan of Allocation. Nordskog Decl., Ex. B at 5-8. Lead Counsel formulated the Plan of Allocation with the help of a damages expert to distribute the Settlement Fund fairly and reasonably to Settlement Class Members consistent with the federal securities laws and the principles of loss causation (including negative loss causation). Joint Decl. ¶¶67-74. To that end, the Plan of Allocation does not compensate losses resulting from "in and out" transactions, *i.e.,* losses from sales made prior to revelation of the truth. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342 (2005) ("But if, say, the purchaser sells the shares before the relevant truth begins to leak out, the misrepresentation will not have led to any loss."). The Plan of Allocation then establishes a formula which determines authorized claimants' recognized losses and calculates Settlement Class Members' *pro rata* share of the Settlement Amount (*i.e.*, Settlement Amount less attorneys' fees and expenses, and award to Lead Plaintiffs). *Id.*

## III.    ARGUMENT

### A.    The Court Should Approve the Settlement

#### 1.    Certification of the Settlement Class is Appropriate

Federal Rule of Civil Procedure 23(a) provides that a movant must meet four requirements to be entitled to class certification: numerosity, commonality, typicality, and adequacy of representation. In addition, Federal Rule of Civil Procedure 23(b)(3) provides that the movant must show both (i) that common questions predominate over any questions affecting only individual members, and (ii) that class resolution is superior to other available methods for the fair and efficient adjudication of the controversy.

In its Preliminary Approval Order, the Court found that, "for settlement purposes, each element required for certification of the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure and any other applicable laws (including the PSLRA) has been met or will likely be met" and preliminarily certified the Class for purposes of the proposed Settlement pursuant to Fed. R. Civ. P. 23(b)(3). ECF No. 98 at 3-5. Nothing has changed with respect to these elements since the Court entered the Preliminary Approval Order. Thus, the Court should grant final certification to this Settlement Class.

#### 2.    The Settlement is Fair, Reasonable, and Adequate

As a matter of public policy, courts favor settlements, *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982), especially in complex class actions like this one. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005). When evaluating a proposed settlement under Federal Rule of Civil Procedure 23(e), a court must determine whether the settlement, taken as a whole, is fair, reasonable and adequate, and was not the product of collusion. *Id.* at 116. A proposed class action settlement enjoys a presumption of fairness where, as here, it resulted from arm's-length negotiations before a neutral mediator conducted by capable counsel who are experienced

6

in class action litigation arising under the federal securities laws. *Burns v. FalconStor Software, Inc.*, No. 10 CV 4572 (ERK), 2014 WL 12917621, at *4 (E.D.N.Y. Apr. 11, 2014) (citing *Wal-Mart*, 396 F.3d at 116). Indeed, "absent evidence of fraud or overreaching, [courts] consistently have refused to act as Monday morning quarterbacks in evaluating the judgment of counsel." *Trief v. Dun & Bradstreet Corp.*, 840 F. Supp. 277, 281 (S.D.N.Y. 1993).

The principal factors in evaluating the fairness of a proposed settlement in the Second Circuit are well-settled:

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).

Courts also consider the factors outlined in the recently adopted Fed. R. Civ. P. 23(e). Rule 23(e)(2) provides:

> (2)    ***Approval of the Proposal.***  If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
> > (A)    the class representatives and class counsel have adequately represented the class;
> >
> > (B)    the proposal was negotiated at arm's length;
> >
> > (C)    the relief provided for the class is adequate, taking into account:
> >
> > > (i)    the costs, risks, and delay of trial and appeal;
> > >
> > > (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

7

(iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

(iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)    the proposal treats class members equitably relative to each other.

