**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHRISTINA LEWIS, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>YRC WORLDWIDE INC., JAMES L. WELCH, JAMIE G. PIERSON, STEPHANIE D. FISHER, and DARREN D. HAWKINS,<br><br>Defendants. | Case No. 1:19-cv-00001-GTS-ATB |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO LEAD PLAINTIFF**

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ........................................................................................................ 1

II.     STATEMENT OF FACTS ......................................................................................... 2

III.    ARGUMENT ............................................................................................................. 2

    A.      The Requested Award of Attorneys' Fees is Reasonable ...................................... 2

        1.      Legal Standards for an Award of Attorneys' Fees Support Approval ...........2

        2.      The Requested Fee is Fair and Reasonable Under the Percentage-of-Recovery Method and the Second Circuit's Goldberger Factors ....................3

            a.      Time and Labor Expended by Lead Counsel ................................. 4

            b.      The Risks of the Litigation .............................................................. 6

            c.      The Magnitude and Complexity of the Litigation .......................... 8

            d.      The Quality of Lead Counsel's Representation ............................. 9

            e.      The Requested Fee in Relation to the Settlement ......................... 11

            f.      Public Policy Considerations ......................................................... 13

        3.      The Requested Fee is Reasonable Under the Lodestar Cross-Check ..........13

    B.      Reimbursement of Litigation Expenses ............................................................. **15**

    C.      The Proposed Award to Lead Plaintiff is Reasonable ...................................... **16**

IV.     CONCLUSION ........................................................................................................ 17

i

## TABLE OF AUTHORITIES

**Pages**

**Cases**

*Aponte v. Comprehensive Health Mgmt., Inc.*, No. 10 CIV. 4825 JLC,
   2013 WL 1364147 (S.D.N.Y. Apr. 2, 2013)...............................................................................5

*Arbuthnot v. Pierson*,
   607 F. App'x 73 (2d Cir. 2015) ...............................................................................................9

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
   472 U.S. 299 (1985).................................................................................................................3

*Becher v. Long Island Lighting Co.*,
   64 F. Supp. 2d 174 (E.D.N.Y. 1999) .....................................................................................12

*Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 Civ. 2207 (JGK),
   2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010)..........................................................................14

*Blum v. Stenson*,
   465 U.S. 886 (1984)............................................................................................................3, 11

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980).............................................................................................................2, 3

*Bozak v. FedEx Ground Package Sys., Inc.*,
   2014 WL 3778211 (D. Conn. July 31, 2014) .........................................................................12

*Burns v. FalconStor Software, Inc.*, No. 10 CV 4572 (ERK),
   2014 WL 12917621 (E.D.N.Y. Apr. 11, 2014) ........................................................................9

*Capsolas v. Pasta Res. Inc.*,
   2012 WL 4760910 (S.D.N.Y. Oct. 5, 2012) ...........................................................................12

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974)........................................................................................6, 10, 13

*City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132 (CM) (GWG),
   2014 WL 1883494 (S.D.N.Y. May 9, 2014) ......................................................................8, 13

*Eltman v. Grandma Lee's, Inc.*, No. 82 CIV. 1912,
   1986 WL 53400 (E.D.N.Y. May 28, 1986) .......................................................................10, 13

*Gilliam v. Addicts Rehab. Ctr. Fund*,
   2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) ..........................................................................12

ii

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000).........................................................................3, 4, 6, 14

*Hall v. AT & T Mobility LLC*, No. CIV.A. 07-5325 JLL,
  2010 WL 4053547 (D.N.J. Oct. 13, 2010)................................................................14

*Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071 (RJH),
  2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ......................................................3, 14

*In re AOL Time Warner, Inc.*, No. 02 CIV. 5575 (SWK),
  2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)..............................................................7, 8

*In re AOL Time Warner S'holder Derivative Litig.*, No. 02 Civ. 6302 (CM),
  2010 WL 363113 (S.D.N.Y. Feb. 1, 2010)................................................................14

*In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*,
  772 F.3d 125 (2d Cir. 2014).....................................................................................16

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
  258 F.R.D. 260 (S.D.N.Y. 2009) ..............................................................................11

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
  909 F. Supp. 2d 259 (S.D.N.Y. 2012).......................................................................16

*In re Bisys Sec. Litig.*, No. 04 Civ. 3840 (JSR),
  2007 WL 2049726 (S.D.N.Y July 16, 2007) ............................................................14

*In re Charter Commc'ns, Inc., Sec. Litig.*, No. 4:02-CV-1186 CAS,
  2005 WL 4045741 (E.D. Mo. June 30, 2005) ............................................................9

*In re China Sunergy Sec. Litig.*, No. 07 CIV. 7895 DAB,
  2011 WL 1899715 (S.D.N.Y. May 13, 2011) .............................................................9

*In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG),
  2010 WL 2653354 (E.D.N.Y. June 24, 2010) (Garaufis, J.) .................................6, 11, 14, 15

