**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| CHRISTINA LEWIS, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>YRC WORLDWIDE INC., JAMES L. WELCH, JAMIE G. PIERSON, STEPHANIE D. FISHER, and DARREN D. HAWKINS,<br><br>Defendants. | Case No. 1:19-cv-00001-GTS-ATB |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR DISTRIBUTION OF**
**CLASS ACTION SETTLEMENT FUND**

Lead Plaintiffs Peter Szabo, and City of Warwick Retirement Board ("Plaintiffs")[1] submit this memorandum of law in support of their Motion for Distribution of Class Action Settlement Fund ("Motion") in the above-captioned Action. If entered by the Court, the [Proposed] Order Granting Motion for Distribution of Class Action Settlement Fund ("Class Distribution Order") will, among other things: (i) approve the Claims Administrator's recommendations accepting and rejecting Claims submitted in the Action; and (ii) direct the distribution of the Net Settlement Amount to Authorized Claimants whose Claims have been accepted as valid and approved by the Court. The specifics of the proposed plan for distribution of the Net Settlement Amount are set forth in the accompanying Declaration of Eric A. Nordskog in Support of Motion for Class Distribution Order dated April 22, 2022 ("Nordskog Decl.").

## I.    BACKGROUND

On April 19, 2021, the Court entered the Order Preliminarily Approving Proposed Settlement ("Preliminary Approval Order") (ECF No. 98). On September 9, 2021, the Court entered the Order Approving Class Action Settlement (ECF No. 107), and the Judgment (ECF No. 108).

The Court-appointed Claims Administrator, A.B. Data, has advised Lead Counsel that it completed all analyses and accounting procedures and quality control procedures in connection with the Claim Forms submitted by those persons who responded to the Notice, and has determined which of those persons are, subject to Court approval, Authorized Claimants. Nordskog Decl. ¶ 37. All that remains to complete the Settlement process is to distribute the Net Settlement Amount to Authorized Claimants. Thus, the Court should authorize the distribution of the Net Settlement Amount to Authorized Claimants, as identified in Exhibits E and F to the Nordskog Decl.

---

[1] All capitalized terms that are not otherwise defined herein have the seams meanings as set forth in the Stipulation of Settlement (the "Stipulation") (ECF No. 96).

## II.    DETERMINATION OF AUTHORIZED CLAIMANTS

The Court approved the content of the Notice when issuing the Preliminary Approval Order and mandated the documentation necessary to the submission of a valid claim. *See* Preliminary Approval Order at ¶¶ 10, 23. All Claims were to be submitted to the Claims Administrator, online or postmarked no later than August 17, 2021. The Claims Administrator has now finalized its determination of which Claims are authorized and which are ineligible. Nordskog Decl. ¶¶ 33-37.

The Claims Administrator continued processing all claims received up to April 1, 2022. Nordskog Decl. ¶ 4. As a result of a robust notice program, through April 1, 2022, A.B. Data received 8,733 Claim Forms. *Id*. ¶¶ 6, 33. After reviewing, analyzing, and processing all Claim Forms, A.B. Data has finalized its determination of which claims are authorized and which are ineligible. ¶¶ 33-37.

Attached as Exhibits D through F to the Nordskog Declaration are listings of all Claims submitted in connection with the Settlement:

(a)    Exhibit D lists valid and timely Claims and shows each Claimant's Recognized Claim amount.  A.B. Data recommends payment of these Claims.

(b)    Exhibit E lists Claims that are considered Late but Otherwise Eligible and shows each Claimant's Recognized Claim amount. A.B. Data recommends payment of these Claims.

(c)    Exhibit F lists the rejected Claims and the reasons for rejection.

A.B. Data's procedures and determinations are set forth below, and fully described in paragraphs 6-37 of the Nordskog Declaration.