Courts have observed that "the new Rule 23(e) factors . . . add to, rather than displace, the *Grinnell* factors" and "there is significant overlap between the *Grinnell* factors and the Rule 23(e)(2)(C-D) factors . . . ." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019). In weighing these factors, courts recognize that settlements require significant compromise between negotiating parties. Courts do not attempt to rewrite settlement agreements or try to resolve issues that are left undecided as a result of the parties' compromise. *See, e.g., In re Warner Commc'ns Sec. Litig.*, 798 F.2d 35, 37 (2d Cir. 1986) ("It is not a district judge's job to dictate the terms of a class settlement.").

The proposed settlement is fair, reasonable, and adequate under the *Grinnell* factors and Rule 23, and the Court should approve it.

### a.    Complexity, Expense and Likely Duration of the Litigation

"Courts recognize that securities class actions are generally complex and expensive to prosecute." *In re Signet Jewelers Ltd. Sec. Litig.*, No. 1:16-CV-06728-CM-SDA, 2020 WL 4196468, at *4 (S.D.N.Y. July 21, 2020); *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 424 (S.D.N.Y. 2001) ("most securities fraud cases, are complex and challenging as regards both liability and damage.").

The Settlement provides a guaranteed, immediate recovery to YRC investors. If the Settlement were not reached and assuming, *arguendo*, Plaintiffs were successful on their appeal, the parties would have to incur substantial costs and engage in prolonged litigation through class certification, summary judgment, trial and if applicable, subsequent appeals. Discovery costs,

8

including document production and hosting fees as well as experts, including for class certification, expert reports, and expert testimony would be significant and could be add up to several hundred thousand (or even millions of) dollars for Plaintiffs. Reaching this Settlement now not only guarantees recovery for the Settlement Class, but also reduces overall litigation expenses.

There is no guarantee that Plaintiffs would have been able to obtain the necessary evidence to prove their case through discovery; and even if they could do so, it would be costly, take years, and delay any potential recovery to Settlement Class Members. Thus, the complexity, expense, and likely duration of these proceedings favor approval of the Settlement.

b.    **Adequate Notice and Reaction of the Class**

A "[l]ack of objection is strong evidence of the settlement's fairness." *In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306, 311 (E.D.N.Y. 2006); *Grinnell*, 495 F.2d at 462 (approving settlement where 20 objectors appeared from group of 14,156 claimants); *Olden v. LaFarge Corp.*, 472 F. Supp. 2d 922 (E.D. Mich. 2007) (approving settlement where 82 objectors appeared from a class of 11,000 people).

The Notice was disseminated under Lead Counsel's supervision by the Court-appointed third-party claims administrator, A.B. Data, Ltd. ("A.B. Data"). Nordskog Decl. ¶1. In accordance with the Court's orders, A.B. Data mailed 47,358  Postcard Notices to Settlement Class Members, brokers, and nominee holders. *Id*. ¶8. The Summary Notice was published over *PR Newswire* and in *Investor's Business Daily* on May 10, 2021. *Id.* at ¶9. The Long Notice and Claim Form were also available on A.B. Data's website, www.YRCSecuritiesSettlement.com, along with a link for online claim filing. *Id*. at ¶11.

The deadline for potential Settlement Class Members to object to or request exclusion from the Settlement is July 21, 2021. To date, only one Settlement Class Member has requested exclusion from the Settlement. Nordskog Decl. ¶12. No Settlement Class Member has objected to

the Settlement. *Id*. ¶13; Joint Decl. ¶65. Plaintiffs will address any further requests for exclusion or objections in their Reply.

Plaintiffs' conclusion that the Settlement is fair, reasonable, and adequate further supports its approval. Plaintiffs each took an active role in supervising this litigation and recommend that the Settlement be approved. Joint Decl., Exhibit 2 (declarations of Lead Plaintiff Peter Szabo).