*In re Deutsche Bank Aktiengesellschaft Sec. Litig.*, No. 16-CV-03495 (AT) (BCM),
  2016 WL 5867497 (S.D.N.Y. Oct. 4, 2016) .............................................................11

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*, MDL No. 12-2389,
  2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015),
  *aff'd,* 674 F. App'x 37 (2d Cir. 2016).......................................................................5

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 CM PED,
  2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010).........................................................6, 7, 10, 13

*In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510 CPS SMG,
  2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007) .......................................................4, 15, 16

iii

*In re Glob. Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ..............................................................6, 9, 14

*In re Ikon Office Sols., Inc., Sec. Litig.*,
  194 F.R.D. 166 (E.D. Pa. 2000)...................................................................7

*In re Initial Pub. Offering Sec. Litig.*,
  671 F. Supp. 2d 467 (S.D.N.Y. 2009)........................................................12

*In re KeySpan Corp. Sec. Litig.*, No. 01 CV 5852(ARR),
  2005 WL 3093399 (E.D.N.Y. Sept. 30, 2005) .....................................11, 15

*In re MetLife Demutualization Litig.*,
  689 F. Supp. 2d 297 (E.D.N.Y. 2010) ..................................................16, 17

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  991 F. Supp. 2d 437 (E.D.N.Y. 2014) .......................................................12

*In re Sterling Foster & Co., Inc., Sec. Litig.*,
  238 F. Supp. 2d 480 (E.D.N.Y. 2002) .......................................................15

*In re Telik, Inc. Sec. Litig.*,
  576 F. Supp. 2d 570 (S.D.N.Y. 2008)........................................................15

*In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM),
  2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007).............................................3, 17

*In re WorldCom, Inc. Sec. Litig.*,
  388 F. Supp. 2d 319 (S.D.N.Y. 2005)..........................................................3

*Khait v. Whirlpool Corp.*, No. 06-6381 (ALC),
  2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) ............................................12

*La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, No. CIVA 03-CV-4372 DMC,
  2009 WL 4730185 (D.N.J. Dec. 4, 2009).....................................................8

*Landmen Partners, Inc. v. Blackstone Grp., L.P.*, No. 08-cv-03601-HB-FM,
  2013 WL 11330936 (S.D.N.Y. Dec. 18, 2013) ..........................................12

*Missouri v. Jenkins by Agyei*,
  491 U.S. 274 (1989)....................................................................................11

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
  2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) ...........................................12

*Savoie v. Merchs. Banks*,
  166 F.3d 456 (2d Cir. 1999)..........................................................................4

*State of W. Va. v. Chas. Pfizer & Co.*,
    314 F. Supp. 710 (S.D.N.Y. 1970) ..................................................................................7

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)...................................................................................3, 4, 14

## **Statutes**

15 U.S.C. § 78u-4(a)(4) ...........................................................................................................2, 16

15 U.S.C. § 78u-4(a)(6) ..............................................................................................................4

PSLRA ........................................................................................................................... *passim*

## **Rules**

Fed. R. Civ. P. 23..........................................................................................................................1

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Lead Counsel submit this memorandum of law in support of their motion for an award of attorneys' fees, reimbursement of expenses, and award to Lead Plaintiff Peter Szabo.[1]

## I.      INTRODUCTION

After over two years of investigation, litigation, and negotiation, Lead Counsel are pleased to present for the Court's approval a Settlement that recovers $2.1 million for the Settlement Class. Lead Counsel have not received any compensation for this case while litigating, even as they expended significant attorney time and money. They now request that the Court award attorneys' fees of 27.5% of the Settlement fund ($577,500.00) plus interest for reaching this favorable result.

The Settlement provides a substantial, immediate, and guaranteed recovery for Settlement Class Members, a favorable result in light of the substantial risks Plaintiffs faced with ongoing litigation, particularly in light of the Court's dismissal of the Action on March 27, 2020. ECF No. 89. Even if Plaintiffs' appeal were successful, they still faced significant obstacles and risks in certifying a class, defeating Defendants' anticipated summary judgment motion, proving their claims at trial, and defending the verdict on appeal. In undertaking this litigation, Lead Counsel faced numerous challenges to establishing liability, loss causation, and damages.  Assuming arguendo, the Second Circuit reserved the District Court's dismissal, the Action would have involved significant expert discovery to establish loss causation and damages. The risks that Lead Counsel would never get paid after spending countless hours of attorney time and significant sums of its own money justify the $577,500 award.

---

[1] All capitalized terms used herein have the meanings set forth and defined in the Stipulation of Settlement dated April 12, 2021 ("Stipulation") (ECF No. 96). Emphasis is added and internal citations and quotations are omitted unless otherwise noted.

Lead Counsel also seek reimbursement of their out-of-pocket litigation expenses incurred in prosecuting this Action, in the amount of $116,861.23. *See* Joint Declaration of Michael J. Wernke and Jeffrey P. Campisi ("Joint Decl.") ¶¶93--101, Exhibits 4-5.[2] These expenses were reasonable and necessary to prosecute and resolve the claims against Defendants successfully.