### A.    Valid and Properly Documented Claims

A.B. Data analyzed the 8,733 Claim Forms received through April 1, 2022 and determined that 2,032 valid and properly-document claims were received. Nordskog Decl. ¶ 34. Of these 2,032

claims, 2,013 were timely (*i.e.*, received or postmarked no later than August 17, 2021) ("Timely Valid Claims") and 19 were received after the August 17, 2021 filing deadline but before the Claim's Administrator's imposed cut-off date of April 1, 2022 ("Late But Otherwise Eligible Claims"). *Id*. ¶t 35. These valid claims represent Recognized Claims of $24,034,614.64. *Id*.

The Court should accept all 2,032 valid claims, including the 2,013 Timely Valid Claims and the 19 Late But Otherwise Valid Claims. The Late But Otherwise Valid Claims have not caused delay to the distribution of the Net Settlement Amount or otherwise prejudiced any Authorized Claimant, and Plaintiffs believe that it would be unfair to prevent otherwise valid claimants from participating in the Net Settlement Amount solely because their claims were submitted after the August 17, 2021 deadline, but while claims were still being processed. *See In re Crazy Eddie Securities Litigation*, 906 F. Supp. 840, 845 (E.D.N.Y. 1995) (stating that the "determination of whether to allow the participation of late claimants in a class action settlement is essentially an equitable decision within the discretion of the court," and allowing late claims postmarked within one month and four days of original deadline to participate in the distribution of settlement funds); *In re Gilat Satellite Networks, Ltd.*, No. CV–02–1510 (CPS)(SMG), 2009 WL 803382, at *6 (E.D.N.Y. Mar. 25, 2009) (including late-filed claims as part of a settlement).

The Court should also enter an Order directing that no claims received after April 1, 2022, or any responses to deficiency and/or rejection notices received after April 1, 2022, be included in the distribution. To facilitate the efficient and proportional distribution of the Net Settlement Amount, there must be a final cut-off after which no other claims may be accepted. *In re Citigroup Inc. Sec. Litig.*, No. 09–Md–2070 (SHS), 2014 WL 7399039, at *4 (S.D.N.Y. Dec. 29, 2014) ("[A]t some point in the distribution of a large class action settlement, such as this one, 'a cutoff date is essential and . . . the matter must be terminated.'"); *Hartman v. Powell*, No. 00-5356, 2001 WL

410461, at *1 (D.C. Cir. Mar. 15, 2001) ("Drawing a line is essential to achieve certainty and finality in such a large class action.").

### B.    Deficient and Ineligible Claims

To be eligible for a payment from the proceeds of the Settlement Class Members must submit a Claim Form with adequate supporting documentation. *See* ECF No. 98, Preliminary Approval Order ¶¶ 10, 23. As detailed in the Preliminary Approval Order, proper documentation may consist of broker confirmation slips, broker account statements, an authorized statement from the broker containing the transactional information found in a broker confirmation slip, or such other documentation as is deemed adequate by the Claims Administrator or Lead Counsel. *Id.*

A.B. Data initially identified 437 of 505 paper and online claims were deficient, and 6,351 of 8,228 Electronic Claims were deficient. Nordskog Decl. ¶¶ 19-26.  For all inadequately documented claims, A.B. Data sent inadequacy notices advising claimants of the inadequacy and giving them the opportunity to cure the deficiency, a sample of which is attached as Exhibit A (for deficient online and paper Claims) and Exhibits Band C (for deficient Electronic Claims) to the Nordskog Decl. *Id.*

437 of the 505, paper and online Claims were incomplete or had one or more defects or conditions of ineligibility, such as not being signed, not being properly documented, or not indicating a transaction in YRC common stock. *Id.* ¶ 19. Most of the deficient conditions assigned to Electronic Claims relate to deficiencies which cannot be cured unless additional transactional data is submitted. *Id.* ¶ 26. This includes deficiencies such as no eligible purchase of YRC common stock during the Class Period or no Recognized Claim under the Plan of Allocation. *Id.* In total there were 691 Electronic Claims which did not contain an eligible purchase of YRC common stock and an additional 5,296 Electronic Claims which did not calculate a Recognized Claim under the Plan of Allocation.