### c.      Stage of Proceedings and Discovery Completed

The third *Grinnell* factor examines "whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement." *In re Bear Stearns Cos. Sec., Derivative & ERISA Litig.*, 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012)), *aff'd sub nom. Arbuthnot v. Pierson,* 607 F. App'x 73 (2d Cir. 2015). The Settling Parties agreed to the Settlement only after Plaintiffs: (1) investigated the claims in the Action to plead a detailed Complaint, which required both analysis of public records and conducting interviews with former employees, as well as consulting with loss causation and damages experts, and accounting expert; (2) opposed Defendants' motion to dismiss; (3) fully briefed Plaintiffs' appeal; (4) prepared a mediation statement and analyzed Defendants' mediation statement; and (5) participated in a two-day mediation. Joint Decl. ¶¶18-44. Plaintiffs had the information they needed to evaluate the Settlement. Plaintiffs also had the further opportunity to confirm their assessment through the Due-Diligence Discovery that was provided pursuant to the terms of the Settlement. *See Luxottica*, 233 F.R.D. at 312 (settlement approved where counsel had "a clear view of the strengths and weaknesses of the case") (citing *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986)); *Am. Bank Note*, 127 F. Supp. 2d at 425-426 ("To approve a proposed settlement … the Court need not find that the parties have engaged in extensive discovery.  Instead, it is enough for the parties to have engaged

in sufficient investigation of the facts to enable the Court to intelligently make … an appraisal of the Settlement."). *See also Scalfani v. Misonix, Inc., et al.*, Case No. 2:16-cv-05218-ADS-AST (E.D.N.Y.) (ECF No. 36) (granting final approval in class action that settled before filing of amended complaint or a motion to dismiss).[3] The stage of proceedings weighs in favor of approving the Settlement.

### d.      Risks of Establishing Liability and Damages

Courts should "approve settlements where plaintiffs would have faced significant legal and factual obstacles to proving their case." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. Nov. 24, 2004). Analyzing the risks presented in a class action "does not require the Court to adjudicate the disputed issues or decide unsettled questions; rather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *Id.* In assessing class settlements, courts recognize that the immediacy and certainty of a recovery provide benefits to the settlement class. *See Luxottica*, 233 F.R.D. at 316 ("The immediacy and certainty of a recovery is a factor for the court to balance in determining whether the proposed settlement is fair, reasonable, and adequate"). Pursuing a better result through continued litigation always carries the risk that a plaintiff ends up with less money than the proposed settlement.

"The difficulty of establishing liability is a common risk of securities litigation." *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2006 U.S. Dist. LEXIS 17588, at *39 (S.D.N.Y. Apr. 6,

---

[3] *See also see also In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 177 (S.D.N.Y. 2014) (where "no merits discovery occurred," counsel that had conducted their own investigation, engaged in detailed briefing, and conducted targeted due diligence discovery were "knowledgeable with respect to possible outcomes and risks in this matter and, thus, able to recommend the Settlement"); *In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 Civ. 5173 (RPP), 2008 WL 1956267, at *7 (S.D.N.Y. May 1, 2008) ("[a]lthough the parties did not engage in extensive formal discovery, such efforts are not required for the Settlement to be adequate, so long as the parties conducted sufficient discovery to understand their claims and negotiate settlement terms").

11

2006) That risk manifested itself in the Action. Most significantly, this Court dismissed Plaintiffs' claims in their entirety. ECF Nos. 89-90. Therefore, the only path forward for Plaintiffs was if their appeal was successful. Even if successful, that would be no guarantee as to continued success in the case. There are significant risks to proving (not merely alleging) falsity, materiality, loss causation and damages. Moreover, proving scienter, a notoriously difficult and risky element of securities fraud cases, was not certain. *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 426 (S.D.N.Y. 2001); *In re Sturm, Ruger, & Co., Inc. Sec. Litig.*, 3:09CV1293 VLB, 2012 WL 3589610, at *6 (D. Conn. Aug. 20, 2012). Even if Plaintiffs survived summary judgment, Plaintiffs would then have to establish each element of their claims and damages to a jury's satisfaction. If they won at trial, Plaintiffs would have to survive Defendants' inevitable appeals. Through this entire period, every hour Defendants' attorneys worked would diminish the funds available to fund a settlement or pay a judgment. The Settlement avoids these genuine risks. *See* Joint Decl. ¶¶48-55.