Finally, for over three years Lead Plaintiff Peter Szabo has spent significant time leading this action on behalf of the Class. He requests an award of $2,500, as authorized under the PSLRA to compensate Lead Plaintiff for his time. 15 U.S.C. § 78u-4(a)(4).

Lead Counsel and Plaintiffs' work in steering this action to a successful conclusion amply justify the requests they make. The Court should approve attorneys' fees of $577,500 plus interest, approve reimbursement of $116,861.23 in expenses, and award Lead Plaintiff Peter Szabo $2,500.

## II.      STATEMENT OF FACTS

A detailed description of the procedural history, settlement negotiations, and the considerations leading to the Settlement is set forth in Section II of the Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of the Proposed Class Action Settlement, filed concurrently herewith and incorporated by reference herein.

## III.     ARGUMENT

### A.      The Requested Award of Attorneys' Fees is Reasonable

#### 1.      Legal Standards for an Award of Attorneys' Fees Support Approval

The Supreme Court, the Second Circuit, and district courts within this Circuit have all recognized that where counsel's efforts have created a "common fund" for the benefit of a class,

---

[2] Exhibit 4 is the Declaration of Michael J. Wernke on behalf of Pomerantz LLP Concerning Attorneys' Fees and Expenses ("Pomerantz Decl."). Exhibit 5 to the Joint Declaration is the Declaration of Jeffrey P. Campisi on behalf of Kaplan Fox & Kilsheimer LLP Concerning Attorneys' Fees and Expenses ("KFK Decl."). Exhibit 6 to the Joint Declaration is the Declaration of Jonathan B. Fellows on behalf of Bond, Schoeneck & King, PLLC ("Bond Decl.").

2

counsel should be compensated from that common fund. *See, e.g., Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 354 (S.D.N.Y. 2005).

Attorneys' fee awards from common funds both encourage representatives to seek redress for damages caused to an entire class of persons and prevent that class from being unjustly enriched by the representative's success. *See Boeing*, 444 U.S. at 478; *Goldberger*, 209 F.3d at 47. The incentives the common fund doctrine provides are what permits private actions to serve as "a most effective weapon in the enforcement of the securities laws and are a necessary supplement to [SEC] action." *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985). Awards of reasonable "attorneys' fees from a common fund serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future misconduct of a similar nature." *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 WL 4115808, at *2 (S.D.N.Y. Nov. 7, 2007); *see also Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005) ("'To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding.'").

### 2. The Requested Fee is Fair and Reasonable Under the Percentage-of-Recovery Method and the Second Circuit's Goldberger Factors

The Supreme Court has consistently held that courts may employ the percentage-of-recovery approach to determine attorneys' fees in common fund cases. *See Blum v. Stenson*, 465 U.S. 886, 900, n.16 (1984). In *Goldberger*, 209 F.3d at 50, the Second Circuit examined the history of the alternative methods for calculating attorneys' fees and expressly approved the percentage-of-recovery method in awarding fees from a common fund. Indeed, "[t]he trend in this Circuit is toward the percentage method" when awarding attorneys' fees in common fund cases. *Wal-Mart*

3

*Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) (the percentage method "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation.").

The percentage of recovery method also comports with the PSLRA, which states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. § 78u-4(a)(6); *In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510 CPS SMG, 2007 WL 2743675, at *13 (E.D.N.Y. Sept. 18, 2007).

One of the merits of awarding fees on a percentage basis is that it does not penalize attorneys for achieving a prompt resolution of a case, where, as here, Lead Counsel developed sufficient information concerning the strengths and weaknesses of the case necessary to make an informed decision about the value of the claims. *See Wal-Mart*, 396 F.3d at 121 (one of the merits of the percentage method is that it "provides a powerful incentive for the efficient prosecution and early resolution of litigation"); *Savoie v. Merchs. Banks*, 166 F.3d 456, 460-61 (2d Cir. 1999) (the percentage method "removes disincentives to prompt settlement").

In *Goldberger*, the Second Circuit set forth the six factors that courts should consider in determining whether a fee request is reasonable:

> (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation ...; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

209 F.3d at 50. Each of these factors supports the fee requested here.

### a.   Time and Labor Expended by Lead Counsel

Lead Counsel and Local Counsel have worked diligently for more than three years to achieve the Settlement, expending more than 1,858.55 hours for an aggregate lodestar of

4

$1,085,233.25. Joint Decl. ¶83; Pomerantz Decl. ¶6; KFK Decl. ¶6; Bond Decl. ¶¶4-5. To litigate the Action, Lead Counsel: (1) investigated the claims in this action to plead a detailed amended complaint which required both analyzing public records and conducting interviews with former employees, as well as consulting with loss causation and damages, and accounting experts; (2) opposed Defendants' motion to dismiss the Amended Complaint; (3) fully briefed Plaintiffs' appeal of the Court's order granting Defendants' motion to dismiss; (4) prepared a mediation statement; (5) participated in a two-day mediation; (6) documented the Settlement and filed a motion for preliminary approval; and (7) conducted Due-Diligence Discovery provided pursuant to the terms of the Settlement. Joint Decl. ¶¶18-44. Further, Lead Counsel divided up work in the action to avoid duplicating work and ensured that all work was performed efficiently. *See* KFK Decl. ¶4; Pomerantz Decl. ¶4.