Of the 437 deficient paper and online Claims, a total of 87 Claims were successfully cured. Nordskog Decl. ¶ 21. Of the 6,351 deficient Electronic Claims, 200 Claims were successfully cured. *Id*. ¶ 26.

Claimants were advised that they had the right to contest A.B. Data's administrative determinations of deficiencies or ineligibility within twenty (20) days from the date of notification and that they could request that the dispute be submitted to the Court for review. *Id*. ¶ 27. Claimants were advised that if they disputed A.B. Data's determinations, they had to provide a statement indicating the grounds for contesting the determination, along with supporting documentation, and if the dispute concerning the Claim could not otherwise be resolved, Lead Counsel would thereafter present the request for review to the Court for a final determination. *Id.*

A.B. Data received two (2) requests for Court review from Claimants. *Id*. ¶ 28. In an attempt to resolve the disputes without necessitating the Court's intervention, A.B. Data promptly contacted the Claimants requesting Court review and sought to answer any questions, fully explain A.B. Data's determination of the Claims' status, and facilitate the submission of missing information or documentation where applicable. *Id*. As a result, the two Claims for which Court review had been requested have been resolved. *Id*.

## III.    PLANNED DISTRIBUTION OF THE NET SETTLEMENT AMOUNT

Lead Counsel now seeks to distribute the Net Settlement Amount to Class Members, in accordance with Section III. D – E of the Stipulation, whose 2,013 claims have been accepted as set forth in Exhibits D and E of the Nordskog Decl.

Consistent with the Plan of Allocation and with the Court's approval, the Claims Administrator will conduct an initial distribution of the Net Settlement Amount to all Authorized Claimants on a pro rata basis whose distribution payments calculates to $20.00 or more. Nordskog Decl. ¶ 39; Notice-Form Notice, ¶ 65. Based on the substantial experience of Lead Counsel in

similar distributions, it can be expected that a certain number of the payments to be distributed to Settlement Class Members who filed valid Claims will not be cashed promptly. To encourage Authorized Claimants to promptly cash their distribution checks and to avoid or reduce future expenses relating to unpaid distributions, Lead Counsel proposes that all the distribution checks bear a notation "DEPOSIT PROMPTLY; VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT NEGOTIATED WITHIN 120 DAYS OF DISTRIBUTION." Nordskog Decl. ¶ 39(a)(v).

The Claims Administrator will make reasonable and diligent efforts to encourage Authorized Claimants who are entitled to participate in the distribution of the Net Settlement Amount to cash their distribution. If, however, after seven months any funds remain in the Net Settlement Amount, by reason of uncashed checks or otherwise, the Claims Administrator will conduct a redistribution. During the redistribution, any amounts remaining in the Net Settlement Amount after the initial distribution, after payment of Administration Costs incurred in administering the Settlement (including costs or fees of such redistribution), will be redistributed to all Authorized Claimants in the Initial Distribution who cashed their distribution checks and would receive at least $20.00 from the Second Distribution. *Id*. ¶39(b); Stipulation; Long-Form Notice, ¶ 66.

## IV.    RELEASE OF CLAIMS

To allow the full and final distribution of the Net Settlement Amount, the Court must bar any further claims against the Net Settlement Amount beyond the amounts allocated to Authorized Claimants, and to provide that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Amount, be released and discharged from any and all claims arising out of such involvement. Accordingly, the Court should release and discharge all persons involved in the review, verification, calculation,