Further, proving loss causation and damages in a securities case is always difficult and invariably requires intricate expert testimony. Disentangling the market's reaction to various pieces of news is a "complicated concept, both factually and legally." *Glob. Crossing*, 225 F.R.D. at 459. Accordingly, the "[c]alculation of damages is a 'complicated and uncertain process, typically involving conflicting expert opinion.'" *Id.* Defendants would oppose any expert Plaintiffs retained with an equally well-credentialed expert expressing the opposite view. Where it is impossible to predict which expert's testimony or methodology would be accepted by the jury, courts have recognized the need for compromise. *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 338-39 (E.D.N.Y. 2010) ("In such a 'battle of the experts,' the jury could well have

12

been swayed by defendants' experts, finding that the plaintiffs were entitled to little or no recovery even if liability were established.").

If at any of these stages the Court or jury found Plaintiffs' loss causation and damages expert and theory legally or factually insufficient, Plaintiffs would have spent much more time and money to potentially end up with less than the $2.1 million Settlement presented for approval here, or nothing. This is a case where "the risks faced by the securities plaintiffs in establishing damages are substantial, and this factor favors approving the settlement." *Glob. Crossing*, 225 F.R.D. at 459.

### e.        The Risks of Maintaining the Class Action Through Trial

For class certification, Plaintiffs would need to complete class certification discovery and show – subject to more rigorous analysis than the Court applies here – that they satisfy each of the prongs of Rule 23(a) and 23(b)(3). Even if Plaintiffs were able to certify a class, there is no guarantee that a class would remain certified through trial as the Court may re-evaluate the appropriateness of class certification at any time. Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."); *Glob. Crossing*, 225 F.R.D. at 460 ("[E]ven if plaintiffs could obtain class certification, there could be a risk of decertification at a later stage."). Here, "the uncertainty surrounding class certification supports approval of the Settlement." *Marsh & McLennan*, 2009 WL 5178546, at *6. The Settlement avoids the uncertainty of obtaining and maintaining class certification. This factor supports approval of the settlement because "the process of class certification would have subjected Plaintiffs to considerably more risk than the unopposed certification that was ordered for the sole purpose of the Settlement." *AOL Time Warner*, 2006 U.S. Dist. LEXIS 17588, at *41.

13

**f.      The ability of Settling Defendants to Withstand a Greater Judgment and the Reasonableness of the Settlement Amount**

The Stipulation provides a Settlement of $2,100,000 to be paid into the Settlement Fund, which is approximately 7-9% of the $23.2-30 million estimated maximum potential damages to investors, as determined by Lead Counsel in conjunction with their damages expert; a strong result on its face. Joint Decl. ¶56. This is especially true given that Plaintiffs' claims had been dismissed by this Court and Plaintiffs' only path forward was to achieve reversal on appeal.

Moreover, there are very real risks that even if Plaintiffs were successful at every stage of the Action, they would not achieve a significant recovery from YRC given its current financial state. In May 2020, YRC announced that there was "substantial doubt" about its ability to stay in business. The Company later received a $700 million loan from the U.S. Treasury under the federal CARES Act in exchange for a 30% interest in YRC, with certain restrictions on the use of the loaned funds. And YRC's insurers disclaimed coverage for the litigation. *See* Joint Decl. ¶54.

When there are challenges facing a case—here, there are procedural, legal and practical challenges—"any amount could be deemed reasonable." *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 580 (S.D.N.Y. 2008). *See Grinnell*, 495 F.2d at 455 n.2 ("[T]here is no reason … why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 621 (S.D.N.Y. 2012) ("It is well-settled that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair.").  The Settlement Amount is reasonable as Cornerstone Research found that for cases with damages estimated between $25 million and $74 million, between 2011 and 2019 the median recovery was 7.6%, and

14

for 2020 the median recovery was 5.3%.[4] The Settlement Amount is consistent with these benchmarks, despite the significant challenges that Plaintiffs' case faced. As such, the Settlement falls well within the range of possible approval. *See Cagan v. Anchor Sav. Bank FSB,* No. 88 Civ. 3024, 1990 WL 73423, at *12–13 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million.").