Moreover, Lead Counsel's work will not end with the filing of the instant Motions or the Court's approval of the Settlement. Lead Counsel will necessarily spend more time and resources drafting and filing the replies in support of its Motions, preparing for and appearing at the Final Approval Hearing scheduled for August 18, 2021, assisting Settlement Class Members with their Claim Forms, overseeing the claims process and distribution of the Settlement Fund to Settlement Class Members, and responding to Settlement Class Members' inquiries. *Aponte v. Comprehensive Health Mgmt., Inc.*, No. 10 CIV. 4825 JLC, 2013 WL 1364147, at *7 (S.D.N.Y. Apr. 2, 2013) ("That Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward, also supports their fee request."). Lead Counsel will seek no additional compensation for this work. *See In re Facebook, Inc. IPO Sec. & Derivative Litig.*, MDL No. 12-2389, 2015 WL 6971424, at *10 (S.D.N.Y. Nov. 9, 2015), *aff'd,* 674 F. App'x 37 (2d Cir. 2016) ("Considering

5

that the work in this matter is not yet concluded for Plaintiffs' counsel who will necessarily need to oversee the claims process, respond to inquiries, and assist Class Members in submitting their Proof of Claims, the time and labor expended by counsel in this matter support a conclusion that a 33% fee award in this matter is reasonable.").

The time and labor Lead Counsel invested in investigations, motion practice, due-diligence discovery, and mediation support the requested fee.

### b.    The Risks of the Litigation

The requested fee is also reasonable because Lead Counsel obtained a favorable result though it faced substantial risks. Indeed, the Court dismissed the Action and there was no guarantee that the Second Circuit would reverse the District Court's decision.  "[T]he risk of success [is] perhaps the foremost factor to be considered" in determining a reasonable fee. *Goldberger*, 209 F.3d at 54. "No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974), *abrogated on other grounds by Goldberger,* 209 F.3d 43. In applying this factor, "'litigation risk must be measured as of when the case is filed,' rather than with the hindsight benefit of subsequent events." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004) (quoting *Goldberger*, 209 F.3d at 55).

This courts in the Second Circuit have recognized that "class actions confront even more substantial risks than other forms of litigation." *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG), 2010 WL 2653354, at *5 (E.D.N.Y. June 24, 2010). Securities class actions in particular are "notably difficult and notoriously uncertain." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 CM PED, 2010 WL 4537550, at *27 (S.D.N.Y. Nov. 8, 2010). Moreover,

"securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA" and other changes in the law. *In re Ikon Office Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000); *see also In re AOL Time Warner, Inc.*, No. 02 CIV. 5575 (SWK), 2006 WL 903236, at *9 (S.D.N.Y. Apr. 6, 2006) ("[T]he legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages.").

Further, courts have described as "misplaced" attorneys' confidence that they can predict with any degree of certainty the outcome of litigation. *State of W. Va. v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743–44 (S.D.N.Y. 1970). That court pointed to two instances in which it had disapproved of proposed settlements only for the plaintiffs to recover nothing or less than the settlement the defendants had offered. *Id.* In many cases, attorneys pursued securities class actions for years only to have summary judgment entered against them or win a judgment they could not collect.

This case was no exception. From the outset, Lead Counsel understood they were embarking on a complex, expensive, and likely lengthy litigation with no guarantee of ever being compensated for the substantial investment of time and money the case would require. *Id*. ¶87. In undertaking that responsibility, Lead Counsel ensured that sufficient resources were dedicated to the Action and that funds were available to compensate staff and to cover the expenses the case would require. *Id*. With an average lag time of several years for a case like this to conclude, the financial burden on Lead Counsel was greater than those for a firm paid on an ongoing basis, as defense counsel were. *Id*.; *see Flag Telecom*, 2010 WL 4537550, at *27. Indeed, Lead Counsel received no compensation from this case during the litigation and have incurred $116,861.23 in expenses in prosecuting this action for the benefit of the Settlement Class. Joint Decl. ¶87.

7

Despite the many uncertainties regarding the outcome of the case, as detailed more fully in Plaintiffs' memorandum in support of their motion for final approval of the Settlement, including the risks and uncertainties resulting from the Court's dismissal of Plaintiffs' claims and their appeal thereof, Lead Counsel undertook this case on a wholly contingent basis. They did so knowing that the litigation could last for years and would require the devotion of a substantial amount of time and litigation expenses. Lead Counsel's assumption of this contingency fee risk strongly supports the reasonableness of the requested fee.