{00494414;1 }                                    6

tabulation, or any other aspect of the processing of the Claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Amount from any and all claims arising out of such involvement and bar all Settlement Class Members, whether or not they receive payment from the Net Settlement Amount, from making any further claims against the Net Settlement Amount, Plaintiffs, Lead Counsel, the Claims Administrator, the Escrow Agent, or any other agent retained by Plaintiffs or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Amount beyond the amounts allocated to them under the terms of the Distribution Order. *See In re Top Tankers, Inc. Sec. Litig.*, Order Authorizing Distribution of Net Settlement Fund at p.4, ECF No. 123, Case No. 1:06-cv-13761-CM (S.D.N.Y Dec. 14, 2009); *In re Veeco Instruments Inc. Sec. Litig.*, Order Approving Distribution of Net Settlement Fund at ¶8, ECF No. 171, Case No. 1:05-cv-10226-CM (S.D.N.Y. Sept. 8, 2009).

## V.    RECORDS RETENTION AND DESTRUCTION

The Court should order that: (i) in no less than one year after the second distribution of the Net Settlement Amount, if that occurs, or, if there is no second distribution, two years after the initial distribution, the Claims Administrator may destroy the paper copies of the Claims and all supporting documentation; and (ii) in no less than one year after all funds have been distributed, the Claims Administrator may destroy the electronic copies of the Claims and all supporting documentation.

## VI.    FEES AND DISBURSEMENTS

A.B. Data agreed to be the Claims Administrator in exchange for payment of its fees and expenses. Nordskog Decl. ¶ 39. The cost of the administration for this project up to the Initial Distribution of the Net Settlement Fund ("Initial Distribution") is $113,022.14. To date, A.B. Data has received payment of $108,475.53. *Id.* Accordingly, there is a total of $4,546.61 payable to

A.B. Data. *Id.* The estimated cost of conducting the Initial Distribution is $11,978.00 (attached hereto as Exhibit G is a copy of A.B. Data's estimate to conduct the Initial Distribution). Therefore, the total amount requested to be paid from the Settlement Fund to A.B. Data is $16,524.61, consisting of $4,546.61 in fees and expenses already incurred and $11,978.00 in anticipation of the work that will be performed for the Initial Distribution, to satisfy all administration fees and expenses.[2] *Id.*

## VII.    CONCLUSION

Based on the foregoing, the Court should approve and enter the [Proposed] Order Granting Motion for Distribution of Class Action Settlement Fund, submitted herewith.

Dated:  May 2, 2022

Respectfully submitted,

/s/   *Michael J. Wernke*
Jeremy A. Lieberman
Michael J. Wernke
Veronica V. Montenegro
**POMERANTZ LLP**
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
        mjwernke@pomlaw.com
        vvmontenegro@pomlaw.com

*Counsel for Peter Szabo and*
*Co-Lead Counsel for the Settlement Class*

/s/   *Jeffrey P. Campisi*
Donald R. Hall
Jeffrey P. Campisi
 (Bar Roll Number: 700753)
Jason A. Uris
**KAPLAN  FOX  &  KILSHEIMER  LLP**
850 Third Avenue, 14th Floor
New York, NY 10022

---

[2] If the estimate of fees and expenses to conduct the Initial Distribution is greater than the actual cost to conduct the distribution, the excess will be returned to the Net Settlement Fund.

Telephone: (212) 687-1980
Facsimile: (212) 687-7714
Email: dhall@kaplanfox.com
      jcampisi@kaplanfox.com
      juris@kaplanfox.com

*Counsel for Lead Plaintiff City of Warwick Retirement Board and Co-Lead Counsel for the Settlement Class*

**BOND SCHOENECK & KING, PLLC**
Jonathan B. Fellows
George H. Lowe
One Lincoln Center
Syracuse, NY 13202
Telephone: (315) 218-8000
Facsimile: (315) 218-8100
Email: jfellows@bsk.com
      glowe@bsk.com

*Local Counsel for Lead Plaintiffs and the Settlement Class*

{00494414;1 }          9

**CERTIFICATE OF SERVICE**

I hereby certify that on May 2, 2022, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*/s/ Michael J. Wernke*
Michael J. Wernke

{00494414;1 }                                                    10