### g.    The Proposed Settlement Is the Result of Arm's-Length Negotiations by Informed, Experienced Counsel

The Rule 23(e)(2)(B) factor is a procedural one – whether "the proposal was negotiated at arm's length." Courts initially presume that a proposed settlement is fair and reasonable when it is the result of arm's-length negotiations. *Wal-Mart Stores, Inc.*, 396 F.3d at 116; *Leung v. Home Boy Rest. Inc.*, No. 07CIV8779RJSDFE, 2009 WL 398861, at *1 (S.D.N.Y. Feb. 18, 2009) (preliminary approval is appropriate where "the proposed settlement appears to be the product of extensive, arms-length negotiations conducted by experienced counsel with input from the parties"). Further, a mediator's involvement in settlement negotiations supports a presumption of fairness. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in … settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *In re Indep. Energy Holdings PLC*, 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003) ("the fact that the Settlement was reached after exhaustive arm's-length negotiations, with

---

[4] Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements – 2020 Review and Analysis;* Available at https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2020-Review-and-Analysis. (Last viewed March 25, 2021). As footnote 4 of the Cornerstone study explains, Cornerstone's study utilize a "simplified tiered damages" approach that varies from a case-specific analysis, and may understate the recovery rate.

the assistance of a private mediator experienced in complex litigation, is further proof that it is fair and reasonable.").

Plaintiffs were armed with sufficient information to evaluate the Settlement's benefits and drawbacks as a result of conducting their own investigation to draft the Complaint, fully briefing Defendants' motion to dismiss and Plaintiffs' appeal. Moreover, the Due-Diligence Discovery provided as part of the Settlement provided Plaintiffs another opportunity to confirm their prior assessments. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ("[I]n the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement."). Informal information sharing is especially appropriate where discovery has been stayed pursuant to the PSLRA. *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007).

On February 1 and 2, 2021, the Settling Parties attended a virtual mediation with retired California Superior Court Judge Daniel Weinstein and Jed Melnick of JAMS. In advance of that session the Settling Parties submitted mediation statements addressing key aspects of liability and damages. During the mediation session, the Settling Parties argued the merits of Plaintiffs' claims and the defenses thereto. Based on Judge Weinstein's mediator's proposal, the Settling Parties reached a settlement in principle on February 2, 2021, which was memorialized that same day. The negotiations were at all times hard-fought and conducted at arm's length and have produced a result that the Settling Parties believe to be in their respective best interests. The arm's-length nature of the negotiations and the mediators' involvement support the conclusion that the Settlement is fair and was achieved free of collusion. *See In re China Med. Corp. Sec. Litig.*, 2014 WL 12581781, at *4 (C.D. Cal. Jan. 7, 2014) (that a settlement was reached as a result of mediation

before Mr. Melnick weighs in favor of approval). Judge Weinstein has "believe[s] the Settlement represents the highest settlement amount and the most favorable terms the Class could have achieved at [this] time" and "strongly support[s] approval of the Settlement in all respects." Joint Decl., Ex. 3 (Declaration of the Hon. Daniel Weinstein (Ret.)), ¶10.

### B. The Court Should Grant Final Approval of the Plan of Allocation

"The plan [of allocation] need only have a reasonable, rational basis when created by competent and experienced counsel." *Burns*, 2014 WL 12917621, at \*6. *See also In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 CIV. 11515 (WHP), 2009 WL 2025160, at \*2 (S.D.N.Y. July 10, 2009) (similar). Here, Lead Counsel formulated the Plan of Allocation in consultation with Plaintiffs' damages expert to be consistent with the securities. Joint Decl. ¶¶67-74.