### c.      The Magnitude and Complexity of the Litigation

Courts recognize that securities class actions are "notorious[ly] complex[]." *AOL Time Warner*, 2006 WL 903236, at *8; *see also La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, No. CIVA 03-CV-4372 DMC, 2009 WL 4730185, at *8 (D.N.J. Dec. 4, 2009) (describing securities class actions as "inherently complex"). If the Action had not settled and Plaintiffs were ultimately successful in their appeal, continued litigation would have included additional motion practice, such as a class certification motion, summary judgment motions, and *Daubert* motions; extensive discovery, including the review of likely thousands of pages of internal documents and depositions of fact and expert witnesses; a trial; post-trial motion practice; and mostly likely appeals.

At many junctures, securities class action plaintiffs must prove esoteric concepts to recover on their claims. For example, to prove damages, plaintiffs must hire an expert to combat Defendants' expert in putting a price figure not only on the disclosure of information that was allegedly fraudulently withheld, but also on all other confounding information released at the same time and at other times during the class period. These are not simple tasks.

Accordingly, the magnitude and complexity of the Action support the requested fee. *See City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132 (CM) (GWG), 2014 WL 1883494, at

*16 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015) ("the complex and multifaceted subject matter involved in a securities class action such as this supports the fee request.").

### d.    The Quality of Lead Counsel's Representation

The best evidence of the quality of representation Lead Counsel provided is the recovery it achieved. *See, e.g.*, *Glob. Crossing*, 225 F.R.D. at 467 ("The quality of Securities Lead Counsel's representation is evidenced by the recovery obtained for the [] Class[]."). Here, the $2.1 million Settlement recovers approximately 7-9% of the $23.2-30 million estimated maximum potential damages to investors, Joint Decl. ¶56, a greater proportion of damages than the average case despite Plaintiffs' claims having been dismissed. *See*, *e.g.*, *Burns v. FalconStor Software, Inc.*, No. 10 CV 4572 (ERK), 2014 WL 12917621, at *5 (E.D.N.Y. Apr. 11, 2014)  (citing *In re Charter Commc'ns, Inc., Sec. Litig.*, No. 4:02-CV-1186 CAS, 2005 WL 4045741, at *6 (E.D. Mo. June 30, 2005) (noting that there has been an "average 5.5% - 6.2% of estimated losses recovered in securities fraud class [action] settlements since 1995," and concluding that these percentages are "well within the range of possible approval")); *In re China Sunergy Sec. Litig.*, No. 07 CIV. 7895 DAB, 2011 WL 1899715, at *15 (S.D.N.Y. May 13, 2011) (noting that the average settlement in securities class actions ranges from 3% to 7% of total estimated losses). Cornerstone Research found that for cases with damages estimated between $25 million and $74 million, between 2011 and 2019 the median recovery was 7.6%, and for 2020 the median recovery was 5.3%.[3]

---

[3] Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements – 2020 Review and Analysis;* Available at https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2020-Review-and-Analysis. (Last viewed March 25, 2021). As footnote 4 of the Cornerstone study explains, Cornerstone's study utilize a "simplified tiered damages" approach that varies from a case-specific analysis, and may understate the recovery rate.

Moreover, the positive reaction by Settlement Class Members confirms the quality of Lead Counsel's representation. *See Flag Telecom*, 2010 WL 4537550, at *29 ("numerous courts have noted that the lack of objection from members of the class is one of the most important factors in determining the reasonableness of a requested fee."). The Settlement Class overwhelmingly favors the Settlement. To alert potential Settlement Class Members of the Settlement, the Claims Administrator mailed 47,358 copies of the Postcard Notice to potential class members, posted the Notice of Pendency and Proposed Settlement of Class Action ("Long Notice") and Proof of Claim and Release Form on the Claims Administrator's website along with a link for online claim filing and a list of important deadlines, and published the Summary Notice of Pendency and Proposed Class Action Settlement ("Summary Notice") on *PR Newswire* and in *Investor's Business Daily*. Joint Decl., Exhibit 1 (Declaration of Eric Nordskog Regarding: (A) Mailing of The Postcard Notice; (B) Publication of The Summary Notice; and (C) Report on Requests for Exclusion And Objections ("Nordskog Decl.")) ¶¶2-9. Each of these notices told Class Members how they could exclude themselves from the Settlement or object to any part thereof. As of July 14, 2021, only one week before the deadline to object or opt out, the Claims Administrator and Lead Counsel have received only one request for exclusion and zero objections to the Settlement or Lead Counsel's requests herein. Nordskog Decl. ¶¶12-13; Joint Decl. ¶91.

The standing and prior experience of Lead Counsel is also relevant in determining fair compensation. *See, e.g.*, *Grinnell*, 495 F.2d at 470; *Eltman v. Grandma Lee's, Inc.*, No. 82 CIV. 1912, 1986 WL 53400, at *4 (E.D.N.Y. May 28, 1986). Here, Plaintiffs and the Settlement Class are represented by Pomerantz LLP and Kaplan Fox & Kilsheimer LLP as co-Lead Counsel. As their firm résumés demonstrate, Lead Counsel have extensive experience in the specialized field of shareholder securities litigation. Joint Decl. ¶85; KFK Decl., Ex. A; Pomerantz Decl., Ex. A.