Lead Counsel formulated the Plan of Allocation with the principles of loss causation in mind. *Id*. Therefore, those shareholders who bought and then sold shares, "before the relevant truth begins to leak out" have no recognized losses under the Plan of Allocation because "the misrepresentation will not have led to any loss." *Dura*, 544 U.S. at 342. In *Burns*, the court approved the proposed plan of allocation where, as here, it "reflects plaintiffs' theory of the case – that the stock price declined due to partial disclosures of the alleged misconduct – and does not compensate losses from sales made prior to the disclosure of the alleged misconduct"; "comports with federal securities law"; and where "plaintiffs' counsel formulated the plan of allocation with a financial consultant to ensure it was fair." 2014 WL 12917621, at \*6.

The Plan of Allocation also recognizes differences in damages incurred by those who bought and sold their shares at different prices and times during the Settlement Class Period, reflecting different damages due to the purchase and sale prices and the amount of artificial inflation in YRC securities at the time of their transactions. Nordskog Decl., Ex. B at 5-8.

17

Finally, the Net Settlement Amount will be distributed on a *pro rata* basis depending on a Settlement Class Member's recognized losses. *Id*.; *see Luxottica*, 233 F.R.D. at 317 (approving plan of allocation as fair and reasonable where it treated class members equally and on a *pro rata* basis and comported with the plaintiffs' theory of damages). The Plan provides for a calculation of the Recognized Loss based on whether a claimants' YRC stock holdings were (a) sold during the Settlement Class Period, (b) sold during the PSLRA's statutory 90-day look-back period, or (c) retained at the end of trading after the end of the 90-day look-back period. *Id*. Plaintiffs and all other Class Members will receive their payment pursuant to the same formula. In short, the Plan thus has a "reasonable, rational basis" and should be approved. *Citigroup*, 296 F.R.D. at 158.

### C.    Notice to the Settlement Class Complied with Rule 23 and Due Process

Courts "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Notice must be the "best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

Both the substance of the Notice and the means of dissemination satisfied these standards. The Court-approved Notice includes all the information required by Rule 23(c)(2)(B) and the PSLRA, including the following, without limitation: (a) the rights of Settlement Class Members, including the manner in which objections can be lodged; (b) the nature, history, and progress of the litigation; (c) the proposed Settlement; (d) how to file a Claim Form; (e) a description of the Plan; (f) the fees and expenses to be sought by Lead Counsel; and (g) the necessary information to examine Court records. The Long-Form Notice also sets forth instructions to securities brokers and other nominee holders for forwarding the notice to those persons for whom the nominees held shares in a "street name." The Long-Form Notice closely tracks a model notice published by the Federal Judicial Center.

18

The Court-appointed third-party claims administrator, A.B. Data, disseminated the Notice under Lead Counsel's supervision. Nordskog Decl. ¶1. In accordance with the Court's orders, A.B. Data mailed 47,358 Postcard Notices to Settlement Class Members, brokers, and nominee holders. *Id.* ¶8. The Summary Notice was published on *PR Newswire* and in *Investor Business Daily* on May 10, 2021. *Id.* at ¶9. The Long Notice and Claim Forms were also available on A.B. Data's website, www.YRCSecuritiesSettlement.com, along with a link for an online claim filing. *Id.* at ¶11. The website also contains pertinent information such as important deadlines and documents including the Stipulation and Preliminary Approval Order.