10

*See also In re Deutsche Bank Aktiengesellschaft Sec. Litig.*, No. 16-CV-03495 (AT) (BCM), 2016 WL 5867497, at *5-6 (S.D.N.Y. Oct. 4, 2016) (finding Pomerantz "qualified to serve as lead counsel" because it "possess[ed] significant experience in the area of securities litigation and securities fraud class actions"); *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 258 F.R.D. 260, 271 (S.D.N.Y. 2009) (finding Kaplan Fox is "highly experienced in prosecuting securities class actions."). Lead Counsel leveraged their experience and resources to assess the merits and value of the case and negotiate the Settlement. *Id.*

The quality and vigor of opposing counsel is also important in evaluating the services rendered and challenges overcome by Lead Counsel. *See, e.g.*, *In re KeySpan Corp. Sec. Litig.*, No. 01 CV 5852(ARR), 2005 WL 3093399, at *12 (E.D.N.Y. Sept. 30, 2005). Here, Defendants were represented by Proskauer Rose LLP, a capable and respected law firm that vigorously represented the interests of its clients throughout this Action. Joint Decl. ¶86. That Lead Counsel achieved the Settlement while opposed by formidable attorneys further justifies the fee they request.

### e.    The Requested Fee in Relation to the Settlement

A fee should approximate what counsel would receive when bargaining in the marketplace. *See Missouri v. Jenkins by Agyei*, 491 U.S. 274, 285 (1989). In the marketplace, the customary fee arrangement in individual contingent-fee cases is between 30% and 40% of the recovery. *See Blum*, 465 U.S. at 903 ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers.") (Brennan, J., concurring).

"When determining whether a fee request is reasonable in relation to a settlement amount, the court compares the fee application to fees awarded in similar securities class-action settlements of comparable value." *Comverse*, 2010 WL 2653354, at *3. The fee request of 27.5% of the Settlement Fund, or $577,500, is below the percentages that courts within the Second Circuit have

11

awarded in similar common fund settlements. *See, e.g., Capsolas v. Pasta Res. Inc.*, 2012 WL 4760910, at *8 (S.D.N.Y. Oct. 5, 2012) ("Class counsel's request for one third of the Fund is reasonable and consistent with the norms of class litigation in this circuit"); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) (noting that "Class Counsel's request for 33% of the Settlement Fund is typical in class action settlements in the Second Circuit."); *Gilliam v. Addicts Rehab. Ctr. Fund*, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008) (fee equal to one-third of the settlement fund is reasonable and "consistent with the norms of class litigation in this circuit"); *Bozak v. FedEx Ground Package Sys., Inc.*, 2014 WL 3778211, at * 7 (D. Conn. July 31, 2014) ("The one-third amount that plaintiffs request is typical of awards in this Circuit."). Specifically, "it is very common to see 33% contingency fees in cases with funds of less than $10 million, and 30% contingency fees in cases with funds between $10 million and $50 million." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 445 (E.D.N.Y. 2014); *see, e.g. Becher v. Long Island Lighting Co.*, 64 F. Supp. 2d 174, 182 (E.D.N.Y. 1999) (one third fee of $7.8 million settlement, is "well within the range accepted by courts in this circuit"); *Khait v. Whirlpool Corp.*, No. 06-6381 (ALC), 2010 WL 2025106, at *8 (E.D.N.Y. Jan. 20, 2010) (citing cases and awarding attorneys' fees equal to 33% of $3 million fund). Higher percentage awards are common in the Second Circuit even in much larger cases. *See, e.g., Landmen Partners, Inc. v. Blackstone Grp., L.P.*, No. 08-cv-03601-HB-FM, 2013 WL 11330936, at *3 (S.D.N.Y. Dec. 18, 2013) (awarding 33.33% of $85 million recovery, plus expenses); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 516 (S.D.N.Y. 2009) (awarding 33.33% of $586 million recovery).*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 445 (E.D.N.Y. 2014) (awarding fees on a graduated schedule including 33.3% of the first $10 million of the settlement and 30% of the next $40 million).

12

Under the percentage-of-recovery approach, the attorneys' fees requested by Lead Counsel are fair and reasonable for litigation of this kind and are supported by previous awards made by courts in this Circuit.

### f. Public Policy Considerations

Private lawsuits further the objective of the federal securities laws to protect investors and consumers against deceptive practices. *Eltman*, 1986 WL 53400, at *4; *Flag Telecom*, 2010 WL 4537550, at *29 (if the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook."). Those lawsuits require competent counsel to prosecute them. *Eltman*, 1986 WL 53400, at *4. Competent counsel will only take on the lawsuits if they can expect reasonable and adequate compensation for their services where they achieve results. "To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding." *Id.*; *see also City of Providence*, 2014 WL 1883494, at *18.