The mailing of Postcard Notices to Settlement Class Members who could be identified with reasonable effort, supplemented with notice in a widely-circulated publication and over a newswire, and a dedicated website, was "the best notice ... practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); "The use of a combination of a mailed post card directing class members to a more detailed online notice has been approved by courts." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 183 (S.D.N.Y. 2014); *In re Jumia Technologies, AG Securities Litigation,* No. 19-cv-04397-PKC (Oct. 19, 2020 S.D.N.Y.) (ECF No. 113) (approving postcard notice and similar proposed notice program including website); *Baker v. SeaWorld Entm't, Inc.*, No. 14CV2129-MMA (AGS), 2020 WL 818893, at *2-*3 (S.D. Cal. Feb. 19, 2020) (same); *see also Graham v. Capital One Bank (USA), N.A.*, No. SACV13743JLSJPRX, 2014 WL 12579809, at *2 (C.D. Cal. July 29, 2014); *In re ForceField Energy Inc. Sec. Litig.*, Case No. 1:15-cv-3020-NRB (S.D.N.Y.) (ECF. No. 243); *Allen, et al., v. PixarBio Corp., et al.,* Case No. 2:17-cv-00496 (D.N.J.) (ECF. No. 135); *In re Silver Wheaton Corp. Sec. Litig.*, Case No. 2:15-cv-05146 (C.D. Cal.) (ECF No. No. 487); and *In re Tangoe, Inc., Sec. Litig.*, Case No. 3:17-cv-00146 (D. Ct.) (ECF No. No. 64). Thus, the Notice procedures carried out here were more than sufficient.

19

### D. The Settlement Satisfies the Remaining Rule 23(e)(2) Factors

#### 1. The Proposed Method for Distributing Relief is Effective

As demonstrated in §III.C, *infra*, the method of the proposed notice and claims administration process are effective. Fed. R. Civ. P. 23(e)(2)(C)(ii). The notice plan included direct mail Postcard Notice to all those who could be identified with reasonable effort, supplemented by the publication of the Summary Notice on *PRNewswire* and in *Investor's Business Daily*. Nordskog Decl. at ¶¶2-9. In addition, the Claims Administrator created a settlement-specific website and posted key documents there, including the Stipulation, Notice, Claim Form and Preliminary Approval Order. *See id*. ¶9. Settlement Class Members were also able to submit claims through the website.

The claims process is also effective and includes a standard claim form that requests the information necessary to calculate a claimant's claim amount pursuant to the Plan of Allocation. The Plan of Allocation will govern how the Claims Administrator will calculate Settlement Class Members' claims and, ultimately, how it will distribute the Settlement Fund. Lead Counsel also worked with a damages expert to formulate the Plan of Allocation.

#### 2. Attorneys' Fees

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). As discussed in Plaintiffs' memorandum of law in support of their motion for an award of attorneys' fees, reimbursement of expenses, and an award to Plaintiffs, filed concurrently herewith ("Fee Brief"), Lead Counsel seek an award of attorneys' fees of 27.5% of the Settlement Amount, or $577,500.00, and reimbursement of $116,861.23 in expenses. This fee request, which is lower than the maximum fee request disclosed in the Notice of one third of the Settlement, is in line with other settlements approved in the Second Circuit. *See* Fee Brief § III.A.2.e.

20

In addition, Lead Counsel requests that any award of fees and expenses be paid at the time the Court makes its award. *See In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 846 (E.D. Va. 2016) (ordering that "attorneys' fees and Litigation Expenses awarded above may be paid to Lead Counsel immediately upon entry of this Order"). Indeed, such "provisions are common." *Pelzer v. Vassalle*, 655 F. App'x 352, 365 (6th Cir. 2016).[5]

Plaintiffs also request $2,500 each pursuant to 15 U.S.C. § 78u-4(a)(4) in connection with their efforts in stewarding this Action. Plaintiffs address the reasonableness of this request in full in the Fee Brief § III.C.