The integrity of the markets depends on companies complying with the federal securities laws. Courts must ensure competent counsel with the knowledge and experience to litigate these disputes in an orderly and efficient manner are available to the markets. Public policy thus supports the award of the attorneys' fees requested here.

### 3. The Requested Fee is Reasonable Under the Lodestar Cross-Check

This Court may also consider whether the requested fee determined under the percentage approach is consistent with an award that would result under the lodestar/multiplier approach. *Grinnell*, 495 F.2d at 470-71. The lodestar is calculated by multiplying the number of hours expended on the litigation by each particular attorney or paralegal by their current reasonable and customary hourly rate and totaling the amounts for all time-keepers. Additionally, a multiplier is

typically applied to the lodestar, which "represents the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors." *Glob. Crossing*, 225 F.R.D. at 468 (citing *Goldberger*, 209 F.3d at 47); *see also Comverse Tech.*, 2010 WL 2653354, at *5 ("Where ... counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar").

When performing a lodestar "cross-check," the hours documented "need not be exhaustively scrutinized." *Goldberger*, 209 F.3d at 50. Here, Lead Counsel and Local Counsel devoted a total of 1,858.55 hours to the prosecution of the action, resulting in a lodestar of $1,085,233.25. Joint Decl. ¶83. Based on the requested fee of $577,500, the lodestar multiplier is 0.53. *Id*. This "negative multiplier" is <u>well below</u> the range of multipliers commonly awarded in securities class actions and other complex litigation. *See Wal-Mart*, 396 F.3d at 123 (upholding multiplier of 3.5 as reasonable on appeal); *Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 Civ. 2207 (JGK), 2010 WL 3119374, at *6 (S.D.N.Y. Aug. 6, 2010) (finding that a multiplier of 2.05 is "within a range of reasonableness for other awards that have been approved"); *In re Bisys Sec. Litig.*, No. 04 Civ. 3840 (JSR), 2007 WL 2049726, at *3 (S.D.N.Y July 16, 2007) (awarding a fee representing a 2.99 multiplier and finding that the multiplier "falls well within the parameters set in this district and elsewhere"); *Davis*, 827 F. Supp. 2d at 185 (finding that a multiplier of 5.3, which was "not atypical for similar fee-award cases"); *Maley*, 186 F. Supp. 2d at 371 ("[T]he *modest* multiplier of 4.65 is fair and reasonable."); *Hall v. AT & T Mobility LLC*, No. CIV.A. 07-5325 JLL, 2010 WL 4053547, at *22 (D.N.J. Oct. 13, 2010) ("A multiplier of less than one, as is the case here, is therefore quite reasonable for a lodestar.").[4]

---

[4] *See also In re AOL Time Warner S'holder Derivative Litig.*, No. 02 Civ. 6302 (CM), 2010 WL 363113, at *23 (S.D.N.Y. Feb. 1, 2010) ("The requested multiplier of 1.60 is at the lower end of the range recently seen, which has generally run between 1.5 and 4.0."); *Hicks*, 2005 WL 2757792, at *10 ("In this Circuit, contingency fees of 1.85 times the lodestar and greater have been deemed reasonable by the courts.");

The hourly rates used by Lead Counsel to arrive at the lodestar calculation are the firm's current, customary rates. Pomerantz Decl. ¶5; KFK Decl. ¶5. Courts in this Circuit have approved Lead Counsel's requests for attorneys' fees based on the same or similar rates as those submitted here. *See, e.g., Pirnik v. Fiat Chrysler Automobiles N.V.*, No. 15-cv-07199-JMF (S.D.N.Y. Sept. 5, 2019) (ECF No. 369); *In re Jumia Techs. S.A. Sec. Litig.*, Case No. 1:19-cv-04397-PKC (S.D.N.Y. Mar. 24, 2021) (ECF No. 128); *Convery v. Jumia Technologies AG, et al.*, Index No. 656021/2019, NYSCEF Nos. 70-71, 94 (approving Kaplan Fox's fee request based on 2021 billing rates). Additionally, Lead Counsel submits that the rates billed for their attorneys are comparable to peer defense-side law firms litigating matters of similar magnitude.

Thus, the time and effort Lead Counsel have devoted to this case to obtain the $2.1 million recovery for the Settlement Class confirms that the requested fee is reasonable, whether calculated as a percentage of the fund or in relation to Lead Counsel's lodestar.

### B.      Reimbursement of Litigation Expenses

In addition to Lead Counsel's request for a fee of 27.5% of the net Settlement Fund, Lead Counsel seeks reimbursement of $116,861.23 in litigation costs and expenses incurred in connection with the prosecution of the Action. "Courts routinely grant the expense requests of class counsel." *Gilat*, 2007 WL 2743675, at *18 (quoting *KeySpan*, 2005 WL 3093399, at *18); *see also In re Sterling Foster & Co., Inc., Sec. Litig.*, 238 F. Supp. 2d 480, 490 (E.D.N.Y. 2002) (awarding reimbursement of $100,000 in litigation expenses).