### 3.   The Parties Have No Other Agreements Aside From Opt-Outs

Rule 23(e)(2)(C)(iv) requires the disclosure of any side agreement. The Parties have entered a customary supplemental agreement which provides that if Settlement Class Members opt out of the Settlement such that the number of shares of YRC stock represented by such opt-outs exceeds a certain amount, YRC shall have the option to terminate the Settlement. Stipulation at XIV.D.1. As is standard practice in securities class actions, while the supplemental agreement is identified in the Stipulation (*id.*), the terms are confidential to avoid creating incentives for a small group of class members to opt out solely to leverage the threshold to exact an individual settlement. *See Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 4207245, at *11 (N.D. Cal. Sept. 4, 2018) ("The existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair."); *Thomas v. MagnaChip Semiconductor Corp.*, No. 14-CV-01160-JST, 2017 WL 4750628, at *5 (N.D. Cal. Oct. 20, 2017) (same). Pomerantz also has agreed to share portions of any fees awarded to the firm

---

[5] *See also* Brian T. Fitzpatrick, *The End of Objector Blackmail?*, 62 Vand. L. Rev. 1623, 1625-26 (2009) (quick pay provisions mitigate against objectors filing meritless appeals hoping to force class counsel to pay them simply to avoid the delay of waiting for the appeal to be decided).

with Bronstein, Gewirtz & Grossman, LLC, Glancy Prongay & Murray LLP and The Rosen Law Firm, P.A.

### 4.    There is No Preferential Treatment; the Plan of Allocation Treats Settlement Class Members Equitably

The Plan of Allocation is fair, reasonable and adequate because it does not treat Plaintiffs or any other Settlement Class Member preferentially. *Luxottica*, 233 F.R.D. at 317. The Plan of Allocation explains how the Settlement will be distributed among Settlement Class Members on a pro rata basis. Nordskog Decl., Ex. B. It provides formulas for calculating the recognized claim of each Settlement Class Member, based on their purchases or acquisitions of YRC securities during the Settlement Class Period and when they sold. *Id.* Each eligible Settlement Class Member, including Plaintiffs, will receive a pro rata distribution pursuant to the Plan of Allocation. Plaintiffs, just like all other Settlement Class Members, will be subject to the same formulas for distribution.

## IV.    CONCLUSION

For the foregoing reasons, the Court should: (1) grant final certification to the Settlement Class for the purposes of settlement; (2) approve the Settlement as set forth in the Stipulation; and (3) approve the Plan of Allocation.

Dated:  July 14, 2021

Respectfully submitted,

/s/   *Michael J. Wernke*
Jeremy A. Lieberman
Michael J. Wernke
Veronica V. Montenegro
**POMERANTZ LLP**
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com

22

mjwernke@pomlaw.com
vvmontenegro@pomlaw.com

*Counsel for Peter Szabo and
Co-Lead Counsel for the Proposed Class*


*/s/   Donald R. Hall*
Donald R. Hall
Jeffrey P. Campisi
  (Bar Roll Number: 700753)
Jason A. Uris
**KAPLAN  FOX  &  KILSHEIMER  LLP**
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714
Email: dhall@kaplanfox.com
        jcampisi@kaplanfox.com
        juris@kaplanfox.com

*Counsel for Lead Plaintiff City of Warwick
Retirement Board and Co-Lead Counsel for
the Proposed Class*


Jonathan B. Fellows
George H. Lowe
**BOND SCHOENECK & KING, PLLC**
One Lincoln Center
Syracuse, NY 13202
Telephone: (315) 218-8000
Facsimile: (315) 218-8100
Email: jfellows@bsk.com
        glowe@bsk.com

*Local Counsel for Lead Plaintiffs and the
Proposed Class*

**GLANCY PRONGAY & MURRAY LLP**
Lesley Portnoy
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone:  310-201-9150
Facsimile:   310-201-9160
Email: lportnoy@glancylaw.com

**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq.
275 Madison Avenue, 34th Floor

23

New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com

**BRONSTEIN, GEWIRTZ
& GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
(212) 697-6484
Email:  peretz@bgandg.com

24

25

## CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2021, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

By: */s/ Michael J. Wernke*
Michael J. Wernke

25