Lead Counsel incurred $116,861.23 in unreimbursed expenses to prosecute this action, which is significantly less than the $140,000 amount described in the Long Notice, Summary

---

*Comverse*, 2010 WL 2653354, at *5 (awarding fee representing a 2.78 multiplier); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 590 (S.D.N.Y. 2008) ("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts, including this Court.").

Notice, and Postcard Notice. Pomerantz Decl. ¶7; KFK Decl. ¶7. Substantial expenses included the (1) costs of hiring an experienced mediator ($48,787.20), (2) costs of experts retained to analyze loss causation, damages, the Plan of Allocation and accounting issues ($35,112.5), as well as several additional costs like (3) online legal research fees, (4) court filing and court messenger fees, and (5) printing and postage fees. *Id*. The expenses incurred are reflected in Lead Counsel' books and records and were reasonable and necessary to achieve the Settlement. Pomerantz Decl. ¶8; KFK Decl. ¶8; *see In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 364 (E.D.N.Y. 2010) (reimbursing "expert fees, electronic research charges, long distance telephone and facsimile charges, postage and delivery expenses, discovery costs, filing fees, photocopying, expenses associated with locating and interviewing dozens of witnesses, and out-of-town travel expenses"); *see also In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 272 (S.D.N.Y. 2012) (reimbursing over $1 million in expert expenses to plaintiff's counsel).

There have been no objections to the expense reimbursement request, and the actual amount requested is below the $140,000 limit disclosed in the Notice. The Court should grant Lead Counsel's request for reimbursement of reasonable and necessary litigation expenses.

### C.    The Proposed Award to Lead Plaintiff is Reasonable

The PSLRA permits "the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of the class." 15 U.S.C. § 78u-4(a)(4). Courts in the Second Circuit "routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." *Gilat*, 2007 WL 2743675, at *19; *In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 772 F.3d 125, 132–33 (2d Cir. 2014) (affirming the award of PSLRA expense and costs to lead

16

plaintiffs totaling $453,000). "PSLRA awards are not limited to lost wages or other documented expenses … [and] may be awarded in recognition of, for example, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation." *MetLife*, 689 F. Supp. 2d at 370.

Lead Plaintiff Peter Szabo has devoted a significant amount time to this case, spending time monitoring news on the company, reviewing the pleadings, and communicating and corresponding with Lead Counsel regarding the litigation and settlement. Joint Decl., Exhibit 2 (declaration of Lead Plaintiff Peter Szabo). Therefore, he requests an award of $2,500 to reimburse him for the time he spent on this case. Such an award is "reasonable and appropriate relative to the … overall settlement." *MetLife*, 689 F. Supp. 2d at 370 (collecting cases); *Veeco*, 2007 WL 4115808, at *12 (awarding lead plaintiff approximately $15,900 for time spent supervising litigation and characterizing such awards as "routine" in this Circuit); *Giant Interactive Grp.*, 279 F.R.D. at 166 (awarding $10,000 for lost time).

## IV.    CONCLUSION

For the foregoing reasons, the Court should grant Lead Counsel's application for an award of attorneys' fees, reimbursement of reasonable expenses, and award to Lead Plaintiff Peter Szabo for services rendered to the Settlement Class.

Dated:  July 14, 2021                          Respectfully submitted,

/s/   *Michael J. Wernke*
Jeremy A. Lieberman
Michael J. Wernke
Veronica V. Montenegro
**POMERANTZ LLP**
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
        mjwernke@pomlaw.com
        vvmontenegro@pomlaw.com

17

*Counsel for Peter Szabo and*
*Co-Lead Counsel for the Proposed Class*


*/s/   Donald R. Hall*
Donald R. Hall
Jeffrey P. Campisi
  (Bar Roll Number: 700753)
Jason A. Uris
**KAPLAN FOX & KILSHEIMER LLP**
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714
Email: dhall@kaplanfox.com
        jcampisi@kaplanfox.com
        juris@kaplanfox.com

*Counsel for Lead Plaintiff City of Warwick*
*Retirement Board and Co-Lead Counsel for*
*the Proposed Class*


Jonathan B. Fellows
George H. Lowe
**BOND SCHOENECK & KING, PLLC**
One Lincoln Center
Syracuse, NY 13202
Telephone: (315) 218-8000
Facsimile: (315) 218-8100
Email: jfellows@bsk.com
        glowe@bsk.com

*Local Counsel for Lead Plaintiffs and the*
*Proposed Class*

**GLANCY PRONGAY & MURRAY LLP**
Lesley Portnoy
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone:  310-201-9150
Facsimile:   310-201-9160
Email: lportnoy@glancylaw.com

18

**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq.
275 Madison Avenue, 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com

**BRONSTEIN, GEWIRTZ
& GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
(212) 697-6484
Email:  peretz@bgandg.com

19

**CERTIFICATE OF SERVICE**

I hereby certify that on July 14, 2021, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

By: */s/ Michael J. Wernke*
Michael J. Wernke

20